**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Bankruptcy Case No. 06-31986 (JCW) |
| JOSEPH GREGORY JEMSEK | ) | |
| | ) | Bankruptcy Case No. 06-31766 |
| JEMSEK CLINIC, P. A. | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

---

## SECOND AMENDED JOINT PLAN OF REORGANIZATION

Joseph Gregory Jemsek ("Jemsek") and the Jemsek Clinic, P.A. ("Jemsek Clinic"), debtors and debtors-in-possession in the above captioned cases (also called the "Debtors"), submit this Second Amended Joint Plan of Reorganization pursuant to section 1121(a) under Title 11 of the United States Code, 11 U.S.C. § 101 et seq.

## ARTICLE I
## DEFINITIONS

As used in this chapter 11 plan, the following terms shall have the respective meanings specified below:

**Administrative Claim.** Any cost or expense of administration of the Chapter 11 Case (a) required to be asserted by filing an application with the Bankruptcy Court on or before the Administrative Bar Date, or (b) Allowed under section 503(b) of the Bankruptcy Code, except to the extent the holder of such Claim agrees to be treated differently. Administrative Claims include, but are not limited to, (i) any actual and necessary expenses of preserving either Estate incurred during the Chapter 11 Case, (ii) any actual and necessary expenses of operating the Debtor's business incurred during the Chapter 11 Case, (iii) any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their business as debtors in possession, or for the acquisition or lease of property by, or for the rendition of services to, the Debtors as debtors in possession, (iv) obligations pursuant to executory contracts assumed by the Debtors pursuant to an order of the Bankruptcy Court, (v) all Claims as provided by § 507(b) of the Bankruptcy Code, (vi) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court, (vii) any Allowed Contingent Claims which are granted administrative priority status by Final Order of the Bankruptcy Court, (viii) all fees payable and unpaid under section 1930 of Title 28, United States Code, (ix) any fees or charges assessed against the Estate under chapter 123 of Title 28, United States Code, (x) the BCBS Administrative Claim; and (xi) the Polsinelli Allowed Administrative Claim.

**Administrative Claims Bar Date.** The date thirty (30) days after the Effective Date or such other date(s), if any, as determined by order of the Bankruptcy Court, by which all requests for

allowance of Administrative Claims must be filed with the Bankruptcy Court. The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals incurred after the Confirmation Date or to the BCBS Administrative Claim or the Allowed Polsinelli Administrative Claim.

**Allowed Administrative Claim**.  All or that portion of any Administrative Claim that is or has become an Allowed Claim.

**Allowed BCBS Claim**.  Shall mean an Allowed General Unsecured Claim in favor of BCBS in the amount of $8 million which will be treated as a Class 7 Claim solely for purposes of voting on and confirmation of the Plan (and for no other purposes) and which shall not be subject to any Debtors' or any party in interests claim, dispute, offset, setoff, recoupment or reconsideration, with all Debtors and any party in interest's rights under 11 USC § 502(j) waived as of the Effective Date.  The Allowed BCBS Claim is a subset of the BCBS Claims.

**Allowed Claim**.  Any Claim against the Debtors (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claims against the Debtors or, if no proof of claim is filed, which has been or hereafter is listed by the Debtors in their Schedules, as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim). A Disputed Claim shall be an Allowed Claim if, and only to the extent that, a Final Order has been entered allowing such Disputed Claim. The term "Allowed," when used to modify a reference in this Plan to any Claim or class of Claims, shall mean a Claim (or any Claim in any such class) that is allowed (e.g., an Allowed Secured Claim is a Claim that has been Allowed to the extent of the value of any interest in property of the Estate securing such Claim), as determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code. Unless otherwise specified in this Plan or in the Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

**Allowed Polsinelli Administrative Claim**. Shall mean the Allowed Administrative Claim of Polsinelli in the amount of $900,000.00, which shall not be subject to any Debtors' or any party in interests, claim, dispute, offset, setoff, recoupment or reconsideration, with all Debtors and any party in interest's rights under 11 USC § 502(j) waived as of the Effective Date.

**Allowed Polsinelli Secured Claim.** Shall mean the Allowed Secured Claim of Polsinelli secured by a lien on the Greenbrier Property in the total amount of 50% of the net sale proceeds of the Greenbrier Property which shall not subject to any Debtors' or any party in interests, claim, dispute, offset, setoff, recoupment or reconsideration, with all Debtors and any party in interest's rights under 11 USC § 502(j) waived as of the Effective Date.

**Allowed Polsinelli Unsecured Claim**.  Shall mean the Allowed General Unsecured Claim of Polsinelli in the amount of $2,250,000.00 which will be treated as a Class 7 Claim solely for purposes of

61189538.9

voting on and confirmation of the Plan (and for no other purposes), and which shall not be subject to any Debtors' or any party in interests, claim, dispute, offset, setoff, recoupment or reconsideration, with all Debtors and any party in interest's rights under 11 USC § 502(j) waived as of the Effective Date.

**Allowed Super-Priority Administrative Claim**. Any claim having been allowed by the Bankruptcy Court as an Allowed Super-Priority Administrative Claim.

**Assumed Agreement**. Unexpired leases and other executory contracts of the Debtors that are being assumed pursuant to the Plan, if any.

**Avoidance Action**. Any and all actions which a trustee, debtor in possession, or other appropriate party in interest may assert on behalf of the Estate under the Bankruptcy Code, including actions pursuant to sections 542, 543, 544, 545, 546, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code.

**Avoidance Action Claims**. Claims asserted by parties pursuant to sections 502(d) and/or 502(h) of the Bankruptcy Code in connection with any Avoidance Action(s) brought by the Debtors against such parties.

**Ballot**. The document used in voting on the Plan that must be executed and delivered by holders of Claims entitled to vote on the Plan.

**Bankruptcy Administrator**. The United States Bankruptcy Administrator for the Western District of North Carolina.

**Bankruptcy Code**. The United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

**Bankruptcy Court**. The United States Bankruptcy Court for the Western District of North Carolina, having jurisdiction over the Chapter 11 Case.

**Bankruptcy Rules**. The Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

**BCBS**. Blue Cross Blue Shield of North Carolina.

**BCBS Administrative Claim**. An allowed Administrative Expense Claim in favor of BCBS in the amount of $150,000, which shall not be subject to any Debtors' or any party in interest's, claim, dispute, offset, setoff, recoupment or reconsideration, with all Debtors' and any party in interest's rights under 11 USC § 502(j) waived as of the Effective Date.

**BCBS Claims**. The Claims of BCBS against the Debtors, including but not limited to the claims asserted by BCBS against the Debtors in the adversary proceedings, but not the BCBS Administrative Claim.

3

**BCBS Plan Funding**.  A payment by BCBS to Polsinelli's Trust Account in the amount of $350,000 to resolve the underlying adversary proceedings and litigation between BCBS and the Debtors.

**CNB**.  City National Bank of West Virginia.

**Business Day**.  Any day other than a Saturday, Sunday, or other day on which commercial banks in the State of North Carolina are authorized or required by law to close.

**Cash**. Cash and readily marketable securities or instruments including, without limitation, readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank, and commercial paper.

**Certified Funds.** Certified Funds shall mean a wire transfer that has finally cleared such account, such that it cannot be recalled, or a cashier's check drawn on a federally insured financial institution.

**Chapter 11 Case**. The Debtors' bankruptcy cases under Chapter 11 of the Bankruptcy Code, which are pending before the Bankruptcy Court.

**Claim**.  Any right to payment from the Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date.

**Class**. Means a classification of Allowed Claims for the purposes of treatment and distributions under this Plan.

**Confirmation Date**. The date upon which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

**Confirmation Hearing**. The hearing before the Bankruptcy Court to consider confirmation of this Plan.

**Confirmation Order**.  An order of the Bankruptcy Court, in form and substance satisfactory to the Debtor, confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**Contingent Claim**.  A Claim that is either contingent or unliquidated on or immediately before the Confirmation Date.

4

**Creditor**.  Any Person that holds a Claim against the Estates.

**Debtors**.  Joseph Gregory Jemsek and Jemsek Clinic, P. A.

**Disclosure Statement**. The disclosure statement filed with the Bankruptcy Court with respect to this Plan, pursuant to section 1125 of the Bankruptcy Code, either in its present form or as it may be altered, amended, or modified from time to time.

**Disputed Claim**.  A Claim which is the subject of a timely objection interposed by the Debtors, if at that time such objection remains unresolved; provided, however, that the Bankruptcy Court may determine the amount of a Disputed Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code; provided, further, that the Debtors, in their sole discretion, may elect to treat the portion of a Disputed Claim, if any, that is not in dispute as an Allowed Claim, with the disputed portion remaining a Disputed Claim.

**Distribution Account**.  The account established by the Reorganized Debtors pursuant to Article 6 of this Plan from which all cash distribution under the Plan shall be made with respect to all Allowed Claims.

**Effective Date**. The Business Day on which all of the conditions set forth in Article 10 of this Plan shall have been satisfied or waived.

**Estate**.  The bankruptcy estate of the Debtors. All property of the Estate shall be vested in the Reorganized Debtors upon the occurrence of the Effective Date of the Plan.

**Final Order**.  An order that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

**General Unsecured Claim**.  Any Unsecured Claim, other than an Administrative Claim, an Other Priority Claim, or a Priority Tax Claim. Allowed General Unsecured Claims include, without limitation, Allowed Unsecured Deficiency Claims, and any Claim in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim).

**Greenbrier Property**.  Shall mean that certain real property located in Greenbrier, West Virginia and identified as The Ridges at Greenbrier Mountain, Phase I, Lot 25 and commonly known as 565 Greenbrier Mountain Trail, White Sulpher Springs, West Virginia 24986 as further identified in Docket 291.

**Non-Exempt Assets** means those assets designated as not exempt on the liquidation analysis, attached to the Disclosure Statement as Exhibit L, together with any other or further assets of the Debtors that are determined by the Bankruptcy Court to be property of the Debtor's estate prior to the Effective Date.

61189538.9

**Non-Liquid Non-Exempt Assets**. The assets owned by the Debtor Joseph Jemsek (or non-exempt interests in such assets as is shown on in the liquidation analysis contained in the Amended Disclosure Statement) as of the date of the Plan, which consist of: a) Lot 6 Walkingstick Falls Road, Highland NC; b) Household goods (½ interest); c) crystal, collections, art d) cameras; and e) Permanent Seat Licenses, Carolinas Stadium Corporation.

**Non-Exempt Asset Contribution Deadline** means 180 days after the Effective Date.

**Other Priority Claims**. Any Claim to the extent entitled to priority in payment under sections 507(a)(2) through 507(a)(7) of the Bankruptcy Code.

**Person**. An individual, a corporation, a company, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government, governmental unit or any subdivision thereof or any other entity.

**Petition Date**. October 25, 2006 and November 20, 2006 for the Jemsek Clinic and Jemsek, respectively.

**Plan**. This Second Amended Chapter 11 Plan or, as it may be from time to time modified, amended or supplemented, together with any exhibits thereto.

**Polsinelli** shall mean Polsinelli, P.C. as successor in interest to Polsinelli Shughart, P.C. as successor by merger to Polsinelli Shalton Flanigan Suelthaus PC.

**Polsinelli Claims**. Shall mean collectively the Allowed Polsinelli Administrative Claim, the Allowed Polsinelli Secured Claim, the Allowed Polsinelli Unsecured Claim and any claims of Michael Ruggio.

**Priority Non-Tax Claim**. Any Claim arising prior to the Petition Date entitled to priority in payment under Sections 507(a)(1)(a)(7) of the Bankruptcy Code.

**Priority Tax Claim**. Any Claim arising prior to the Petition Date entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

**Pro Rata Share**. As of any certain date, with respect to any Allowed Claim in any Class, the proportionate share that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

**Professional**. Any attorney, accountant, appraiser, auctioneer, or other professional person retained and employed by the Estate in the Chapter 11 Case in accordance with sections 327 and/or 328 of the Bankruptcy Code.

**Projected Disposable Income**. For purposes of 11 USC § 1129(a)(15), it is presumed that the

6

disposable income to be received by the Debtors during the 5-year period beginning on the date that the first payment is due under the Plan, or during the period for which the Plan provides payments, whichever is longer, is $250,000.00.

**Rejected Agreement**. Each unexpired lease or other executory contract of the Debtors, which (i) is not an Assumed Agreement, (ii) has not been expressly assumed or rejected by order of the Bankruptcy Court prior to the Confirmation Date, or (iii) is not the subject of a pending motion to assume on the Effective Date.

**Reorganized Debtors**. The Debtors, as reorganized and re-vested with all of the assets of the Estate pursuant to this Plan.

**Schedules**. The Schedules of Assets and Liabilities, and any amendments thereto, filed by the Debtors with the Bankruptcy Court in accordance with section 521(l) of the Bankruptcy Code.

**Secured Claim**. A Claim to the extent of the value, of any interest in property of the Estate securing such Claim, as determined pursuant to section 506(a) or 1111(b) of the Bankruptcy Code. To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an Unsecured Deficiency Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

**Taxes**. All income, franchise, excise, sales, use, employment, withholding, property, payroll, and other taxes, assessments, and governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local, or foreign governmental authority.

**Unsecured Claim**. A Claim not secured by a charge against or interest in property in which the Estate has an interest, including any Unsecured Deficiency Claim, and any Claim arising at any time under Bankruptcy Rule 3002(c)(3).

**Unsecured Deficiency Claim**. A Claim by a Creditor arising out of the same transaction as a Secured Claim to the extent that the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or by stipulation, of such Creditor's interest in property of the Estate securing such Claim is less than the amount of the Claim which has the benefit of such security as provided by section 506(a) of the Bankruptcy Code.

**Value of property to be distributed under the Plan.** As that phrase is used in 11 USC § 1129(a)(15)(B), no less than $1,531,000.00, including i) approximately $844,000.00 in liquid assets; ii) $77,000.00 in non-liquid assets; iii) Projected Disposable Income of $250,000.00;  iv) the BCBS Plan Funding of $350,000.00 and v) $10,000.00 in new value from an exempt Individual Retirement Account.

**Voting Deadline**. The date set in an order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting the Plan.

7

61189538.9

**Other Definitions**.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning set forth therein. Wherever from the context it appears appropriate, each term stated in either of the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. The words "herein," "hereof," "hereto," "hereunder," and others of similar inference refer to this Plan as a whole and not to any particular article, section, subsection, or clause contained in this Plan. The word "including" shall mean "including without limitation."

**ARTICLE 2**

**PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE
CLAIMS; ADMINISTRATIVE CLAIMS BAR DATE; PROVISIONS
FOR PAYMENT OF ALLOWED PRIORITY TAX CLAIMS**

**2.1 Super-Priority Administrative Claims, Administrative Claims and Priority Tax Claims are Not Classified in this Plan**.  Super-Priority Administrative Claims, Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote to accept or reject the Plan. The treatment of and consideration to be received by holders of Allowed Super-Priority Administrative and Administrative Claims and Allowed Priority Tax Claims pursuant to this Article 2 of the Plan shall be in full and complete satisfaction, settlement, release, and discharge of such Claims. The Debtors' obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

**2.2 Administrative Claims Bar Date**.  Except for the Allowed Polsinelli Administrative Claim and the BCBS Administrative Claim and unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, including applications for final allowance of compensation and reimbursement of expenses of Professionals incurred before the Confirmation Date, must be filed and served on the Debtors and the Bankruptcy Administrator no later than 30 days after the Effective Date. Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. However, the Administrative Claims Bar Date shall not apply to fees and expenses of Professionals incurred after the Effective Date, to the BCBS Administrative Claim, to the Allowed Polsinelli Administrative Claim, or to the funds already paid to Polsinelli.

**2.3 Final Status of Polsinelli Fee Applications.**  All of Polsinelli's interim fee applications are finally and fully approved by the Court as reasonable and necessary, without the need for further application, disclosure, notice or order, but payment is limited as provided in this Plan.  Any interim fee orders are deemed final approvals as of the Effective Date.  Polsinelli needs to make no further application or seek approval of any of its previous fee applications, and any dispute, claim, issue or otherwise as to the fee applications is irrevocably waived.  All of the interim approvals of Polsinelli are deemed final as of the Effective Date and fully approved under the Bankruptcy Code, Bankruptcy Rules

8

61189538.9

of Federal Procedure and Local Rules, provided payment is limited as provided as stated in this Plan. All amounts previously paid to Polsinelli are hereby finally approved as reasonable and necessary and no further application, approval or disclosure is necessary.

**2.4 Treatment of Allowed Super-Priority Administrative and Administrative Claims**. Except to the extent the holder of an Allowed Super-Priority Administrative or Administrative Claim agrees otherwise, each holder of an Allowed Super-Priority Administrative or Administrative Claim, except the BCBS Administrative Claim and the Allowed Polsinelli Administrative Claim, shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) as soon as practicable after the later of (a) the Effective Date and (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due. Furthermore, all fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid pursuant to Section 11.1 of this Plan.

The BCBS Administrative Claim shall be paid by Joseph Gregory Jemsek to BCBS, by <u>any means necessary, including but not limited to</u> the Debtor's Liquid Non-Exempt Assets, the proceeds from the sale of Non-Liquid Non-Exempt Assets, and the Projected Disposable Income as follows: $12,500 per calendar quarter in cash to be paid beginning the first day of the first calendar quarter that begins at least three months after the Effective Date and for 11 consecutive calendar quarters thereafter (to be paid no later than the first day of each such calendar quarter). The BCBS Administrative Claim shall be paid in full before any distributions of the Projected Disposable Income are made to holders of Allowed Class 7 General Unsecured Claims.

The holders of the BCBS Administrative Claim and Allowed Super-Priority Administrative and Administrative Claims are granted liens on the Non-Liquid Non-Exempt Assets shown on Exhibit L to the Disclosure Statement, until such claims are paid in full.

The Allowed Polsinelli Administrative Claim shall be paid by the Debtors and BCBS as follows: (i) BCBS shall pay to Polsinelli's Trust Account $350,000.00 in Certified Funds on the Effective Date in satisfaction of the BCBS Plan Funding Requirement; and (ii) Debtors shall pay Polsinelli $550,000.00 in Certified Funds on the Effective Date.  On the Effective Date, without further order of the Court, approval of the Debtors or notice, Polsinelli may apply the all amounts received from BCBS to the Allowed Polsinelli Administrative Claim and it shall be Polsinelli's sole property once received.

**2.5 Treatment of Priority Tax Claims**.  Each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtors; or (c) in four Cash payments commencing on or before June 30, 2018 and continuing in three additional, annual installments thereafter on or before June 30th of years 2019-2021, respectively, in an aggregate amount equal to such Allowed Priority Tax Claim (less any payments made by the Debtors with respect thereto during the Chapter 11 Case) together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section 1129(a)(9)(C) or (D)

9

of the Bankruptcy Code.

# ARTICLE 3
## CLASSIFICATION AND TREATMENT
## OF CLAIMS AND INTERESTS

**3.1 Class 1:     Allowed Secured Claim of Polsinelli**

3.1.1    Classification

Class 1 consists of the Allowed Secured Claim of Polsinelli.

3.1.2 Treatment

Polsinelli has and shall retain its liens in the Greenbrier Property on and after the Effective Date of the Plan, which is deemed duly perfected.  Polsinelli shall retain its existing liens, and shall retain the same validity, priority and extent that existed on the date approved by the Bankruptcy Court.  Polsinelli is granted relief from the stay to record any necessary lien documents and the Debtors are authorized and directed to sign any necessary lien documents preserving Polsinelli's lien under applicable law, with such documents to be prepared by Polsinelli, which shall secure all amounts due Polsinelli, provided that Polsinelli receives only 50% of the net sale proceeds after payment of any prior existing liens, taxes and other customary closing costs and commissions.  Polsinelli will have a right to approve or disapprove of the sale and in furtherance thereof Polsinelli will be provided with any sale documents and closing statement and identity of the purchaser (including if it is related to any party in this case).  Any money payable to Polsinelli thereunder shall be paid directly at closing of the Greenbrier Property without further Court approval, to the extent there is a dispute regarding the sale proceeds, procedure or costs, the Court will reserve jurisdiction to hear such dispute, and Jemsek agrees to continue to pay any debt service, taxes, and other expenses for the Property until and through sale.   Any prior existing lienholders on the Greenbrier Property must notify Polsinelli of any foreclosure sale or event of default after the Effective Date.  Polsinelli shall have no duty to pay any taxes, prior liens, costs or expenses on the Greenbrier Property.  Polsinelli shall release its liens on the Greenbrier Property upon payment of Certified Funds from the approved sale of the Greenbrier Property.  Polsinelli's lien on the Greenbrier Property shall not be subject to Section 552 of the Bankruptcy Code and Plan, and Polsinelli shall be provided quarterly information on the Greenbrier property relating to payment of taxes, loans, liens, or any legal actions concerning the Greenbrier Property, Debtors agree not to further encumber the Greenbrier Property without Polsinelli's written consent.  If the Greenbrier Property has not sold within two years from the Effective Date, it will be offered for auction with a reserve mutually acceptable to Jemsek, Kay Jemsek, and Polsinelli with the costs of such auction borne solely out of the sale proceeds.

3.1.3 Impairment and Voting

Class 1 is impaired by the Plan. The holders of Class 1 Claims are entitled to vote to accept or reject the Plan. For purposes of voting, Polsinelli shall be considered to be the sole member of the Allowed Secured Polsinelli Claim Class.

61189538.9

### 3.3 Class 2:      Secured Claim of City National Bank of West Virginia

#### 3.2.1 Classification

Class 2 consists of the Allowed Secured Claim of CNB.

#### 3.2.2 Treatment

This Claim shall be treated as a secured obligation of the Reorganized Debtors upon the terms and conditions as set forth in a Consent Order to Resolve Motion for Relief from Stay Filed by City National Bank of West Virginia (the "Consent Order") to be filed with the Bankruptcy Court prior to the Confirmation Hearing. The Consent Order will extend the maturity of the CNB secured obligation by 24 months. CNB shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 2 Claim is satisfied as set forth in the Consent Order, the terms of which will be incorporated into the Plan by reference.

#### 3.2.3  Impairment and Voting

Class 2 is impaired by the Plan. The holder of Class 2 Claim is entitled to vote to accept or reject the Plan.

### 3.3 Class 3:      Secured Claim of Greenbrier County, West Virginia Tax Collector

#### 3.3.1 Classification

Class 3 consists of the Allowed Secured Claim of the Greenbrier County, West Virginia Tax Collector.

#### 3.3.2 Treatment

This claim shall be treated as a secured obligation. The claim will be paid in full directly by Jemsek on or before January 1, 2019.

#### 3.3.3  Impairment and Voting
Class 3 is impaired by the Plan. The holder of the Class 2A Claim is entitled to vote to accept or reject the Plan.

### 3.4 Class 4:    Claims of Kay Jemsek

#### 3.4.1 Classification

Class 4 consists of the claims of Kay Jemsek

11

61189538.9

### 3.4.2 Treatment

The Claims shall be treated in accordance with the February 7, 2017 Separation, Property Settlement, Alimony and Child Custody & Support Agreement, attached hereto as Exhibit A and incorporated herein by reference, with the following modifications: a) Paragraphs 13(a), 13(b), 13(c) shall be deleted; b) Paragraph 23 shall be modified to delete the requirement for the establishment of an educational trust; and c) Paragraph 24 shall be deleted. In consideration of these modifications, Jemsek agrees to contribute a minimum of $4,000.00 monthly to the educational expenses contemplated in Paragraphs 22 and 23 of the Agreement.

### 3.4.3 Impairment and Voting

Class 4 is impaired by the Plan. The holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

## 3.5 Class 5:     Priority Non-Tax Claims

### 3.5.1 Classification

Class 5 consists of Priority Non-Tax Claims.

### 3.5.2 Treatment

Each holder of an Allowed Priority Non-Tax Claim shall be paid the Allowed Amount of its Allowed Priority Non-Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between the holder of an Allowed Priority Claim and the Reorganized Debtors; or (c) in four Cash payments commencing on or before June 30, 2019 and continuing in three additional, annual installments thereafter on or before June 30th of years 2020-2022, respectively, with interest at the rate of 3.25% per annum and any fees due thereon.

### 3.5.3 Impairment and Voting

Class 5 is impaired by the Plan. The holders of the Class 5 Claims are entitled to vote to accept or reject the Plan.

## 3.6 Class 6:     Convenience Claims, General Unsecured Claims of $5,000.00 or less

### 3.6.1 Classification

Class 6 consists of the General Unsecured Claims of $5,000.00 or less.

### 3.6.2 Treatment

61189538.9

Each holder of a Class 6 Allowed General Unsecured Claim of $5,000.00 shall be paid 50% of its Allowed Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; or (b) within 15 days after then entry of a Final Order allowing such claim.

### 3.6.3 Impairment and Voting

Class 6 is impaired by the Plan. The holders of the Class 6 Claims are entitled to vote to accept or reject the Plan.

### 3.7 Class 7:    General Unsecured Claims exceeding $5,000 (including the Allowed BCBS Claim and Allowed Polsinelli Unsecured Claim)

### 3.7.1 Classification

Class 7 consists of all General Unsecured Claims exceeding $5,000 (including, but not limited to the Allowed BCBS Claim and the Allowed Polsinelli Unsecured Claim).

### 3.7.2 Treatment

These Claims shall be treated as an unsecured obligation of the Reorganized Debtors. Except as noted herein with respect to the Allowed BCBS Claim and the Allowed Polsinelli Unsecured Claim, in full satisfaction of their claims, the holders of Allowed Class 7 Claims will receive pro-rata distributions from the Distribution Account after the payment to the holders of allowed Super-Priority, Allowed Administrative, Allowed Priority and Allowed Class 1 through 6 claims. Except with respect to the Allowed BCBS Claim and the Allowed Polsinelli Unsecured Claim (the holders of which are waiving distribution rights), holders of Allowed Class 7 Claims will receive even quarterly pro-rata distributions of the balance of Projected Disposable Income remaining after the payment of the BCBS Administrative Claim and Allowed Super-Priority Administrative and Administrative Claims. Distributions will commence on the first day of the calendar quarter subsequent to the payment in full of the BCBS Administrative Claim and Allowed Super-Priority Administrative and Administrative Claims, and will continue on a quarterly basis for no more than eight quarters.  Payments will cease when all of the Value of Property to be Distributed Under the Plan has been distributed. The holders of the Allowed BCBS Claim and the Allowed Polsinelli Unsecured Claim shall not receive distributions under this Section 3.7.2 of the Plan.

### 3.7.3 Impairment and Voting

Class 7 is impaired by the Plan. The holders of Class 7 Claims, including the holders of the Allowed BCBS Claim and the Allowed Polsinelli Unsecured Claim are entitled to vote to accept or reject the Plan.

## ARTICLE 4
## ACCEPTANCE OR REJECTION OF THE PLAN

13

61189538.9

**4.1 Impaired Classes Vote**. Each holder of a Claim or Interest in an impaired Class receiving or retaining anything under this Plan is entitled to vote to accept or reject this Plan to the extent and in the manner provided in the Plan, the Bankruptcy Code and the Bankruptcy Rules, or in any voting procedures order.

**4.2 Acceptance by Impaired Classes of Claims**. Acceptance of this Plan by any Impaired Class entitled to vote shall be determined in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any voting procedures order entered by the Bankruptcy Court.

**4.3 Designation of Classes Entitled to Vote**. All Classes are impaired, and the holders of Claims and Interests in all Classes are entitled to vote on the Plan.

**4.4 Nonconsensual Confirmation**. With respect to any Impaired Class, including any Class of Claims or Interests created pursuant to amendments or modifications to this Plan, that does not accept the Plan, the Debtor will request that the Bankruptcy Court confirm this Plan by "cramdown" under Section 1129(b) of the Bankruptcy Code with respect to any such nonaccepting Class or Classes at the Confirmation Hearing, and the filing of this Plan shall constitute a motion for such relief.

# ARTICLE 5
# EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.1 Assumption and Rejection; Exceptions Thereto**. Jemsek shall assume the leases of his apartments in Washington, D.C. and Charlotte, N.C. Any executory contract or unexpired lease assumed pursuant to the Plan shall be and hereby is assumed by the Reorganized Debtors as of the Effective Date and shall be fully enforceable by the Reorganized Debtors in accordance with its terms, and shall include all written modifications, amendments, supplements of said executory contract or unexpired lease and, as with respect to executory contracts or unexpired leases that relate to real property, shall include all written agreements and leases appurtenant to the premises, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easements, and any other interests in real property or rights in rem related to such premises.

The Debtors reserve the right at any time before the Effective Date to amend the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to: (a) delete any executory contract or unexpired lease listed on the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," thus providing for its assumption under the Plan, or (b) add any executory contract or unexpired lease to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," thus providing for its rejection under the Plan. The Debtors shall provide notice of any such amendment of the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to the other party or parties to the affected executory contract and/or unexpired lease, and to the Office of the Bankruptcy Administrator.

**5.2 Cure Payments, Compensation for Pecuniary Loss, and Adequate Assurance**. All payments, including any and all cure payments, adequate assurance or compensation for actual pecuniary loss, required to be paid or provided for by §§ 365(b)(1)(A)-(C) of the Bankruptcy Code (the "Cure

14

Payments") for any executory contract or unexpired lease that is being assumed under the Plan, unless disputed by the Debtors, shall be made by the Reorganized Debtors on the Effective Date. The Debtors hereby give notice that there are no Cure Payments due with respect to any executory contracts and unexpired leases to be assumed under the Plan. Any non-debtor party to any executory contract or unexpired lease to be assumed under the Plan that objects to assumption of the executory contract or unexpired lease or believes that a Cure Payment is due in connection with such assumption must file a written objection to the assumption of such executory contract or unexpired lease with no Cure Payment and state in the written objection the grounds for such objection and specifically set forth the amount of any request for a Cure Payment by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan. Unless the non-debtor party to any executory contract or unexpired lease to be assumed files and serves on the Debtors and their counsel an objection to assumption of such executory contract or unexpired lease for any reason, or asserting that a Cure Payment is required or owed in connection with such assumption, by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan, then the executory contracts and unexpired leases shall be assumed, and any default then existing in the executory contract and/or unexpired lease shall be deemed cured as of the Effective Date, and there shall be no other cure obligation or Cure Payment due or owed by anyone, including the Debtors and the Reorganized Debtors, in connection with such assumption. Any Claims for Cure Payments not filed as part of a written objection to the proposed assumption within such time period will be forever barred from assertion against the Debtors, their Estate, the Reorganized Debtors, and their assets, and the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof. In the event of an objection to the assumption of executory contracts or unexpired leases regarding the amount of any Cure Payment, or the ability of the Reorganized Debtors to provide adequate assurance of future performance or any other matter pertaining to assumption, (a) the Bankruptcy Court will hear and determine such dispute at the Confirmation Hearing, and (b) in the discretion of the Debtors, the Debtors (i) may assume such disputed executory contract or unexpired lease by curing any default or providing adequate assurance in the manner determined by the Bankruptcy Court, or (ii) the Debtors may reject such executory contract or unexpired lease as of the Effective Date. The Reorganized Debtors shall make any Cure Payment on the later of the Effective Date or the date such Cure Payment is due pursuant to a Final Order, provided, however, that the Reorganized Debtors shall have ten (10) Business days after any order determining the amount of a disputed Cure Payment becomes a Final Order in which to amend the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to provide for the rejection of such executory contract or unexpired lease and, in such an event, such executory contract or unexpired lease shall be deemed rejected as of the Effective Date.

**5.3 Effect of Confirmation Order on Executory Contracts and Unexpired Leases**. Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of any such assumptions pursuant to Section 365(a) and 1123(b)(2) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, their estate, and all parties in interest. In addition, the Confirmation Order shall constitute a finding of fact and conclusion of law that (i) there are no defaults of the Debtors, no Cure Payments owing (including that there is no compensation due for any actual pecuniary loss), (ii) there is adequate assurance of future performance with respect to each such assumed executory contract or unexpired lease, (iii) such assumption is in the best interest of the Debtors and the Estate, (iv) upon the Effective Date, the assumed executory contracts

15

or unexpired leases constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof, and (v) the non-debtor counter party to each assumed executory contract or unexpired lease is required to and ordered to perform under and honor the terms of the assumed executory contract or unexpired lease. All executory contracts and unexpired leases assumed under the Plan or during the Chapter 11 Case constitute valid contracts and leases, as applicable, enforceable by the Debtors or Reorganized Debtors against the non-debtor counterparties regardless of any cross-default or change of control provisions in any contracts or leases assumed or rejected under the Plan or during the Chapter 11 Case.

Likewise, subject to the occurrence of the Effective Date, the Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection as of the Effective Date of all executory contracts and unexpired leases which are not assumed under this Plan, with the rejection effective as of the day before the Petition Date, as being burdensome and not in the best interest of the Estate.

**5.4 Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan**. Any Claims for damages arising from the rejection of an executory contract or unexpired lease under this Plan must be Filed within thirty (30) days after the Confirmation Date or such Claims will be forever barred and unenforceable against the Debtors, the Reorganized Debtors, and the Estate, and the holders of any such Claims are barred from receiving any distributions under the Plan.

# ARTICLE 6
# DISTRIBUTIONS

**6.1 Establishment of Distribution Account**. Upon confirmation of the Plan, The Henderson Law firm on behalf of the Reorganized Debtors shall establish a segregated trust account which will be the Distribution Account. Thereafter, the Reorganized Debtors shall fund the Distribution Account as necessary to fulfill the obligations of the Debtors under this Plan.

**6.2 Distributions Under the Plan**. The Reorganized Debtors or, at the option of the Reorganized Debtors, any distribution agent the Reorganized Debtors may retain, shall make all distributions to the holders of Allowed Claims and Allowed Interests that are required under this Plan. Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without the accrual of any interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

**6.3 Delivery of Distributions, Instruments, or Property**. Distributions or delivery of instruments required under this Plan shall be made at the addresses indicated in the Debtors' records. In the event that any distribution or instrument is returned as undeliverable, the Reorganized Debtors shall use reasonable efforts to determine the current address of the applicable claimant, and no distribution or delivery to such claimant shall be made unless and until the Reorganized Debtors have determined such then current address; provided, however, that if any distribution or instrument remains unclaimed after the first anniversary after distribution or delivery, such distribution or instrument shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code and shall be vested in the

16

Reorganized Debtors. In such event, the Claim of the holder for such distribution or instrument shall no longer be deemed to be Allowed, and such holder shall be deemed to have waived its rights to such distribution or delivery under this Plan pursuant to section 1143 of the Bankruptcy Code, shall have no further claim or right thereto, and shall not participate in any further distributions under this Plan with respect to such Claim. Checks issued by the Reorganized Debtors in respect of Allowed Claims shall be null and void if not negotiated within 120 days after the date of issuance thereof. Surrender of any property under this Plan to a holder of an Allowed Claim shall be made by mailing written notice of such surrender to the holder of the applicable Allowed Claim at its address as shown in a filed Proof of Claim or in the Schedules. In the event that the recipient of such notice does not contact the Reorganized Debtors or their counsel to arrange for retrieval or storage of the surrendered property at such recipient's expense within thirty (30) days' of the date thereof, such property shall be deemed unclaimed pursuant to § 347(b) and shall become vested in the Reorganized Debtors. The Claim of the holder otherwise entitled to such surrender shall no longer be deemed to be Allowed, and such holder shall be deemed to have waived its rights to any distribution or surrender under this Plan pursuant to § 1143 of the Bankruptcy Code, shall have no further claim or right thereto, and shall not participate in any further distributions under this Plan with respect to such Claim. In such event, the Reorganized Debtors may seek entry of an order by the Bankruptcy Court cancelling any lien, encumbrance, or interest on or in the affected property.

**6.4 Third-Party Agreements**. Distributions to the Classes of Claims or Interests hereunder will not affect the right of any entity to levy, garnish, attach, or employ any other legal process with respect to such distributions by reason of any claimed subordination of lien priority rights or otherwise. All subordination agreements entered into by any parties in interest shall be enforceable to the extent permitted by applicable law, and all distributions and payments made pursuant to the Plan shall be subject to applicable law.

**6.5 Manner of Payment Under the Plan**. At the option of the Reorganized Debtors, any payment in Cash to be made under the Plan may be made by check or wire transfer from a domestic bank or as otherwise required by applicable agreement.

**6.6 No Fractional Distributions**. No fractional dollars shall be distributed under the Plan. For purposes of distributions, Cash distributions shall be rounded up or down, as applicable, to the nearest whole dollar.

**6.7 Withholding and Reporting**. The Reorganized Debtors shall comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions shall be subject to such withholding and reporting requirements.

## ARTICLE 7
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**7.1 Sources of Funding**. The Plan contemplates that distributions will be funded by any means necessary, including but not limited to the Debtor's Liquid Non-Exempt Assets, the proceeds from the sale of Non-Liquid Non-Exempt Assets, the Projected Disposable Income, and by BCBS, solely in the

17

61189538.9

amount of the BCBS Plan Funding.

**7.2 New Value Contribution**. Jemsek will contribute a lump sum of $10,000 to the Distribution Account on the Effective Date. Said funds will be from an exempt IRA and will be used to pay partial distributions to the holders of the BCBS Administrative Claim, Super-Priority Administrative Expense Claims and Administrative Expense Claims.

**7.3 Authority to Act Following Confirmation Date**. Upon confirmation of this Plan, the Debtors shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including, without limitation, the execution and filing of all documents required or contemplated by this Plan. In connection with the occurrence of the Effective Date, the Reorganized Debtors are authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**7.4 Authority to Act Following Effective Date**. The Reorganized Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

**7.5 Status of Existing Liens**. Unless otherwise provided in this Plan or by Order of the Bankruptcy Court, on the Effective Date, all existing liens established by properly perfected security agreements and held by any Class or Classes on the Debtors' assets as described in this Plan shall retain the same priority that existed on the Petition Date, provided that such liens and any related rights shall not extend to property acquired by the Debtor after commencement of the Chapter 11 Case as set forth in section 552 of the Bankruptcy Code.

Section 552 of the Bankruptcy Code shall continue to apply to all such liens following confirmation of the Plan. All other liens, encumbrances, and related rights (including, but not limited to, rights of setoff) not specifically provided for in the Plan shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule.

**7.6 Effectuating Documents and Further Transactions**. The Debtors and the Reorganized Debtors shall be authorized, but not required, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

**7.7 Liquidation of Non-Liquid Non-Exempt Assets.** On or before the Non-Exempt Asset Contribution Deadline, the Debtors shall deposit the proceeds from the sale of all Non-Liquid Non-Exempt Assets (that are not already reduced to cash as of the Effective Date) to the Distribution Account using any or all of the following mechanisms in Debtors' sole and absolute discretion:

18

61189538.9

(a) liquidate and reduce to cash proceeds the Non-Liquid Non-Exempt Assets that are not already cash proceeds as of the Effective Date and contribute the net proceeds of such Non-Exempt Assets to the Distribution Account; or

(b) contribute to the Distribution Account Exempt Assets consisting of cash or cash equivalents in lieu of liquidating a particular Non-Liquid Non-Exempt Asset; provided, however, that the amount of such contribution shall be not be less than the net value ascribed to each Non-Liquid Non-Exempt Asset as shown on the Liquidation Analysis (**Exhibit L** to the Disclosure Statement).

## ARTICLE 8
## RESOLUTION OF DISPUTED CLAIMS AND INTERESTS

**8.1 Objections to Claims and Interests**. The Debtors, and after the Effective Date, the Reorganized Debtors, shall have the exclusive right to object to the allowance, amount or classification of Claims and Interests asserted in the Chapter 11 Case, and such objections may be litigated to Final Order by the Debtors or Reorganized Debtors, or compromised and settled in accordance with the business judgment of the Debtors or Reorganized Debtors, as applicable, without further order of the Bankruptcy Court. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims and Interests shall be Filed no later than sixty (60) days after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court, which extensions may be obtained by the Reorganized Debtors without notice upon ex parte motion.  Provided, that Debtors shall have no right to object, seek reconsideration or appeal the BCBS Administrative Claim, Allowed BCBS Claim, Allowed Polsinelli Administrative Claim, Allowed Polsinelli Secured Claim, and the Allowed Polsinelli Unsecured Claim.

**8.2 Estimation of Disputed Claims and Interests**. The Debtors and, after the Effective Date, the Reorganized Debtors, may at any time request that the Bankruptcy Court estimate for all purposes, including distributions under this Plan, any Disputed, contingent or unliquidated Claim or Interest pursuant to Section 502(c) of the Bankruptcy Code whether or not the Debtors or the Reorganized Debtors have previously objected to such Claim or Interest. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest at any time, including, without limitation, during the pendency of an appeal relating to such objection. Provided, that Debtors shall have no right to estimate the BCBS Administrative Claim, Allowed BCBS Claim, Allowed Polsinelli Administrative Claim, Allowed Polsinelli Secured Claim, and the Allowed Polsinelli Unsecured Claim.

**8.3 No Distribution on Account of Disputed Claims and Interests.** Notwithstanding anything else contained in this Plan, except with respect to any undisputed, non-contingent and liquidated portion of General Unsecured Claims, no distribution shall be due or made with respect to all or any portion of any disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order.

61189538.9

# ARTICLE 9
## EFFECT OF CONFIRMATION OF PLAN

**9.1 Vesting of Assets and Retained Causes of Action**. On the Effective Date, pursuant to Section 1141(b) of the Bankruptcy Code, all assets and property of the Debtors shall vest in the Reorganized Debtors free and clear of any and all Claims, Liens, Interests, and other interests, charges and encumbrances, except as otherwise expressly provided in this Plan or in the Confirmation Order. Consistent with the terms of this Plan, from and after the Effective Date the Reorganized Debtors may operate their businesses, and may own, use, acquire and dispose of their respective property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if the Chapter 11 Case had never been filed. Except as otherwise provided in this Plan, the Reorganized Debtors shall retain all rights and are authorized to commence and pursue, as the Reorganized Debtors deem appropriate, any and all claims and causes of action, including, but not limited to Avoidance Actions, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, and including but not limited to, the claims and causes of action specified in the Plan, any Plan exhibit, the Disclosure Statement, or any exhibit to the Disclosure Statement.

**9.2 Binding Effect**. Subject to the occurrence of the Effective Date on or before the deadline set forth in Article 10 of the Plan, on and after the occurrence of the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or an Interest in, the Debtors and/or their Estate and such holder's successors and assigns, whether or not such holder's Claim or Interest is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

**9.3 Discharge of the Debtors**.  Except as noted in Article 14, the consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, discharge, release, and termination of all Claims of any nature whatsoever against the Debtors and their Estate.  The Debtors shall be entitled to move for entry of a discharge pursuant to section 1141 of the Bankruptcy Code.  If such discharge is approved by Order of the Bankruptcy Court (the "Discharge Order"), the Debtors shall be deemed discharged and released pursuant to section 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the date of the Discharge Order, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted this Plan.

**9.4 Effect of Discharge**. Except as noted in Article 14, the Discharge Order shall be a judicial determination of discharge and termination of all liabilities of and all Claims against the Debtors and the Estate, except as otherwise specifically provided in this Plan. Upon the entry of the Discharge Order, as to every discharged Claim and other debt of the Debtors, the holder of such Claim or other debt of the Debtors shall be permanently enjoined and precluded from asserting against the Reorganized Debtors, or against their assets or properties or any transferee thereof, any other or further Claim or other debt of the Debtors based upon any document, instrument, or act, omission, transaction, or other activity of any

20

kind or nature that occurred prior to the entry of the Discharge Order except as expressly set forth in this Plan. In the event that, after entry of the Discharge Order, any Person asserts, against the Reorganized Debtors or any of their subsidiaries or affiliates, any right to payment or equitable remedy for breach of performance which gives rise to a right of payment, which right was not asserted prior to the entry of the Discharge Order but is based on any act, fact, event, occurrence, or omission, by or relating to the Debtors as they existed before the entry of the Discharge Order, and in the further event that such right is determined by the Bankruptcy Court (a) not to have been discharged pursuant to the provisions of section 1141 of the Bankruptcy Code and this Plan, and (b) that such right may be asserted against the Reorganized Debtors, then, in such circumstances the holder of such right shall be entitled to receive from the Reorganized Debtors value equivalent to that such holder would have received if such right had been asserted against the Debtors before the Confirmation Date and only to the extent such right would have been an Allowed Claim. Nothing in this section 9.4 shall have the effect of excepting from discharge any Claim that is or would be discharged pursuant to section 1141 of the Bankruptcy Code or this Plan.

**9.5 Terms of Certain Injunctions**. Except as noted in Article 14, as of and on the Confirmation Date, all Persons who have held, hold, or may hold Claims against the Debtors and/or the Estate shall be deemed to have waived, released, and discharged all rights or claims, whether based upon tort, contract or otherwise, which they possessed or may possess prior to the Confirmation Date against the Debtors and/or the Estate, except as otherwise provided for in this Plan (including the documents filed as Schedules or Exhibits to the Plan) or the Confirmation Order; provided, however, that the foregoing release shall not apply to nonperformance under the Plan. The Confirmation Order shall constitute a permanent injunction effectuating these releases, such that all Persons who have held, hold, or may hold Claims against the Debtors and/or the Estate shall be expressly prohibited from taking any action to enforce such Claims against the Reorganized Debtors or their property, or any transferee of such property. Further, any holder of an Allowed Secured Claim whose collateral is surrendered to it pursuant to the terms of this Plan shall be enjoined from exercising its in rem rights as to such collateral unless and until it provides written notice to the Debtors of its intent to do so at least thirty (30) days prior to initiating any action, proceeding, notice, or sale otherwise authorized under applicable law in connection with such in rem rights.

Unless otherwise provided herein or in the Confirmation Order, all injunctions and/or stays provided for in, or in connection with, this Chapter 11 Case shall remain in full force and effect through the Effective Date and thereafter. In addition, the Debtors or the Reorganized Debtors may seek such further orders as they deem necessary or appropriate to preserve the status quo following occurrence of the Confirmation Date.

**9.6 No Successor Liability**. Except as otherwise specifically provided in the Plan or the Confirmation Order, neither the Debtors nor the Reorganized Debtors will have any responsibilities, pursuant to the Plan or otherwise, for any liabilities or obligations of the Debtors or any of the Debtors' past or present companies, affiliates, subsidiaries or predecessors-in interest relating to or arising out of the operations of or assets of the Debtors or any of the Debtors' past or present companies, affiliates, subsidiaries, or predecessors-in-interest whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date. The Reorganized Debtors shall have no successor or transferee liability of any kind for any Claims; provided, however, that the

21

Reorganized Debtors shall have the obligations specifically and expressly provided, and solely in the manner stated, in the Plan.

**9.7 Preservation of All Causes of Action Not Expressly Settled or Released**. Except as noted in Article 14, without limiting or restricting any other provisions of this Plan, including but not limited to Section 9.1, unless a Claim, cause of action, or objection against a Creditor or other entity is expressly and specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, the Reorganized Debtors expressly reserve such claim, cause of action, or objection for adjudication or pursuit by the Reorganized Debtors after the Effective Date.

Therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims, causes of action, or objections by the Reorganized Debtors upon or after the Confirmation Date or Effective Date of the Plan based on the Disclosure Statement, the Plan, the Confirmation Order or otherwise. The Reorganized Debtors expressly reserve the right to pursue or adopt any claims (and any defenses), causes of action, or objections of the Debtors or the Debtors in Possession, as trustees for or on behalf of the Creditors, not specifically and expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order against any entity, including, without limitation, the plaintiffs or codefendants in any lawsuits. The Reorganized Debtors shall be the representatives of the Estate appointed for the purposes of pursuing any and all such claims, causes of action, and objections under section 1123(b)(3)(B) of the Bankruptcy Code.

Any Person to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors, should assume that such obligation, transfer, or transaction may be reviewed by the Reorganized Debtors subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, be the subject of an action, claim, demand, or objection after the Confirmation Date or the Effective Date, whether or not (a) such Person has filed a proof of claim in the Chapter 11 Case, (b) such Person's proof of claim has been objected to, (c) such Person's Claim was included in the Debtors' Schedules, or (d) such Person's scheduled Claim has been objected to or has been identified by the Debtors as disputed, contingent, or unliquidated.

## ARTICLE 10
## THE EFFECTIVE DATE OF THE PLAN

**10.1 Conditions to Occurrence of Effective Date of Plan**. The "effective date of the plan," as used in Section 1129 of the Bankruptcy Code, shall not occur until the Effective Date as defined herein. The Effective Date shall occur upon the earlier of: (a) the Business Day that is thirty (30) days after entry of the Confirmation Order; or (b) upon satisfaction of the following conditions precedent (or conditions subsequent with respect to actions that are to be taken contemporaneously with, or immediately upon, the occurrence of the Effective Date), any of which may be waived in writing by the Debtors.

22

61189538.9

10.1.1 The Confirmation Order shall have been entered by the Bankruptcy Court.

10.1.2 The Confirmation Order shall have become a Final Order.

10.1.3 All actions, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan, if any, shall have been executed and delivered by any applicable non-debtor parties in form and substance satisfactory to the Debtors.

10.1.4 All actions, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan, shall have been executed by the Debtors.

10.1.5 The new value contribution contemplated in section 7.2 of the Plan shall have been deposited into the Distribution Account

10.1.6 Any federal, state, local and foreign governmental authorizations, consents and regulatory approvals required for the consummation of each of the transactions contemplated in the Plan shall have been obtained and shall have become final and non-appealable and, with respect to any court proceeding relating thereto, been approved by Final Order.

10.1.7 All fees and expenses due to or incurred by Professionals for the Debtors through the Effective Date not previously paid pursuant to interim or Final Orders shall have been paid into and shall be held in trust, free and clear of Liens, Claims and encumbrances (other than the rights of such Professionals) until due and payable in accordance with applicable court order, unless otherwise agreed by such Professionals.

10.1.8 All payments required to be made on the Effective Date shall have been made or waived in a separate writing by such party with the right to receive the payment

10.1.9 BCBS shall have paid the BCBS Plan Funding.

10.2 Filing of Notice of Effective Date. Within fourteen (14) Business Days of the occurrence of the Effective Date, the Reorganized Debtors shall file a notice of occurrence of the Effective Date signed by their counsel in the record of the Bankruptcy Court reflecting (a) that the foregoing conditions to the occurrence of the Effective Date have been satisfied or waived by the Debtors and any other person whose consent or waiver is required, (b) the date of the Effective Date, and (c) acknowledging that the Effective Date has occurred on and as of such date.

10.3 Revocation of Confirmation Order or Withdrawal of Plan. The Debtors may revoke or withdraw the Plan prior to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Chapter 11 Case. If the Plan is withdrawn prior to the Confirmation Date or if the Effective Date does not occur prior to the date set forth in Article 10, then the Plan shall be deemed withdrawn and the Confirmation Order (if any has been entered) shall be automatically revoked without the need for any action by any party in interest or the Bankruptcy Court. In such event, the Plan and the Confirmation Order shall be of no further force or effect and, the Debtors and all holders of Claims and Interests shall

23

be restored to the status quo ante as of the day immediately preceding the filing of the Plan, and (ii) all the Debtors' respective obligations with respect to Claims and Interests shall remain unchanged, all of the Debtors' rights and claims against all Entities shall be fully preserved and nothing contained herein or in the Disclosure Statement shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtors or any other Persons or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors or any other Persons.

In the event BCBS pays the BCBS Plan Funding and the Plan does not become effective within 90 days of such payment, BCBS shall be entitled to a complete refund of the BCBS Plan Funding without interest, and such entitlement shall not be subject to recoupment, setoff, or reduction and all parties rights and claims shall be preserved and not waived or released.  BCBS, Polsinelli and the Debtors may agree to extend the 90 days by email or other writing.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1 Payment of Statutory Fees. All fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid by the Reorganized Debtors, as, when and in the amount as required by applicable law, without the filing of any motion or request therefor.

11.2 Notice. Any notice required or permitted to be provided to the Debtors or Reorganized Debtors under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight courier service, freight prepaid, to be addressed as follows: The Henderson Law Firm, 1201 Harding Place, Charlotte, NC 28204.

11.3 Headings. The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

11.4 Governing Law. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of North Carolina, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

11.5 Additional Documents. The Debtors and Reorganized Debtors have the authority to take any and all actions and execute (and perform) any agreements and documents as the Debtors and/or Reorganized Debtors deem necessary or appropriate in their reasonable discretion to effectuate and further evidence the terms and conditions of this Plan.

11.6 Compliance with Tax Requirements. In connection with this Plan, the Debtors and the Reorganized Debtors will comply with all applicable withholding and reporting requirements imposed by

61189538.9

federal, state, and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

11.7 Legal Representation Regarding the Plan. The Debtors and the Bankruptcy Estates of both are represented by Mr. James H. Henderson regarding all parts and process of this Plan. The Debtors and the Bankruptcy Estates of both are <u>not</u> represented by Polsinelli or any employee or agent thereof with regard to any parts or process of this Plan. Polsinelli's previous representation of the Debtors regarding that certain adversary action, is concluded as of the confirmation of this Plan, regardless of the occurrence of the Effective Date.

11.8 Exemption from Transfer Taxes. To the extent applicable, the issuance, transfer, or exchange of any securities under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall be exempt from all taxes as provided in Section 1146(a) of the Bankruptcy Code.

11.9 Further Authorizations. The Debtors, and after the Effective Date, the Reorganized Debtors, may seek such orders, judgments, injunctions, and rulings they deem necessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan.

11.10 Successors and Assigns. The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Person.

11.11 Modification and Amendment of the Plan. Subject to section 1127 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3019, this Plan may be amended or modified exclusively by the Debtors. Confirmation of the Plan will serve to conclusively establish the Debtors' Projected Disposable Income, and neither the United States Bankruptcy Administrator nor any holder of an allowed unsecured claim may request or be allowed an increase in the amount of payments provided for in the Plan.

11.12 Upon the occurrence of a default under the terms of this Plan, the Creditor shall send written notice of such default to the Debtors and shall provide the Debtor with a period of thirty (30) days from the date said notice is delivered to the Debtors to cure such default, prior to exercising any rights and remedies under this Plan or under applicable law. A copy of any notice of default required to be given by this Plan shall be served on Debtors at 1255 25th St. NW, Apt. 621, Washington, D.C., 20037 and 2440 M St. NW, Washington, D.C. 20037, with a copy served on James H. Henderson, The Henderson Law Firm, 1201 Harding Place, Charlotte, N.C., 28204.

## ARTICLE 12
## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain jurisdiction over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case or this Plan, including, without limitation, the following:

25

61189538.9

12.1 Executory Contracts and Unexpired Leases. To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtors are a party or with respect to which the Debtors may be liable, (ii) to review and determine all Cure Payments under any such assumed executory contract or unexpired lease, and (iii) to review and determine any Claims resulting from the rejection of any executory contract or unexpired lease.

12.2 Causes of Action. To determine any and all causes of action, including all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Reorganized Debtors after the Effective Date.

12.3 Disputed Claims, Contingent Claims and Unliquidated Claims Allowance/Disallowance. To hear and determine any objections to the allowance of Claims or Interests (other than Claims that are Allowed pursuant to the Plan), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, contingent Interest, disputed Interest in whole or in part, and to determine any and all disputes among Creditors and holders of Interests with respect to their Claims and Interests.

12.4 Enforcement/Modification of Plan (other than a request to increase payments under 11 USC § 1127(e)(1)).

12.4.1 To hear and determine any requests to modify this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

12.4.2 To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

12.4.3 To hear and determine such other matters that may be set forth in the Plan and the Confirmation Order or that relate to any transaction required or contemplated by the Plan.

12.4.4 To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Confirmation Order, and all orders entered by the Bankruptcy Court in this Chapter 11 Case.

12.4.5 To hear and determine any issue relating to distributions under the Plan.

12.4.6 To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under section 105 of the Bankruptcy Code.

12.4.7 To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by section 1142 of the Bankruptcy Code.

61189538.9

12.5 Compensation of Professionals. To hear and determine all applications for allowance of compensation and reimbursement of expenses of Professionals, any other fees and expenses authorized to be paid or reimbursed under this Plan, and to approve the reasonableness of any payments made or to be made as provided in section 1129(a)(4) of the Bankruptcy Code.

12.6 Settlements. To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or cause of action by the Debtors or the Reorganized Debtors.

12.7 Taxes. To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtors or Debtors in Possession may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

12.8 506(b), (c) Claims. To determine the amounts, if any, of the reasonable fees, costs and other charges payable under sections 506(b) and/or (c) of the Bankruptcy Code.

12.9 Specific Purposes. To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

12.10 Final Decrees. To enter an order or final decree closing the Chapter 11 Case.

## ARTICLE 13
## SUBSTANTIVE CONSOLIDATION

Upon entry of the Confirmation Order, the Debtors' cases will be substantively consolidated. With respect to Jemsek and the Jemsek Clinic, assets will be considered part of a common pool of assets, and allowed claims of creditors will be treated as claims against the common assets.

## ARTICLE 14
## SETTLEMENT WITH BCBS, POLSINELLI AND MULLEN HOLLAND COOPER, PA

14.1    Debtors' Release of BCBS.  The Debtors for themselves, their heirs and associates, attorneys, and personal representatives, agree to irrevocably and unconditionally release, acquit, and discharge BCBS, and all of its respective affiliates, parents, subsidiaries, related entities, officers, directors, employees, agents, managers, representatives, attorneys, successors and assigns (together, the "Blue Cross Released Parties"), from any and all claims, actions or causes of action, demands, damages (both actual, treble and punitive), costs, judgments, expenses, liabilities, attorneys' fees and legal costs, whether legal, equitable, known or unknown, that was brought or could have been brought in the Chapter 11 Case and any related adversary proceedings, or is in any way related to the factual basis of any aspect of the Chapter 11 Case or any related adversary proceedings, including but not limited to all counterclaims asserted against BCBS and any sanctions regarding litigation conduct of BCBS or its attorneys, provided, however, that the Debtors do not waive or release any claim against BCBS arising under the Plan due to the failure of BCBS to pay the BCBS Plan Funding.

27

14.2 BCBS's Release of the Debtors and Polsinelli.  BCBS, for itself, its heirs and associates, and personal representatives, agrees to irrevocably and unconditionally release, acquit and discharge the Debtors, and all of their respective affiliates, parents, subsidiaries, related entities, officers, directors, employees, agents, managers, representatives, attorneys, successors and assigns (the "Debtor Released Parties") and Polsinelli and its attorneys, from any and all claims, actions or causes of action, demands, damages (both actual, treble and punitive), costs, judgments, expenses, liabilities, attorneys' fees and legal costs, whether legal, equitable, known or unknown, that was brought or could have been brought in the Chapter 11 Case and any related adversary proceedings, or is in any way related to the factual basis of any aspect of the Chapter 11 Case or any related adversary proceedings, provided, however, that BCBS does not waive or release any claim against the Debtor Released Parties if Joseph Gregory Jemsek fails to make timely payments to BCBS under <u>Section 2.4</u> of this Plan or any claim against the Debtor Released Parties arising under the Plan due to the failure of any of the Debtor Released Parties to perform their obligations under the Plan.  In the event Joseph Gregory Jemsek fails to make the payments to BCBS under <u>Section 2.4</u> of the Plan, any release or discharge of BCBS Claims whether in this <u>Section 14.2</u> or elsewhere in the Plan, shall be null and void and such reinstated claims shall not be limited to the amount of the Allowed BCBS Claim.  For the avoidance of doubt, regardless if Debtors do or do not make a payment or payments under the Plan to BCBS, BCBS's release of the Polsinelli and its attorneys shall remain valid, enforceable and binding notwithstanding such failure.  Nothing in this release in <u>Section 14.2</u> shall: (i) release BCBS's obligation to pay the BCBS Plan Funding; (ii) release the Debtors' obligations to pay the BCBS Claims in accordance with the terms of this Plan; and (iii) release any claims any BCBS clients may have against the Debtor Released Parties or Polsinelli and its attorneys.

14.3 Debtors' Release of Polsinelli.  The Debtors for themselves, their heirs and associates, and personal representatives, agree to irrevocably and unconditionally release, acquit, and discharge Polsinelli and all of its respective affiliates, parents, subsidiaries, related entities, officers, directors, employees, agents, managers, representatives, attorneys, successors and assigns (together, the "Polsinelli Released Parties"), from any and all claims, actions or causes of action, demands, damages (both actual, treble and punitive), costs, judgments, expenses, liabilities, attorneys' fees and legal costs, whether legal, equitable, known or unknown, that was brought or could have been brought in the Chapter 11 Case and any related adversary proceedings, or is in any way related to the factual basis of any aspect of the Chapter 11 Case or any related adversary proceedings, including but not limited to all actions or inactions of any of its agents or former agents, and any litigation conduct with BCBS or its attorneys in this Bankruptcy, any adversary or any related or other proceedings with BCBS.

14.4 Polsinelli's Release of the Debtors and BCBS.  Polsinelli, for itself, its heirs and associates, and personal representatives, agrees to irrevocably and unconditionally release, acquit and discharge the Debtor Released Parties and BCBS and its attorneys, from any and all claims, actions or causes of action, demands, damages (both actual, treble and punitive), costs, judgments, expenses, liabilities, attorneys' fees and legal costs, whether legal, equitable, known or unknown, that was brought or could have been brought in the Chapter 11 Case and any related adversary proceedings, or is in any way related to the factual basis of any aspect of the Chapter 11 Case or any related adversary proceedings, provided, however, that Polsinelli does not waive or release any claim against: (i) the Debtor Released Parties if

28

Debtors fail to timely pay the Allowed Polsinelli Administrative Claim; (ii) any claim against the Debtor Released Parties arising under the Plan due to the failure of any of the Debtor Released Parties to perform their obligations under the Plan; or (iii) BCBS to pay the BCBS Plan Funding.  In the event Debtors fail to make the payments to Polsinelli under the Plan, any release or discharge of Polsinelli Claims whether in this Section 14.4 or elsewhere in the Plan, shall be null and void and such reinstated claims shall not be limited to the amount of the Allowed Polsinelli Claims.  For the avoidance of doubt, regardless if Debtors do or do not make a payment or payments under the Plan to Polsinelli, provided that: (i) Polsinelli receives the BCBS Plan Funding in Certified Funds; and (ii) the Effective Date occurs, Polsinelli's release of BCBS and its attorneys shall remain valid, enforceable and binding notwithstanding such failure.  Nothing in this release in Section 14.4 shall: (i) release BCBS's obligation to make the BCBS Plan Funding; (ii) release the Debtors' obligations to pay the Polsinelli Claims in accordance with the terms of this Plan; and (iii) release any claims any Polsinelli clients may have against the Debtor Released Parties or BCBS and its attorneys.

14.5 Mutual Releases between the Debtors and Mullen Holland & Cooper P.A..("MHC"). The Debtors and MHC, their associates, and personal representatives, agree to irrevocably and unconditionally mutually release, acquit and discharge each other from any and all claims, actions or causes of action, demands, damages (both actual, treble and punitive), costs, judgments, expenses, liabilities, attorneys' fees and legal costs, whether legal, equitable, known or unknown, that was brought or could have been brought in the Chapter 11 Case and any related adversary proceedings, or is in any way related to the factual basis of any aspect of the Chapter 11 Case or any related adversary proceedings.

14.6 Dismissal of Adversary Proceedings.  Within 15 days of the Effective Date, the Debtors and BCBS shall take all steps necessary to effectuate the dismissal with prejudice of all adversary proceedings or litigation between the parties, with parties to bear their own costs and expenses, except as otherwise stated in this Plan.

14.7 Rule 9019.  The settlement of claims and litigation by and against BCBS, including, without limitation, the proposed treatment of BCBS Claims, the Polsinelli Claims and the mutual releases provided by BCBS, Polsinelli and the Debtors, is a part of a settlement which the Debtors, Polsinelli and BCBS propose pursuant to Rule 9019 of the Bankruptcy Rules and the entry of an order confirming this Plan shall constitute approval of such settlement pursuant to Rule 9019 of the Bankruptcy Rules.

14.8. The settlement of claims and litigation and the allowance of claims does not constitute an admission of fault or liability by the Debtors, or any wrongful action or violation of any federal, state or local statute, regulation, policy, contract, standard of care or otherwise. This Plan constitutes a compromise and settlement of disputed claims, solely for the purpose of avoiding continued litigation, uncertainty, controversy and legal expense. Nothing herein shall constitute or be taken or construed to be an admission by any party or as evidencing or indicating the truth or correctness of any allegations, claims or defenses asserted by any party.

US2000 13940300 9

61189538.9

## ARTICLE 15
## ALTERNATIVES TO THE PLAN

The Debtors believe that the Plan provides holders of claims with the greatest possible value that could be realized on their respective claims. The alternatives to Confirmation of the Plan are: (1) confirmation of an alternative plan of reorganization submitted by another party-in-interest; (2) liquidation of the Debtors under Chapter 7 of the Bankruptcy Code; (3) confirmation of a plan of liquidation; or (4) dismissal of this bankruptcy proceeding. The Debtors believe that neither liquidation of the Debtors' property under Chapter 7, confirmation of a plan of liquidation, nor the dismissal of this bankruptcy case are viable alternatives and would not be in the best interests of holders of claims and interests.

## CONCLUSION

The Debtors believe they have explored all reasonably available alternatives for their Plan of Reorganization and that the Plan affords the Debtors' creditors with the most beneficial results.


This 20th day of December, 2017.


/s/Joseph Gregory Jemsek
Joseph Gregory Jemsek

**JEMSEK CLINIC, P. A.**

By:  /s/ Joseph Gregory Jemsek
      Joseph Gregory Jemsek


**THE HENDERSON LAW FIRM, PLLC**
/s/ James H. Henderson
James H. Henderson
NC State Bar No. 13536
1201 Harding Place
Charlotte, North Carolina 28204
Telephone: (704) 333.3444
Counsel for the Debtors

30

US2000 13940300 9

61189538.9

31

US2000 13940300 9

61189538.9