United States Bankruptcy Court
Western District of North Carolina

In re:                                                              Case No. 06-31986-jcw
Joseph Gregory Jemsek                                               Chapter 11
          Debtor

# CERTIFICATE OF NOTICE

District/off: 0419-3        User: howeyc          Page 1 of 12          Date Rcvd: Mar 08, 2018
                            Form ID: pdf          Total Noticed: 383


Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on
Mar 10, 2018.
db         +Joseph Gregory Jemsek,    1255 25th Street NW,   Apt. 621,   Washington, DC 20037-4109
aty        +James H. Henderson,    JAMES H. HENDERSON, P.C.,   1201 Harding Place,
             Charlotte, NC 28204-2826
aty        +R. Kent Brown,    Brown, Moore & Associates, PLLC,   PO Box 35189,   Charlotte, NC 28235-5189
cr         +Grier Furr & Crisp, PA,    101 N Tryon Street, Suite 1240,   Charlotte, NC 28246-0104
intp       +Meredith and Clay Phillips,   c/o Glenn C. Thompson,   Hamilton Stephens Steele + Martin, PLLC,
             201 S. College St., Suite 2020,   Charlotte, NC 28244-0028
cr         +Polsinelli PC,    c/o Andrew J. Nazar,   900 West 48th Place,   Suite 900,
             Kansas City, MO 64112-1899
sp         +Stuart Sobel,    Siegfried, Rivera, Hyma, Lerner, De La,   201 Alhambra Circle,   11th Floor,
             Coral Gables, FL 33134-5107
sp         +Susan R. Green,    Law Offices of Susan R. Green,   305 Washington Ave.,   Suite 305,
             Towson, MD 21204-4729
cr         +William James Gaither,   217 Lover's Leap Drive,   Murphy, NC 28906-8613
5180326     (p)GE HEALTHCARE,    3000 N GRANDVIEW BLVD,   WAUKESHA WI 53188-1615
5180064     AARP,   PO BOX 740819,   ATLANTA GA 30374-0819
5180073     ACS BENEFIT SERVICES,    PO BOX 2000,   WINSTON-SALEM NC 27102-2000
5180084     AIG CLAIMS,   PO BOX 1822,   ALPHARETTA GA 30023-1822
5180065     AIG LIFE INSURANCE CO,    PO BOX 62046,   BALTIMORE MD 21264-2046
5180074     AIR PRODUCTS AND CHEMICALS INC,    PO BOX 360545M,   PITTSBURGH PA 15251-0545
5180085     ALLIANCE PPO,   PO BOX 934,   FREDERICK OH 21705-0934
5180066     AMERICAN HEALTHCARE ALLIANCE-PRIORITY HEALTH,    PO BOX 8530,   KANSAS CITY MO 64114-0530
5180075     AMERICAN INSURANCE ADMINISTRATORS,    PO BOX 2348,   COLUMBUS OH 43216-2348
5180086     AMERICAN REPUBLIC INSURANCE COMPANY,    PO BOX 2975,   CLINTON IA 52733
5180067     ASSURANT HEALTH PLUS,    PO BOX 42033,   HAZELWOOD MO 63042-1033
5180586     Adrianne Huffman,   Hamilton Moon Stephens Steele & Martin,   2020 Charlotte Plaza,
             201 S. College St.,   Charlotte, NC 28244-2020
5180070     Air Products and Chemicals, Inc.,    7201 Hamilton Boulevard,   Allentown, PA 18195-1501
5180080     American Express Bank FSB,    c/o Becket and Lee LLP,   POB 3001,   Malvern, PA 19355-0701
5180076    #BANK OF AMERICA,    PO BOX 26012,   NC4-105-03-14,   GREENSBORO, NC 27420-6012
5180087     BANK OF AMERICA,    PO BOX 30137,   TAMPA FL 33630-3137
3282045     BANK OF AMERICA,    ATTN: M-MK,   PO BOX 53160,   PHOENIX, AZ 85072-3160
5180068     BANKCARD CENTER,    PO BOX 569200,   DALLAS TX 75356-9200
5180077     BANKERS LIFE & CASUALTY,    PO BOX 66927,   CHICAGO IL 60666-0927
5180088     BANKS KEISHA,    7305 FALLOW LN,   CHARLOTTE NC 28273-9614
5180069     BCBS - COSTWISE,    PO BOX 30025,   DURHAM NC 27702-3025
5180078     BCBS OF NORTH CAROLINA,    PO BOX 30071,   DURHAM NC 27702-3071
5180089     BCMSC EMPLOYEE BENEFIT TRUST,    PO BOX 2899,   ASHEVILLE NC 28802-2899
5180090     BECK LINDSEY & FRAME LLP,    4500 CAMERON VALLEY PKWY SUITE 130,   CHARLOTTE NC 28211-3590
5180091     BEECHSTREET - ACORDIA NATIONAL,    PO BOX 853925,   RICHARDSON TX 75085-3925
5180092     BEECHSTREET - EPOCH GROUP LLC,    10795 WATSON ROAD,   ST LOUIS MO 63127-1012
5180093     BEECHSTREET - HEALTHEOS BY MULTIPLAN,    PO BOX 981,   BROOKFIELD, WI 53008-0981
5180094     BEECHSTREET - IMSCO,    PO BOX 697,   BUCKEYSTOWN MD 21717-0697
5180095     BEECHSTREET - KLAIS & COMPANY,    1867 WEST MARKET STREET,   AKRON OH 44313-6901
5180096     BEECHSTREET - PAI,    PO BOX 6702,   COLUMBIA SC 29260-6702
5180108     BEECHSTREET - PEOPLES BENEFIT SERVICES INC,    PO BOX 853925,   RICHARDSON TX 75085-3925
5180114     BEECHSTREET - S&S HEALTHCARE STRATEGIES,    PO BOX 46511,   CINCINNATI OH 45246-0511
5180097     BEECHSTREET - SECURE HEALTH PLAN OF GA,    PO BOX 13447,   MACON GA 31208-3447
5180109     BEECHSTREET - STARBRIDGE,    PO BOX 55270,   PHOENIX AZ 85078-5270
5180115     BEECHSTREET - UNITED MEDICAL RESOURCES,    PO BOX 145804,   CINCINNATI OH 45250-5804
5180100     BEECHSTREET - WORLD INSURANCE,    PO BOX 2558,   OMAHA NE 68103-2558
5180110     BELK ELLEN M,    16512-B REDCLIFF DRIVE,   HUNTERSVILLE NC 28078-2801
5180116     BELL SOUTH ADVERTISING AND PUBLISHING,    PO BOX 105852,   ATLANTA GA 30348-5852
5180101     BENTLEY SUSAN W,    PO BOX 740249,   TUSCUMBIA AL 35674-7416
5180111     BRIDGESTONE CLAIM SERVICES,    PO BOX 247,   SHELDON IA 51201-0247
5180268     BROADSPIRE,    PO BOX 25104,   LEIGH HIGH PA 18002-5104
5180102     BUCK AIMEE O,    2112 SABLEWOOD DRIVE,   CHARLOTTE NC 28205-3635
5180061     Bank Of America, N.A.,    P.O. Box 10349,   Raleigh, NC 27605-0349
3270709    +Bank of America,    201 N. Tryon St.,   Charlotte, NC 28202-3252
3270710    +Bank of America MBNA,    PO Box 17054,   Wilmington, DE 19850-7054
3270711    +Blue Cross and Blue Shield of NC,    Po Box 2291,   Durham, NC 27702-2291
3334725    +Blue Cross and Blue Shield of North Carolina,   c/o Louis W. Doherty, Esq.,
             KILPATRICK STOCKTON LLP,   1001 West Fourth Street,   Winston-Salem, NC 27101-2410
5180269     CANAL WOOD LLC,    2430 N MAIN STREET,   CONWAY SC 29526-3344
5180104     CAROLINA CRYOGENICS,    2800 AB JACKSON RD,   CLINTON SC 29325-4925
5180113     CCN - IMG,    407 FULTON STREET,   INDIANAPOLIS IN 46202-3758
5180105     CD CAPITAL,    PO BOX 41601 REF NO  24679173,   PHILA PA 19101-1601
5180106     CHAMPVA,    PO BOX 65024,   DENVER CO 80206
5180107     CHARLOTTE COPY DATA,    4404 A STUART ANDREW BLVD,   CHARLOTTE NC 28217-1590
5180271     CHOICECARE NETWORK - HUMANA,    PO BOX 14601,   LEXINGTON KY 40512-4601
5180272     CIEZA OCTAVIO,    120 CLUSTERS CIRCLE,   MOORESVILLE NC 28117-8127
5180273     CINCINNATI INSURANCE WORKERS COMP,    PO BOX 817,   MT PLEASANT NC 28124-0817
5180274     COFFEE PERKS,    12324 WILLINGDON RD,   HUNTERSVILLE NC 28078-5651
5180276     CONNECTION 2 CARE,    PO BOX 3413,   HUNTERSVILLE NC 28070-3413

```
5180279        CONSECO - MEDICARE SUPPLEMENT,   PO BOX 2034,   CARMEL IN 46082-2034
5180290        CONSECO SENIOR HEALTH,   PO BOX 1919,   CARMEL IN 46082-1919
5180298        CONSTITUTION LIFE,   PO BOX 130,   PENSACOLA FL 32591-0130
5180291        CPI SECURITY SYSTEMS,   PO BOX 580375,   CHARLOTTE NC 28258-0375
5180299        CROSSROADS HEALTHCARE MANAGEMENT,   PO BOX 090540,   STATEN ISLAND NY 10309-0540
5180281        CRUICKSHANK FREDERICK A,   8544 TOWNLEY RD APT 3G,   HUNTERSVILLE NC 28078-1867
5180292        CT COMMUNICATIONS,   PO BOX 70526,   CHARLOTTE NC 28272
3320295       +Cary Venture Limited Parnership and,   CBL & Associates Limited Partnership,
               by CBL & Associates Management, Inc. man,   CBL Center, Suite 500,   2030 Hamilton Place Blvd.,
               Chattanooga, TN 37421-6038
5180083        Charlotte Division,   401 West Trade Street,   Charlotte, NC 28202-1633
5180681        CitiMortgage, Inc.,   Bankruptcy Department,   P.O. Box 9447,   Gaithersburg, MD 20898
3366393        CitiMortgage, Inc.,   Bankruptcy Department,   P.O. Box 9447,   Gaithersburg, MD 20898-9481
5180676        CitiMortgage, Inc.,   c/o McCALLA RAYMER, LLC,   Bankruptcy Department,   1544 Old Alabama Road,
               Roswell, GA 30076-2102
3270712       +Citimortgage, Inc.,   PO Box 9442,   Gaithersburg, MD 20898-9442
3270713       +City County Tax Collector,   PO Box 31457,   Charlotte, NC 28231-1457
3270714       +City National West Virginia,   Operations Center,   PO Box 7077,   Cross Lanes, WV 25356-0077
5180300        DASH COURIER SERVICE,   P O BOX 11049,   CHARLOTTE NC 28220-1049
5180282        DAVID M CHILMAN,   PO BOX 98836,   RALEIGH NC 27624-8836
5180293        DEFINITY HEALTH,   PO BOX 9525,   AMHERST NY 14226-9525
5180301        DENR WORKERS COMP ADMINISTRATOR,   1615 MAIL SERVICE CENTER,   RALEIGH NC 27699-1600
5180283        DHL EXPRESS INC,   PO BOX 4723,   HOUSTON TX 77210-4723
5180294        DIRECT NET - ACORDIA NATIONAL,   PO BOX 3262,   CHARLESTON WV 25332-3262
5180302        DIVERSIFIED TELECOM,   301 S MCDOWELL ST,   CHARLOTTE NC 28204-2623
5180284        DR LAURI BYERLEY,   11926 ULSTEN LANE,   HUNTERSVILLE NC 28078-3767
5180295        DRUM SHARON,   7920 MARINERS POINTE CIRCLE,   DENVER NC 28037-8091
5180303        De Lage Landen Financial Services, Inc.,   dba CD Capital,   1111 Old Eagle School Road,
               Wayne, PA 19087-1453
3335665       +Deborah D. Gaither,   Brown Moore & Associates, PLLC,   930 East Blvd.,   P.O. Box 35189,
               Charlotte, NC 28235-5189
5180296        EASTERN LIFE AND HEALTH,   PO BOX 83011,   LANCASTER PA 17608
5180304        EMPLOYEE STANDARD ADMIN OFFICE FOR WORKERS C,   PO BOX 8300 DISTRICT 6,   LONDON KY 40742-8300
5180286        ENCORE - NYHART,   PO BOX 1090,   EVANSVILLE IN 47706-1090
5180305        FEDERAL EXPRESS,   PO BOX 94515,   PALATINE IL 60094-4515
5180287        FIRST CAROLINA CARE,   PO BOX 381686,   BIRMINGHAM AL 35238-1686
5180288        FIRST CITIZENS BANK,   PO BOX 29519,   RALEIGH NC 27626-0519
5180289        FIRST HEALTH - APWU,   PO BOX 1358,   GLEN BERNIE MD 21060-1358
5180306        FIRST HEALTH - CAREMARK RX INC,   PO BOX 23189,   TUCSON AZ 85734-3189
5180307        FIRST HEALTH - DIRECT,   PO BOX 8400,   LONDON KY 40742-8400
5180308        FIRST HEALTH - HEALTH MANAGEMENT ASSOC,   PO BOX 11420,   TUCSON AZ 85734-1420
5180316        FIRST HEALTH - HEALTH PLAN SERVICES,   PO BOX 44199,   LAS VEGAS NV 89116-2199
5180339        FIRST HEALTH - IMG,   PO BOX 88500,   INDIANAPOLIS IN 46208-0500
5180330        FIRST HEALTH - MAIL HANDLERS BENEFIT PLAN,   PO BOX 44242,   JACKSONVILLE FL 32231-4242
5180317        FIRST HEALTH - MEDICAL MUTUAL OF OHIO,   PO BOX 94776,   CLEVELAND OH 44101-4776
5180318        FIRST HEALTH - SAMBA,   PO BOX 8600,   LONDON KY 40742-8600
5180319        FIRST HEALTH - SOI HEALTH PLAN,   PO BOX 241508,   CHARLOTTE NC 28224-1508
5180320        FLORIDA INFUSION PHARMACY,   4190 CORPORATE COURT PALM,   PALM HARBOR FL 34683-1419
5180321        FLUENT LANGUAGE SOLUTIONS,   PO BOX 563308,   CHARLOTTE NC 28256-3308
5180322        FORMS & SUPPLY INC,   PO BOX 563953,   CHARLOTTE NC 28256-3953
3285038        First Citizens Bank & Trust Company,   Paul A. Fanning,   Ward and Smith, P.A.,
               Post Office Box 8088,   Greenville, NC  27835-8088
5180081        First Health,   14955 Heathrow Forest Pkwy.,   Houston, TX 77032-3841
5180667        First Citizens Bank & Trust Company,   Ward and Smith, P.A.,   Attn: Paul A. Fanning,
               PO Box 8088,   Greenville, NC 27835-8088
3287833       +First-Citizens Bank & Trust Company,   Attn: Gregory Jones,   PO Box 31727,
               Charlotte, NC 28231-1727
3400906       +Florida Infusion Services, Inc.,   1053 Progress Court,   Palm Harbor, FL 34683-1448
5180325        GE FINANCIAL ASSURANCE,   PO BOX 10821,   CLEARWATER FL 33757-8821
5180328        GERBER LIFE INSURANCE COMPANY,   PO BOX 477916,   BROADVIEW HEIGHTS OH 44147-7916
5180329        GHI - CITY OF NEW YORK HEALTH BENEFITS,   PO BOX 3000,   NEW YORK NY 10116-3000
5180331        GREAT WEST - ONE HEALTH PLAN,   1000 GREAT WEST DRIVE,   KENNETT MO 63857-3749
5180333        GREAT WEST - ONE HEALTH PLAN,   PO BOX 950,   DENVER CO 80201
5180332        GREAT WEST - ONE HEALTH PLAN,   PO BOX 11111,   FT SCOTT KS 66701
5180334        GUARDIAN,   PO BOX 95101,   CHICAGO IL 60694-5101
5180335        GUNDERSEN LUTHERAN HEALTH PLAN,   1836 SOUTH AVENUE,   LA CROSSE WI 54601-5429
5180336        General Electric Healthcare Diagnostic Imagi,   11256 Cornell Park Drive, Suite 500,
               Cincinnati, OH 45242-1832
3270718        Greenbrier County, WV,   P.O. Box 506,   County Courthouse,   Lewisburg, WV 24901-0506
5180337        HARTFORD INSURANCE,   PO BOX 2907,   HARTFORD CT 06104-2907
5180340        HCS - ACS BENEFITS,   4530 PARK ROAD,   CHARLOTTE NC 28209-3716
5180341        HIREASE INC,   PO BOX 2559,   SOUTHERN PINES NC 28388-2559
5180342        HUB ANGELEIA M,   12520 OVERLOOK MOUNTAIN DRIVE,   CHARLOTTE NC 28216-6725
5180345        HUNTZ SUSAN J,   7634 DINNISTON DRIVE,   HUNTERSVILLE NC 28078-5945
5180366        HUTCHERSON PAULA,   18607 BONHAM LANE,   CORNELIUS NC 28031-6111
5180062        Hamilton Stephens Steele  Martin, PLLC,   201 S. College Street,   Suite 2020,
               Charlotte, NC 28244-0028
5180071        Hamilton, Fay, Moon, Stephens, Steele & Mart,   2020 Charlotte Plaza,
               201 South College Street,   Charlotte, NC 28244-2020
```

```
3322276      Harold C. Spears, Esquire,   Caudle & Spears, P.A.,   2600 Interstate Tower,
             121 West Trade Street,   Charlotte, NC 28202-5399
5180346      Hartford Fire Insurance Co,   Bankruptcy Unit, T-1-55,   Hartford Plaza,   Hartford, CT 06115
5180677     +Huron Consulting Services, LLC,   1001 G Street NW,   Suite 1100,   Washington, DC 20001-5348
5180347      IMAGEFIRST HEALTHCARE LAUNDRY SERVICES,   PO BOX 7416,   ST DAVIDS PA 19087-7416
5180420      INDEMNITY - HUMANA,   PO BOX 14601,   LEXINGTON KY 40512-4601
5180348      INLAND MID-ATLANTIC MANAGEMENT CORP,   4687 PAYSPHERE CIR,   CHICAGO IL 60674-0046
5180349      INTERWEST HEALTH - CBSA,   PO BOX 27267,   MINNEAPOLIS MN 55427-0267
5180350      JAMES A WILSON,   5322 HIGHGATE DRIVE SUITE 243,   DURHAM NC 27713-6633
5180354      JEMSEK JOSEPH G,   2215 SHARON LANE,   CHARLOTTE NC 28211-3737
5180421      JEMSEK KAY,   2215 SHARON LANE,   CHARLOTTE NC 28211-3737
3270720     +James A. Wilson,   5322 Highgate Dr.,   S 243,   Durham, NC, 27713-6633
5180717     +James A. Wilson,   5322 Highgate Drive,   Sute 243,   Durham, NC 27713-8405
3341872     +Jeffrey K. Peraldo,   500-D State Street,   Greensboro, NC 27405-5659
5180356      Jemsek Clinic PA,   Stephanie Burns,   8001 Bradenton Drive,   Charlotte, NC 28210-7200
5180082      Jemsek Clinic, P.A.,   14330 Oakhill Park Lane,   Huntersville, NC 28078-3407
3270721     +Jemsek Clinic, P.A.,   Christie Roeske,   Rosedale Medical Center,   14330 Oakhill Park Ln.,
             Huntersville, NC 28078-3314
3270722     +Jemsek Clinic, P.A.,   Rosedale Medical Center,   14330 Oakhill Park Ln.,
             Huntersville, NC 28078-3407
3270727     +Jenkins, Heather,   c/o Robert A. Karney,   Karney, deBrun & Wilcox,   1208 S. Tryon St.,
             Charlotte, NC 28203-4260
3270728     +Jim D. Cooney,   Womble Carlyle,   One Wachovia Center,   301 S College St.,   S 3500,
             Charlotte, NC 28202-6002
5180422      John C. Robinson,   153 Chere Helen Dr.,   Mooresville, NC 28115-7911
3270729     +Joseph Jabkiewicz, Adm,   c/o Eric A. Rogers,   Caudle & Spears, P.A.,   121 W Trade St, S 2600,
             Charlotte, NC 28202-1193
5180357      Joseph Jabkiewicz, Admin of the Estate of Ka,   c/o Harold C. Spears, Esquire,
             Caudle & Spears, P.A.,   2600 Interstate Tower,   121 West Trade Street,
             Charlotte, NC 28202-5399
3322277      Joseph Jabkiewicz, Admin of the Estate of Kathleen,   c/o Harold C. Spears, Esquire,
             Caudle & Spears, P.A.,   2600 Interstate Tower,   121 West Trade Street,
             Charlotte, NC 28202-5399
3270730     +Joshua D. Davey,   Helms, Mullis Wicker,   201 N. Tryon St.,   Charlotte, NC 28202-2146
5180358      KANAWHA INSURANCE COMPANY,   PO BOX 610,   LANCASTER SC 29721-0610
5180423      KEY RISK - WORKERS COMP,   1607 MAIL SERVICE CENTER,   RALEIGH NC 27699-1600
5180359      KWIK KOPY BUSINESS CENTER,   16735 CRANLYN RD SUITE A,   HUNTERSVILLE NC 28078-1823
5780041     +Kay T. Jemsek,   Attn: Richard S. Wright,   Moon Wright & Houston, PLLC,
             121 West Trade Street, Suite 1950,   Charlotte, NC 28202-1176
5180360      Kim Dorney,   785 Spyglass Way,   Rock Hill, SC 29730-8094
5180424      Kim M. Dorney,   412 Streamside Lane,   Waxhaw, NC 28173-6516
5180591      Kim M. Dorney,   785 Spyglass Way,   Rock Hill, SC 29730-8094
5180361      L. D. SIMMONS,   STEPHEN D. ALLRED,   MARK W. KINGHORN,   HELMS MULLISS & WICKER, PLLC,
             PO BOX 31247,   CHARLOTTE, NC 28231-1247
5180362      LACHOWITZ ALLISON M,   10919 VALLEY SPRINGS DRIVE,   CHARLOTTE NC 28277-3732
5180425      LEWIS BELINDA M,   7625 PENCE POND LN,   CHARLOTTE NC 28227-2409
5180363      LINDA STRAND,   137 VISTA DRIVE,   DAVIDSON, NC 28036-7726
5180364      LINDE GAS LLC,   PO BOX 534109,   ATLANTA GA 30353-4109
5180365      Lauri O. Byerley,   PO Box 1307,   Huntersville, NC 28070-1307
5180367      Linde Gas LLC,   P.O. Box 94737,   Cleveland, OH 44101-4737
3334724     +Louis W. Doherty, Esq.,   KILPATRICK STOCKTON LLP,   1001 West Fourth Street,
             Winston-Salem, NC 27101-2410
5180428      MAIL HANDLERS BENEFIT PLAN,   PO BOX 8402,   LONDON KY 40742-8402
5180430      MAMSI HMO,   PO BOX 993,   FREDERICK MD  21705
5180429      MAMSI HMO,   4 TAFT COURT,   ROCKVILLE MD 20850-5310
5180431      MARKET IMPACT ASSOCIATES,   PO BOX 3573,   HUNTERSVILLE NC 28070-3573
5180432      MCAVENEY DENISE U,   17176 RED FEATHER DR,   CHARLOTTE NC 28277-2991
5180433      MCCOLLISTER ANGELA,   136 SAILWINDS ROAD,   MOORESVILLE NC 28115-7155
5180434     +MCGUIREWOODS LLP,   901 E CARY ST,   RICHMOND VA 23219-4030
5180435      MECKLENBURG COUNTY TAX COLLECTOR,   PO BOX 32247,   CHARLOTTE NC 28232-2247
5180449      MECKLENBURG COUNTY TAX COLLECTOR,   OFFICE OF THE TAX COLLECTOR,   TAX BANKRUPTCY SECTION,
             P.O. BOX 31457,   CHARLOTTE, NC 28231-1457
5180444      MEDCOST - ACCLAIM,   PO BOX 25307,   WINSTON-SALEM NC 27114-5307
5180450      MEDICAID - CAROLINA ACCESS,   PO BOX 30968,   RALEIGH NC 27622-0968
5180436      MEDICAID - SOUTH CAROLINA,   PO BOX 1412,   COLUMBIA SC 29202-1412
5180445      MEDICAID - SOUTHCARE,   PO BOX 3127,   EL MONTE CA 91733-0127
5180451      MEDICAID - UNITED HEALTHCARE,   PO BOX 659741,   SAN ANTONIO TX 78265
5180437      MEDICAL ARTS PRESS,   PO BOX 94777,   PALATINE IL 60094-4777
5180446      MEDICAL MUTUAL,   P O BOX 30728 DEPT 251,   CHARLOTTE NC 28230-0728
5180452      MEDICARE,   PO BOX 671,   NASHVILLE TN 37202-0671
5180438      MEDICARE - COMPLETE UHC,   PO BOX 659741,   SAN ANTONIO TX 78265
5180447      MEDICARE - HUMANA GOLD CHOICE,   PO BOX 14601,   LEXINGTON KY 40512-4601
5180453      MEDICARE - RAILROAD,   PO BOX 10066,   AUGUSTA GA 30999-0001
5180439      MEDICARE - SECONDARY,   PO BOX 671,   NASHVILLE TN 37202-0671
5180448      MEDIPLUS,   PO BOX 9126,   DES MOINES IA 50306-9126
5180454      MGMA,   PO BOX 17603,   DENVER CO 80217-0603
5180441      MISYS,   PO BOX 751585,   CHARLOTTE NC 28275
3270731      Macon County Tax Administrator,   5 West Main Street, Annex Bldg.,   Franklin, NC 28734-3005
5180455      Mary J. Porter,   8416 Strathburn Ct,   Apt. G,   Huntersville, NC 28078-2826
```

```
5180456      McGuireWoods LLP,   c/o Nancy R. Perry,   Accounts Receivable,   901 E. Cary Street,
             Richmond, VA 23286-0645
5180457      Medicare,   U.S. Dept. of Health & Human Svcs.,   c/o Greg Bongiovanni,
             61 Forsyth St., SW Ste. 5M60,   Atlanta, GA 30303-8931
5180458      Michael B. Bach,   11256 Cornell Park Drive, Suite 500,   Cincinnati, OH 45242-1832
5180587      Michael F. Ruggio,   7546 Clifton Road,   Clifton, VA 20124-2131
3270732      Michael P. Flanagan,   Ward & Smith, P.A.,   P.O. Box 867,   New Bern NC 28563-0867
5180459      Mitchcell and Randy Ornstein,   18128 Ivy Lane,   Olney, MD 20832-2001
5180460      Mitchell and Randy Ornstein,   18128 Ivy Lane,   Olney, MD 20832-2001
3277519     +Morgan Stanley Credit Corporation,   4909 East 26th Street,   Sioux Falls, SD 57110-6950
3270733     +Morgan Stanley Credit Corporation,   PO Box 5079,   Sioux Falls, SD 57117
5180461      N2CARE,   PO BOX 3413,   HUNTERSVILLE NC 28070-3413
5180469      NALLE PHARMACY,   1918 RANDOLPH ROAD,   CHARLOTTE NC 28207-1107
5180477      NATIONAL WELDERS,   BOX 34513,   CHARLOTTE NC 28234-4513
5180462      NATIONWIDE HEALTH PLANS,   PO BOX 182690,   COLUMBUS OH 43218-2690
3270734     +NC Department of Revenue,   Central Collection Division,   P.O. Box 1168,
             Raleigh, NC 27602-1168
5180470      NEXSEN PRUET ADAMS KLEEMEIER,   PO DRAWER 2426,   COLUMBIA SC 29202-2426
3283543      North Carolina Department of Revenue,   Angela C. Fountain, Bankruptcy Manager,
             Collections Examination Division,   Post Office Box 1168,   Raleigh, NC 27602-1168
5180478      OPTIMUM CHOICE INC,   4 TAFT COURT,   ROCKVILLE MD 20850-5310
5180463      OXFORD HEALTH PLANS,   PO BOX 7082,   BRIDGEPORT CT 06601-7082
5180471      PACIFIC LIFE ANNUITY BENEFITS,   PO BOX 33699,   PHOENIX AZ 85067
5180479      PARLIER ASHLEY,   491 STILLWATER RD,   TROUTMAN NC 28166-8694
5180464      PARTNERS MEDICARE CHOICE,   PO BOX 17509,   WINSTON-SALEM NC 27116-7509
5180472      PENSYS,   2233 WATT AVE STE 330,   SACRAMENTO CA 95825-0571
5180480      #PHCS - ACORDIA NATIONAL,   PO BOX 3262,   CHARLESTON WV 25332-3262
5180465      PHCS - ASSURANT HEALTH,   PO BOX 42033,   HAZELWOOD MO 63042-1033
5180473      PHCS - BENEFIT PLANNERS,   PO BOX 690450,   SAN ANTONIO TX 78269-0450
5180481      PHCS - BMC,   PO BOX 760561,   ORMOND BEACH FL 32173
5180466      PHCS - CAROLINA CARE PLAN,   PO BOX 100234,   COLUMBIA SC 29202-3234
5180474      PHCS - CELTIC,   PO BOX 33839,   INDIANAPOLIS IN 46203-0839
5180482      PHCS - CORESOURCE,   PO BOX 83301,   LANCASTER SC 17608-3301
5180467      PHCS - CORP BENEFITS OF AMERICA,   PO BOX 27267,   MINNEAPOLIS MN 55427-0267
5180475      PHCS - GE HEALTH MANAGER,   PO BOX 100252 (AF 140),   COLUMBIA SC 29202
5180483      PHCS - GROUP RESOURCES INC,   PO BOX 100043,   DULUTH GA 30096-9343
5180468      PHCS - GUARDIAN,   PO BOX 8007,   APPLETON WI 54912-8007
5180476      PHCS - HARVARD PILGRIM,   PO BOX 699183,   QUINCY MA 02269-9183
5180484      PHCS - HEALTH PARTNERS,   PO BOX 1289,   MINNEAPOLIS MN 55440-1289
5180485      PHCS - JOHN ALDEN HEALTH,   PO BOX 1599,   BOISE ID 83701-1599
5180486      PHCS - MEGA LIFE AND HEALTH INSURANCE CO,   PO BOX 982009,   NORTH RICHLAND HILLS TX  76182
5180487      PHCS - MERCER ADMINISTRATION,   PO BOX 4542,   IOWA CITY IA 52244-4542
5180488      PHCS - MIDWEST NATIONAL LIFE INSURANCE OF TE,   PO BOX 982017,   NORTH RICHLAND HILLS TX 76182
5180498      PHCS - NGS AMERICAN,   PO BOX 7676,   ST CLAIR SHORES MI 48080-7676
5180507      PHCS - NIPPON LIFE INSURANCE OF AMERICA,   PO BOX 39710,   COLORADO SPRINGS CO 80949-3910
5180489      PHCS - OPTIMA HEALTH,   PO BOX 5028,   TROY MI 48007-5028
5180499      PHCS - PACIFICARE,   PO BOX 6099,   CYPRESS GA 90630-0099
5180508      PHCS - PREFERRED CARE,   PO BOX 22920,   ROCHESTER NY 14692-2920
5180490      PHCS - PRINCIPAL,   PO BOX 39710,   COLORADO SPRINGS CO 80949-3910
5180500      PHCS - PRUDENT CARE DISCOUNT INSURANCE,   PO BOX 2568,   FRISCO TX 75034-8068
5180509      PHCS - REAGIT HEALTH PLAN,   PO BOX 1511,   LATHAM NY 12110
5180491      PHCS - SAG PRODUCERS HEALTH PLAN,   PO BOX 7830,   BURBANK GA 91510-7830
5180501      PHCS - SALVATION ARMY,   PO BOX 1884,   AKRON OH 44309-1884
5180510      PHCS - TOWER LIFE INSURANCE CO,   310 S ST MARYS STREET,   SAN ANTONIO TX 78205-3164
5180492      PHYSICIAN SALES & SERVICE INC,   PO BOX 680938,   CHARLOTTE NC 28216-0016
5180502      PHYSICIANS HEALTHPLAN,   PO BOX 182432,   COLUMBUS OH 43218-2432
5180511      PIEDMONT COMMUNITY HEALTHCARE INC,   PO BOX 14408,   CINCINNATI OH 45250-0408
5180493      PIERCE DALE J,   15514 WATERFRONT DR,   HUNTERSVILLE NC 28078-3201
5180503      PORTER MARY,   8416 STRATHBURN CT APT G,   HUNTERSVILLE NC 28078-2826
5180512      PREMIER HEALTH SYSTEMS - CORP BENEFITS SERVI,   PO BOX 12953,   CHARLOTTE NC 28220-2953
5180494      PREMIER HEALTH SYSTEMS - PRINCIPAL FINANCIAL,   PO BOX 1640,   COLUMBIA SC 29202-1640
5180504      PRIMARY PHYSICIAN CARE,   PO BOX 11088,   CHARLOTTE NC 28220-1088
5180495      PYRAMID LIFE INSURANCE COMPANY,   PO BOX 12922,   PENSACOLA FL 32591-2922
3341970     +Patti Looper Ingram,   Jeffrey K. Peraldo,   500-D State Street,   Greensboro, NC 27405-5659
5180505      Patti Looper Ingram,   Jeffrey K. Peraldo,   Jeffrey K. Peraldo, PA,   500-D State Street,
             Greensboro, NC 27405-5659
3341867     +Patti Looper Ingram,   Jeffrey K. Peraldo, Esq.,   500-D State Street,
             Greensboro, NC 27405-5659
5180514      Paula Hutcherson,   18607 Bonham Lane,   Cornelius, NC 28031-6111
5180668      PennyMac Loan Services, LLC,   c/o Aldridge Connors LLP,   Fifteen Piedmont Center,
             3575 Piedmont Road, N.E., Suite 500,   Atlanta, GA 30305-1636
3366233      Phillip E. Moore and Nikki Taylor Moore,   c/o Gary Jackson,   The JAckson Law Group, PLLC,
             1321 East Morehead Street,   Charlotte, NC 28204
5180711      Phillip E. Moore and Nikki Taylor Moore,   c/o Gary Jackson,   The JAckson Law Group, PLLC,
             1321 East Morehead Street,   Charlotte, NC 28204-2913
3270735     +Phillip Moore,   Niki Taylor Moore,   DeVore, Acton & Stafford, PA,   831 E Morehead St., S 245,
             Charlotte, NC 28202-2773
5180506      QUEST DIAGNOSTICS,   PO BOX 740736,   ATLANTA GA 30374-0736
5180515      Quest Diagnostics Incorporated,   Attn: CV-2035,   1201 S. Collegeville Road,
             Collegeville, PA 19426-2998
```

```
3335667      +R. Kent Brown,   Brown Moore & Associates,   930 East Blvd.,   P.O. Box 35189,
              Charlotte, NC 28235-5189
5180497       R. Kent Brown,   Brown Moore & Associates Brown,   Moore & Associates, PLLC,   930 East Blvd.,
              P.O. Box 35189 P.O.,   Charlotte, NC 28235-5189
3335664      +R. Kent Brown,   Brown Moore & Associates, PLLC,   930 East Blvd.,   P.O. Box 35189,
              Charlotte, NC 28235-5189
5180516       REID OLLIE,   6509 MONTEITH DR,   CHARLOTTE NC 28213-6026
5180517       ROESKE CHRISTINE RYAN,   124 BERKSHIRE AVE,   BELMONT NC 28012-3882
5780040      +Richard S. Wright,   Moon Wright & Houston, PLLC,   121 West Trade Street,   Suite 1950,
              Charlotte, NC 28202-1176
3274755       Robert H. Pryor, Esq.,   Helms Mulliss & Wicker, PLLC,   PO Box 31247,
              Charlotte, NC 28231-1247
3270736      +Rosedale Medical Group, LLC,   Rosedale Medical Center,   14330 Oakhill Park Ln.,
              Huntersville, NC 28078-3314
5180519       SACK ANN MICHELLE,   1617 GENEVA COURT,   CHARLOTTE NC 28209-1504
5180520       SCOGGINS JENNIFER,   20409 STERLING BAY LN WEST #E,   CORNELIUS NC 28031-4942
5180521       SCOTTISH BANK,   325 SOUTH SHARON AMITY RD,   CHARLOTTE NC 28211-2805
5180522       SECURE HORIZONS DIRECT,   PO BOX 659787,   SAN ANTONIO TX 78265
5180523       SELLERS MICHELLE,   12820 WINDY LEA LN,   HUNTERSVILLE NC 28078-2227
5180532       SENECAL MELISSA,   2037 SOLWAY LANE,   CHARLOTTE NC 28269-6984
5180538       SHILLINGLAW PAULA R,   119 PARK FOREST STREET,   DAVIDSON NC 28036-6906
5180524       SHRED-IT CHARLOTTE,   1859 LINDBERGH ST SUITE 200,   CHARLOTTE NC 28208-3777
5180533       SIM,   PO BOX 36612,   CHARLOTTE NC 28236-6612
5180539       SMITH SUSAN E,   7613 MARINER COVE DRIVE,   CORNELIUS NC 28031-8658
5180525       SOUTHCARE/HEALTHCARE PREFERRED-PRINCIPAL FIN,   PO BOX 39710,   COLORADO SPRINGS CO 80949-3910
5180534       SOUTHEAST TOYOTA FINANCE,   PO BOX 31453,   TAMPA FL 33631-3453
5180540       SOUTHERN HEALTH SERVICES,   PO BOX 7704,   LONDON KY 40742-7704
5083482      +SPECIALIZED LOAN SERVICING, LLC,   8742 LUCENT BLVD SUITE 300,
              HIGHLANDS RANCH, COLORADO 80129-2386
5180526       SRC/AETNA,   PO BOX 23759,   COLUMBIA SC 29224-3759
5180535       STANDARD LIFE AND ACCIDENT,   PO BOX 1800,   GALVESTON TX 77553-1800
5180541       STATE FARM MEDICARE SUPPLEMENT,   PO BOX 3070,   NEWARK OH 43058-3070
5180527       STATE MEDICAL PLAN,   PO BOX 38151,   ATLANTA GA 30334-0151
5180536       STATE MUTUAL INSURANCE COMPANY,   33 N GARDEN AVE STE 1100,   CLEARWATER FL 33755-6613
5180542       STATE OF CALIFORNIA COMPENSATION FUND,   PO BOX 1609,   ROHNERT PARK CA 94927-1609
5180528       STEPHANIE BURNS,   8001 BRADENTON DR,   CHARLOTTE NC 28210-7200
5180537       STERICYCLE INC,   PO BOX 9001590,   LOUISVILLE KY 40290-1590
5180543       STRAND LINDA,   137 VISTA DRIVE,   DAVIDSON NC 28036-7726
5180529       STUDY MANAGER,   520 PIKE ST SUITE 2522,   SEATTLE WA 98101-4006
5180530       SUTTON NANCY P,   442 WESTHAM RIDGE ROAD,   CHARLOTTE NC 28217-2548
5180726       Samuel Shor,   1860 Town Center Drive,   #230,   Reston, VA 20190-5899
3270737      +Scottish Bank,   1057 Providence Road,   Charlotte, NC 28207-2591
5180734       Siegfried, Rivera, Hyma, Lerner, De La,   201 Alhambra Circle,   11th Floor,
              Coral Gables, FL 33134-5107
5180531       Stephanie L. Burns,   8001 Bradenton Drive,   Charlotte, NC 28210-7200
3270740      +SunTrust Bank,   PO Box 85052,   Richmond, VA 23285-5052
3274756       SunTrust Bank,   c/o Robert H. Pryor, Esq.,   Helms Mulliss & Wicker, PLLC,   PO Box 31247,
              Charlotte, NC 28231-1247
3270739      +SunTrust Bank,   101 S. Kings Drive,   Charlotte, NC 28204-2619
3277833      +Suntrust Bank,   Attn: Support Services,   P.O. Box 85092,   Richmond, VA 23286-0001
5180720       Susan R. Green,   The Law Offices of Susan R. Green, P. C.,   305 Washington Avenue,
              Suite 305,   Towson, MD 21204-4729
5180545       TELECO INC,   7580 E INDEPENDENCE BLVD,   CHARLOTTE NC 28227
5180547       THE CHARLOTTE OBSERVER,   PO BOX 32188,   CHARLOTTE NC 28232-2188
5180549       TIME WARNER TELECOM,   PO BOX 172567,   DENVER CO 80217-2567
5180550       TOTAL CLAIMS SOLUTIONS,   PO BOX 10888,   GREEN BAY WI 54307-0888
5180551       TPA OF GEORGIA,   PO BOX 2639,   LILBURN GA 30048-2639
5180552      #TRAVELERS INSURANCE,   PO BOX 473502,   CHARLOTTE NC 28247-3502
5180553       TRENERY MATTHEW J,   17845 RAILWAY DRIVE,   CORNELIUS NC 28031-8143
5180560       TRICARE PRIME,   PO BOX 870140,   SURFSIDE BEACH SC 29587-9740
3273517      +The Scottish Bank,   Kellam & Pettit, P.A.,   2701 Coltsgate Road, Suite 300,
              Charlotte, NC 28211-3594
5180678       The Scottish Bank,   c/o William Walt Pettit,   Kellam & Pettit, P.A.,
              2701 Coltsgate Road, Suite 300,   Charlotte, NC 28211-3594
5180567       The Scottish Bank,   c/o Kellam & Pettit, P.A.,   2701 Coltsgate Road,   Suite 300,
              Charlotte, NC 28211-3594
5180554       Time Warner Telecom Inc.,   10475 Park Meadows Dr.,   Littleton, CO 80124-5454
5180063       Time Warner Telecom Inc.,   Attn: Linda Boyle,   10475 Park Meadows Drive, #400,
              Littleton, CO 80124-5454
3270742      +Travis W. Moon,   Hamilton Fay Moon Stephens et al.,   2020 Charlotte Plaza,
              201 South College Street,   Charlotte NC 28244-0002
3366232       Troy J. Stafford,   1321 East Morehead Street,   Charlotte, NC 28204
5180721       Troy J. Stafford,   1321 East Morehead Street,   Charlotte, NC 28204-2913
5180561       UNICARE - MEDICARE SUPPLEMENT,   PO BOX 600099,   LOS ANGELES CA 90060
5180568       UNITED AMERICAN INSURANCE CO,   PO BOX 8080,   MCKINNEY TX 75070-8080
5180569      +UNITED HEALTHCARE,   PO BOX 30555,   SALT LAKE CITY UT 84130-0555
5180571       UNITED HEALTHCARE,   PO BOX 740800,   ATLANTA GA 30374-0800
5180557       UNITED HEALTHCARE,   PO BOX 740801,   ATLANTA GA 30374-0801
5180564       UNITED HEALTHCARE,   PO BOX 740813,   ATLANTA GA 30374-0813
5180572       UNITED HEALTHCARE,   PO BOX 981502,   EL PASO TX 79998-1502
```

```
District/off: 0419-3              User: howeyc         Page 6 of 12          Date Rcvd: Mar 08, 2018
                                 Form ID: pdf          Total Noticed: 383
```

```
5180563      UNITED HEALTHCARE,   PO BOX 659744,    SAN ANTONIO TX 78265
5180555      UNITED HEALTHCARE,   PO BOX 1600,    KINGSTON NY 12402-1600
5180570      UNITED HEALTHCARE,   PO BOX 30304,    SALT LAKE CITY UT 84130-0304
5180562      UNITED HEALTHCARE,   PO BOX 30551,    SALT LAKE CITY UT 84130-0551
5180556      UNITED HEALTHCARE,   PO BOX 30985,    SALT LAKE CITY UT 84130-0985
3270763     +US SEC,   Suite 1000,    3475 Lenox Rd NE,    Atlanta, GA 30326-3235
3270743     +United States Attorney's Office,   227 West Trade St.,    Suite 1700,    Charlotte, NC 28202-1675
5180715      United States Attorneys Office,   227 West Trade St.,    Suite 1700,    Charlotte, NC 28202-1675
5180573      VAUGHT ANGELA A,   4019 GARDNER ST,    SALISBURY NC 28146-7196
5180559      VERIZON WIRELESS,   PO BOX 660108,    DALLAS TX 75266-0108
5180566      VIRTUAL OFFICEWARE,   PO BOX 76828,    CLEVELAND OH 44101-6500
3426445     +VT Inc.,   as Trustee of World Omni LT,    P O Box 991817,    , AL 36691-8817
5180574      VT Inc. as Trustee of World Omni LT,    P.O. Box 991817,    Mobile, AL 36691-8817
5180575      VYTRA HEALTH PLAN,   CB 9091,    MELVILLE NY 11747
5180576      Verizon Wireless South,   404 Brock Drive,    Bloomington, IL 61701-2654
5180577      WAKEFIELD-PITTMAN ALECIA,   7611 PRINDLE LAKE DR,    CHARLOTTE NC 28227-7431
5180578      WATKINS ASSOCIATED INDUSTRIES MEDICAL PLAN,    PO BOX 1738,    ATLANTA GA 30301-1738
5180583      WAUSAU BENEFITS,   PO BOX 8013,    WAUSAU WI 54402-8013
5180588      WELLPATH COVENTRY,   PO BOX 7102,    LONDON KY 40742-7102
5180518      WHITE MAP PROGRAM,   PO BOX 32662,    CHARLOTTE NC 28232-2662
5180579      WINTER MOUNTAIN,   PO BOX 970,    DURHAM NC 27702-0970
5180584      WISE VALERIE,   8528 WESTMORELAND LAKE,    CORNELIUS NC 28031-5740
5180580      William C. Price,   McQuireWoods LLP,    Dominion Tower,    625 Liberty Avenue, 23rd Floor,
              Pittsburgh, PA 15222-3110
3335668     +William J. Gaither,   Brown Moore & Associates,    930 East Blvd.,    P.O. Box 35189,
              Charlotte, NC 28235-5189
5180727      William James Gaither,   217 Lovers Leap Drive,    Murphy, NC 28906-8613
3283417     +William Walt Pettit,   2701 Coltsgate Road,    Suite 300,    Charlotte 28211-3594
5180590      William Walt Pettit,   2701 Coltsgate Road,    Suite 300,    Charlotte, NC 28211-3594
3270744     +William Walt Pettit,   Kellam & Pettis, P.A.,    2701 Coltsgate Road, S 300,
              Charlotte, NC 28211-3594
5180581      YOUNG KWANA,   9423 ISAAC HUNTER DR,    CHARLOTTE NC 28214-8210
3366392     +blancoaa,   McCalla Raymer Padrick Cobb Nichols & Cl,    1544 Old Alabama Road,
              Roswell, GA 30076-2102
```

```
Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.
aty         +E-mail/Text: trusteewright@grierlaw.com Mar 08 2018 18:21:25        Anna Cotten Wright,
              Grier, Furr & Crisp, PA,   101 N. Tryon St., Suite 1240,    Charlotte, NC 28246-0104
5180656      E-mail/Text: hsbbkydept@hotchensandsenter.com Mar 08 2018 18:21:30
              CitiMortgage, Inc. (Vonnegut),   c/o Joseph J. Vonnegut,    4317 Ramsey Street,   P.O. Box 2505,
              Fayetteville, NC 28302-2505
5180297      E-mail/Text: accountingdept@etacticsinc.com Mar 08 2018 18:20:54        ETACTICS,   PO BOX 551,
              MEDINA OH 44258-0551
3270715      E-mail/Text: bkl@firstcitizens.com Mar 08 2018 18:21:21        First Citizens Bank & Trust Co.,
              Mecklenburg Commercial Banking,   c/o Loan Servicing Department - DAC20,    P.O. Box 26592,
              Raleigh, NC  27611-6592
5180637      E-mail/Text: ge.legal@ge.com Mar 08 2018 18:21:15        GE MEDICAL SYSTEMS,   PO BOX 402076,
              ATLANTA GA  30340
5180327      E-mail/Text: jennifer.wilson@geha.com Mar 08 2018 18:21:11        GEHA,   PO BOX 4665,
              INDEPENDENCE MO 64051-4665
5180330      E-mail/Text: acarroll@unitedhealthone.com Mar 08 2018 18:21:24
              GOLDEN RULE INSURANCE COMPANY,   7440 WOODLAND DRIVE,    INDIANAPOLIS IN 46278-1719
5180675      E-mail/Text: cio.bncmail@irs.gov Mar 08 2018 18:20:58        INTERNAL REVENUE SERVICE,
              CENTRALIZED INSOLVENCY OPERATIONS,   PO BOX 7346,    PHILADELPHIA PA 19101-7346
5180426      E-mail/PDF: resurgentbknotifications@resurgent.com Mar 08 2018 18:26:12        LVNV Funding, LLC,
              c/o Resurgent Capital Services,   Po Box 10587,    Greenville, SC 29603-0587
5180582      E-mail/Text: lcooper@mhc-law.com Mar 08 2018 18:21:28        Langdon M. Cooper,
              Mullen Holland & Cooper, P. A.,   P. O. Box 488,    Gastonia, NC 28053-0488
5180443      E-mail/Text: taxbk@mecklenburgcountync.gov Mar 08 2018 18:21:14
              MECKLENBURG COUNTY NC TAX COLLECTOR,   CITY COUNTY NC TAX COLLECTOR,    P O BOX 31637,
              CHARLOTTE, NC 28231-1637
5180442      E-mail/Text: bankruptcy.notice@mutualofomaha.com Mar 08 2018 18:21:20        MUTUAL OF OMAHA,
              MUTUAL OF OMAHA PLAZA,   OMAHA NE 68175-0001
5180513      E-mail/Text: bankruptcy@pb.com Mar 08 2018 18:21:26        PURCHASE POWER,   PO BOX 856042,
              LOUISVILLE KY 40285-6042
5180496      E-mail/Text: bankruptcy@pb.com Mar 08 2018 18:21:26        Pitney Bowes Credit Corporation,
              Attn: Recovery Dept.,   27 Waterview Dr.,    Shelton, CT 06484-4361
5180546      E-mail/Text: BKRMailOps@weltman.com Mar 08 2018 18:21:18        THE BANKERS BANK,
              C/O WELTMAN, WEINBERG & REIS,   323 W. LAKESIDE AVE., 2ND FL,    CLEVELAND, OH 44113-1085
5180548      E-mail/Text: DL-ICOMSBankruptcy@charter.com Mar 08 2018 18:21:22        TIME WARNER CABLE,
              PO BOX 70872,   CHARLOTTE NC 28272-0872
5180072      E-mail/Text: bae_notices@ncwba.uscourts.gov Mar 08 2018 18:21:14
              U.S. Bankruptcy Administrator Office,   402 W. Trade Street,    Suite 200,
              Charlotte, NC 28202-1673
5180558      E-mail/Text: brenda.hardison@cigna.com Mar 08 2018 18:21:16
              UNITED TEACHER ASSOCIATES INSURANCE CO,   PO BOX 26580,    AUSTIN TX 78755-0580
5180589      E-mail/Text: wilder@terpmo.com Mar 08 2018 18:21:21        WOMBLE CARLYLE SANDRIDGE & RICE PLLC,
              301 SOUTH COLLEGE ST SUITE 3500,   CHARLOTTE NC 28202-6050
                                                                                                TOTAL: 19
```

District/off: 0419-3          User: howeyc              Page 7 of 12          Date Rcvd: Mar 08, 2018
                             Form ID: pdf               Total Noticed: 383

            ***** BYPASSED RECIPIENTS (continued) *****

            ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
app         Alan Fisher Auction  & Appraisal Company, Inc.
cr          Blue Cross and Blue Shield of North Carolina
acc         Cherry, Bekaert and Holland, LLP
cr          City National Bank of West Virginia
r           DPS Sporting Club Development Company, LLC
cr          Deborah d gaither
r           Dickens-Mitchener & Associates
sp          Douglas Jeffrey
cr          Heather Jenkins
cr          Hope Buff Bowman
cr          Joseph Stanly Jabkiewicz
intp        Kay T. Jemsek
op          Kerry Clark
r           Lisa Ripp
r           Martha T. Hilton
r           Meadows Mountain Realty
cr          PHH Mortgage Corporation,   Shapiro & Ingle, L.L.P.,   10130 Perimeter Parkway, Suite 400
op          Phil Hurd
op          Phillip J Shechter
intp        Phillip Moore
r           RE/MAX Vision Quest
cr          Rick A. Bowman
sp          Robert D. Lyerly, Jr.
acc         Ronald W. Lamberth
acc         Ronald W.Lamberth, CPA and Cherry, Bekaert & Holla
cr          Specialized Loan Servicing LLC, Servicing Agent
cr          SunTrust Bank
cr          VT Inc., as trustee of World Omni Financial Corp.
3341866     ,
5180737     Alan Fisher Auction & Appraisal Company
5180639     Alan Fisher Auction & Appraisal, Inc.
5180646     American Express Bank FSB
5180640     Beck, Lindsay & Dyer, L.L.P.
5180641     Blue Cross and Blue Shield of North Caroli
5180738     Blue Cross and Blue Shield of North Caroli
5180666     Cherry, Bekaert and Holland, LLP
5180642     DDRTC Birkdale Village, LLC
5180739     DPS Sporting Club Development Company, LLC
5180647     Deborah D. Gaither
5180743     Deborah d gaither
5180740     Dickens-Mitchener & Associates
5180752     Douglas Jeffrey
5180643     First-Citizens Bank & Trust Company
5180648     Heather Jenkins
5180753     Heather Jenkins
5180649     Hope Buff Bowman
5180744     Hope Buff Bowman
5180650     Joseph G. Jemsek M.D.
5180651     Joseph Stanly Jabkiewicz
5180754     Joseph Stanly Jabkiewicz
5180652     Kay T. Jemsek
5180755     Kay T. Jemsek
5180745     Kerry Clark
5180756     Lisa Ripp
5180644     Market Impact Associates, Inc.
5180757     Martha T. Hilton
5180747     Meadows Mountain Realty
5180748     PHH Mortgage Corporation Shapiro & Ingle, L.L.P.,   10130 Perimeter Parkway, Suite 400
5180725     Phil Hurd
5180719     Phillip J Shechter
5180732     Phillip Moore
5180741     RE/MAX Vision Quest
5180653     Rick A. Bowman
5180746     Rick A. Bowman
5180758     Robert D. Lyerly Jr.
5180654     Ronald W. Lamberth
5180759     Ronald W. Lamberth
5180749     Ronald W.Lamberth, CPA and Cherry, Bekaert
5180733     Stuart Sobel
5180750     SunTrust Bank
5180645     The Scottish Bank
5180742     VT Inc., as trustee of World Omni Financia
5180655     William J. Gaither

```
District/off: 0419-3          User: howeyc               Page 8 of 12              Date Rcvd: Mar 08, 2018
                              Form ID: pdf               Total Noticed: 383

cr*           +CitiMortgage, Inc., c/o McCALLA RAYMER, LLC,  Bankruptcy Department,   1544 Old Alabama Road,
               Roswell, GA 30076-2102
cr*           +CitiMortgage, Inc. (Vonnegut),  c/o Joseph J. Vonnegut,   4317 Ramsey Street,   P.O. Box 2505,
               Fayetteville, NC 28302-2505
cr*            First-Citizens Bank & Trust Company,   Ward and Smith, P.A.,   Attn: Paul A. Fanning,
               PO Box 8088,   Greenville, NC  27835-8088
sp*           +Huron Consulting Services, LLC,   1001 G Street NW,   Suite 1100,   Washington, DC 20001-5348
sp*           +James A. Wilson,   5322 Highgate Drive,   Sute 243,   Durham, NC 27713-8405
sp*           +Michael F. Ruggio,   7546 Clifton Road,   Clifton, VA 20124-2131
cr*           +Morgan Stanley Credit Corporation,   4909 East 26th Street,   Sioux Falls, SD 57110-6950
cr*           +PennyMac Loan Services, LLC,   c/o Aldridge Connors LLP,   Fifteen Piedmont Center,
               3575 Piedmont Road, N.E., Suite 500,   Atlanta, GA 30305-1636
op*           +Samuel Shor,   1860 Town Center Drive,   #230,   Reston, VA 20190-5899
cr*           +The Scottish Bank,   c/o William Walt Pettit,   Kellam & Pettit, P.A.,
               2701 Coltsgate Road, Suite 300,   Charlotte, NC 28211-3594
5180679*       BANK OF AMERICA,  ATTN: M-MK,  PO BOX 53160,  PHOENIX, AZ 85072-3160
5180659*      +Bank of America,   201 N. Tryon St.,   Charlotte, NC 28202-3252
5180670*       Bank of America MBNA,   PO Box 17054,   Wilmington, DE 19850-7054
5180680*       Blue Cross and Blue Shield of NC,   PO Box 2291,   Durham, NC 27702-2291
5180112*       Blue Cross and Blue Shield of North Carolina,   c/o Louis W. Doherty, Esq.,
               KILPATRICK STOCKTON LLP,   1001 West Fourth Street,   Winston-Salem, NC 27101-2410
5180660*       Blue Cross and Blue Shield of North Carolina,   c/o Louis W. Doherty, Esq.,
               KILPATRICK STOCKTON LLP,   1001 West Fourth Street,   Winston-Salem, NC 27101-2410
5180671*       Cary Venture Limited Partnership and,   CBL & Associates Limited Partnership,
               by CBL & Associates Management, Inc. man,   CBL Center, Suite 500,   2030 Hamilton Place Blvd.,
               Chattanooga, TN 37421-6038
5180669*       Charlotte Division,   401 West Trade Street,   Charlotte, NC 28202-1633
5180661*       Citimortgage, Inc.,   PO Box 9442,   Gaithersburg, MD 20898-9442
5180672*       City County Tax Collector,   PO Box 31457,   Charlotte, NC 28231-1457
5180682*       City National West Virginia,   Operations Center,   PO Box 7077,   Cross Lanes, WV 25356-0077
5180285*       Deborah D. Gaither,   Brown Moore & Associates, PLLC,   930 East Blvd.,   P.O. Box 35189,
               Charlotte, NC 28235-5189
5180662*       Deborah D. Gaither,   Brown Moore & Associates, PLLC,   930 East Blvd.,   P.O. Box 35189,
               Charlotte, NC 28235-5189
5180313*       FIRST HEALTH - CAREMARK RX INC,   PO BOX 23189,   TUCSON AZ 85734-3189
5180314*       FIRST HEALTH - DIRECT,   PO BOX 8400,   LONDON KY 40742-8400
5180315*       FIRST HEALTH - HEALTH MANAGEMENT ASSOC,   PO BOX 11420,   TUCSON AZ 85734-1420
3270716*       First Citizens Bank & Trust Co.,   Mecklenburg Commercial Banking,
               c/o Loan Servicing Department - DAC20,   P.O. Box 26592,   Raleigh, NC  27611-6592
3270717*       First Citizens Bank & Trust Co.,   Mecklenburg Commercial Banking,
               c/o Loan Servicing Department - DAC20,   P.O. Box 26592,   Raleigh, NC  27611-6592
5180673*       First Citizens Bank & Trust Co.,   Mecklenburg Commercial Banking,
               c/o Loan Servicing Department - DAC20,   P.O. Box 26592,   Raleigh, NC 27611-6592
5180683*       First Citizens Bank & Trust Company,   Paul A. Fanning,   Ward and Smith, P.A.,
               Post Office Box 8088,   Greenville, NC 27835-8088
5180323*       First-Citizens Bank & Trust Company,   Attn: Gregory Jones,   PO Box 31727,
               Charlotte, NC 28231-1727
5180663*       First-Citizens Bank & Trust Company,   Attn: Gregory Jones,   PO Box 31727,
               Charlotte, NC 28231-1727
5180324*       Florida Infusion Services, Inc.,   1053 Progress Court,   Palm Harbor, FL 34683-1448
5180674*       Florida Infusion Services, Inc.,   1053 Progress Court,   Palm Harbor, FL 34683-1448
5180684*       Greenbrier County, WV,   P.O. Box 506,   County Courthouse,   Lewisburg, WV 24901-0506
5180419*       Harold C. Spears, Esquire,   Caudle & Spears, P.A.,   2600 Interstate Tower,
               121 West Trade Street,   Charlotte, NC 28202-5399
5180665*       Harold C. Spears, Esquire,   Caudle & Spears, P.A.,   2600 Interstate Tower,
               121 West Trade Street,   Charlotte, NC 28202-5399
5180351*       INLAND MID-ATLANTIC MANAGEMENT CORP,   4687 PAYSPHERE CIR,   CHICAGO IL 60674-0046
3270719*      ++INTERNAL REVENUE SERVICE,   CENTRALIZED INSOLVENCY OPERATIONS,   PO BOX 7346,
               PHILADELPHIA PA 19101-7346
               (address filed with court:  Internal Revenue Service,   Insolvency Unit,
               320 Federal Place, Room 335,   Greensboro, NC  27401)
5180735*      ++INTERNAL REVENUE SERVICE,   CENTRALIZED INSOLVENCY OPERATIONS,   PO BOX 7346,
               PHILADELPHIA PA 19101-7346
               (address filed with court:  Internal Revenue Service,   Insolvency Unit,
               320 Federal Place, Room 335,   Greensboro, NC 27401)
5180638*      ++INTERNAL REVENUE SERVICE,   CENTRALIZED INSOLVENCY OPERATIONS,   PO BOX 7346,
               PHILADELPHIA PA 19101-7346
               (address filed with court:  Internal Revenue Service,   PO Box 21126,   Philadelphia, PA 19114)
3270762*      ++INTERNAL REVENUE SERVICE,   CENTRALIZED INSOLVENCY OPERATIONS,   PO BOX 7346,
               PHILADELPHIA PA 19101-7346
               (address filed with court:  Internal Revenue Service,   PO Box 21126,   Philadelphia, PA 19114)
5180736*      ++INTERNAL REVENUE SERVICE,   CENTRALIZED INSOLVENCY OPERATIONS,   PO BOX 7346,
               PHILADELPHIA PA 19101-7346
               (address filed with court:  Internal Revenue Service,   PO Box 21126,   Philadelphia, PA 19114)
5180352*       INTERWEST HEALTH - CBSA,   PO BOX 27267,   MINNEAPOLIS MN 55427-0267
5180353*       JAMES A WILSON,   5322 HIGHGATE DRIVE SUITE 243,   DURHAM NC 27713-6633
5180685*       James A. Wilson,   5322 Highgate Dr., S 243,   Durham, NC 27713-6633
5180355*       Jeffrey K. Peraldo,   500-D State Street,   Greensboro, NC 27405-5659
5180686*       Jeffrey K. Peraldo,   500-D State Street,   Greensboro, NC 27405-5659
5180696*       Jemsek Clinic, P.A.,   Christie Roeske,   Rosedale Medical Center,   14330 Oakhill Park Ln.,
               Huntersville, NC 28078-3314
```

```
                ***** BYPASSED RECIPIENTS (continued) *****
3270723*       +Jemsek Clinic, P.A.,   Rosedale Medical Center,    14330 Oakhill Park Ln.,
                Huntersville, NC 28078-3407
3270724*       +Jemsek Clinic, P.A.,   Rosedale Medical Center,    14330 Oakhill Park Ln.,
                Huntersville, NC 28078-3407
3270725*       +Jemsek Clinic, P.A.,   Rosedale Medical Center,    14330 Oakhill Park Ln.,
                Huntersville, NC 28078-3407
3270726*       +Jemsek Clinic, P.A.,   Rosedale Medical Center,    14330 Oakhill Park Ln.,
                Huntersville, NC 28078-3407
5180706*        Jemsek Clinic, P.A.,   Rosedale Medical Center,    14330 Oakhill Park Ln.,
                Huntersville, NC 28078-3407
5180687*        Jenkins, Heather,   c/o Robert A. Karney,   Karney, deBrun & Wilcox,   1208 S. Tryon St.,
                Charlotte, NC 28203-4260
5180697*        Jim D. Cooney,   Womble Carlyle,   One Wachovia Center,   301 S College St., S 3500,
                Charlotte, NC 28202-6002
5180724*        Joseph Gregory Jemsek,   1255 25th Street NW,   Apt. 621,   Washington, DC 20037-4109
5180707*        Joseph Jabkiewicz, Adm,   c/o Eric A. Rogers,   Caudle & Spears, P.A.,   121 W Trade St, S 2600,
                Charlotte, NC 28202-1193
5180688*        Joseph Jabkiewicz, Admin of the Estate of Ka,   c/o Harold C. Spears, Esquire,
                Caudle & Spears, P.A.,   2600 Interstate Tower,   121 West Trade Street,
                Charlotte, NC 28202-5399
5180698*        Joshua D. Davey,   Helms, Mullis Wicker,   201 N. Tryon St.,   Charlotte, NC 28202-2146
5180635*        Kim M. Dormey,   785 Spyglass Way,   Rock Hill, SC 29730-8094
5180731*        Langdon M. Cooper,   Mullen Holland & Cooper, P. A.,   P. O. Box 488,   Gastonia, NC 28053-0488
5180427*        Louis W. Doherty, Esq.,   KILPATRICK STOCKTON LLP,   1001 West Fourth Street,
                Winston-Salem, NC 27101-2410
5180708*        Louis W. Doherty, Esq.,   KILPATRICK STOCKTON LLP,   1001 West Fourth Street,
                Winston-Salem, NC 27101-2410
5180689*        Macon County Tax Administrator,   5 West Main Street, Annex Bldg.,   Franklin, NC 28734-3005
5180718*        Michael F. Ruggio,   7546 Clifton Road,   Clifton, VA 20124-2131
5180699*        Michael P. Flanagan,   Ward & Smith, P.A.,   P.O. Box 867,   New Bern NC 28563-0867
5180657*        Morgan Stanley Credit Corporation,   4909 East 26th Street,   Sioux Falls, SD 57110-6950
5180751*        Morgan Stanley Credit Corporation,   4909 East 26th Street,   Sioux Falls, SD 57110-6950
5180709*        Morgan Stanley Credit Corporation,   PO Box 5079,   Sioux Falls, SD 57117
5180690*        NC Department of Revenue,   Central Collection Division,   P.O. Box 1168,
                Raleigh, NC 27602-1168
5180700*        North Carolina Department Of Revenue,   Angela C. Fountain, Bankruptcy Manager,
                Collections Examination Division,   Post Office Box 1168,   Raleigh, NC 27602-1168
5180710*        PHH Mortgage Corporation,   2001 Bishops Gate Blvd,   Attn: Mail Stop SV-01,
                Mount Laurel, NJ 08054-4604
5180691*        Patti Looper Ingram,   Jeffrey K. Peraldo,   500-D State Street,   Greensboro, NC 27405-5659
5180701*        Patti Looper Ingram,   Jeffrey K. Peraldo, Esq.,   500-D State Street,
                Greensboro, NC 27405-5659
5180692*        Phillip Moore,   Niki Taylor Moore,   DeVore, Acton & Stafford, PA,   831 E Morehead St., S 245,
                Charlotte, NC 28202-2773
5180702*        R. Kent Brown,   Brown Moore & Associates,   930 East Blvd.,   P.O. Box 35189,
                Charlotte, NC 28235-5189
5180712*        R. Kent Brown,   Brown Moore & Associates, PLLC,   930 East Blvd.,   P.O. Box 35189,
                Charlotte, NC 28235-5189
5180693*        Robert H. Pryor, Esq.,   Helms Mulliss & Wicker, PLLC,   PO Box 31247,
                Charlotte, NC 28231-1247
5180703*        Rosedale Medical Group, LLC,   Rosedale Medical Center,   14330 Oakhill Park Ln.,
                Huntersville, NC 28078-3314
5180713*        SPECIALIZED LOAN SERVICING, LLC,   8742 LUCENT BLVD SUITE 300,
                HIGHLANDS RANCH, COLORADO 80129-2386
3270738*       +Scottish Bank,   1057 Providence Road,   Charlotte, NC 28207-2591
5180694*        Scottish Bank,   1057 Providence Road,   Charlotte, NC 28207-2591
5180695*        SunTrust Bank,   c/o Robert H. Pryor, Esq.,   Helms Mulliss & Wicker, PLLC,   PO Box 31247,
                Charlotte, NC 28231-1247
3270741*       +SunTrust Bank,   PO Box 85052,   Richmond, VA 23285-5052
5180714*        SunTrust Bank,   PO Box 85052,   Richmond, VA 23285-5052
5180704*        SunTrust Bank,   101 S. Kings Drive,   Charlotte, NC 28204-2619
5180705*        Suntrust Bank,   Attn: Support Services,   P.O. Box 85092,   Richmond, VA 23286-0001
5180636*        Travis W. Moon,   Moon Wright & Houston, PLLC,   227 West Trade Street,   Suite 1800,
                Charlotte, NC 28202-2665
5180658*        U.S. Bankruptcy Administrator Office,   402 W. Trade Street,   Suite 200,
                Charlotte, NC 28202-1673
5180728*        US SEC,   Suite 1000,   3475 Lenox Rd NE,   Atlanta, GA 30326-3235
5180565*        US SEC,   Suite 1000,   3475 Lenox Rd., NE,   Atlanta, GA 30326-3235
5180722*        VT Inc.,   as Trustee of World Omni LT,   P O Box 991817,   , AL 36691-8817
5180585*        William J. Gaither,   Brown Moore & Associates,   930 East Blvd.,   P.O. Box 35189,
                Charlotte, NC 28235-5189
5180729*        William J. Gaither,   Brown Moore & Associates,   930 East Blvd.,   P.O. Box 35189,
                Charlotte, NC 28235-5189
5180723*        William Walt Pettit,   Kellam & Pettis, P.A.,   2701 Coltsgate Road, S 300,
                Charlotte, NC 28211-3594
5180716*        William Walt Pettit,   2701 Coltsgate Road,   Suite 300,   Charlotte, 28211-3594
5180634*        William Walt Pettit,   2701 Coltsgate Road,   Suite 300,   Charlotte, NC 28211-3594
5180730*        blancoaa,   McCalla Raymer Padrick Cobb Nichols & Cl,   1544 Old Alabama Road,
                Roswell, GA 30076-2102
```

```
District/off: 0419-3              User: howeyc          Page 10 of 12          Date Rcvd: Mar 08, 2018
                                 Form ID: pdf           Total Noticed: 383

5180270         ##CCN - PEARCE CORPORATION,     PO BOX 2408,     FLORENCE SC 29503-2408
5180275         ##COMBINED INSURANCE COMPANY,    PO BOX 638,   BELLINGHAM WA 98227-0638
5180280         ##CONTINENTAL LIFE INSURANCE,    PO BOX 1188,   BRENTWOOD TN 37024-1188
5180440         ##MHC SERVICES INC,   2103 SULLIVAN STREET,    GREENSBORO NC 27405-7331
4797324         ##+PHH Mortgage Corporation,    2001 Bishops Gate Blvd,    Attn: Mail Stop SV-01,
                  Mount Laurel, NJ 08054-4604
5180544         ##TECHSTRUCTURES,    1950 ABBOTT ST SUITE 601,    CHARLOTTE NC 28203-4495
5180592         ##Travis W. Moon,    Moon Wright & Houston, PLLC,    227 West Trade Street,    Suite 1800,
                  Charlotte, NC 28202-2665
                                                                  TOTALS: 73, * 99, ## 7
```

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.

Addresses marked '++' were redirected to the recipient's preferred mailing address
pursuant to 11 U.S.C. 342(f)/Fed.R.Bank.PR.2002(g)(4).

Addresses marked '#' were identified by the USPS National Change of Address system as requiring an update.
While the notice was still deliverable, the notice recipient was advised to update its address with the court
immediately.

Addresses marked '##' were identified by the USPS National Change of Address system as undeliverable.  Notices
will no longer be delivered by the USPS to these addresses; therefore, they have been bypassed.  The
debtor's attorney or pro se debtor was advised that the specified notice was undeliverable.


**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed.  This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Mar 10, 2018                                        Signature:   /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

```
The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system on March 8, 2018 at the address(es) listed below:
         Adrianne Huffman,    on behalf of Defendant    The Jemsek Clinic, P.A. ahuffman@lawhms.com,
           smyers@lawhms.com;emineau@lawhms.com
         Adrianne Huffman,    on behalf of Debtor    Jemsek Clinic, P.A. ahuffman@lawhms.com,
           smyers@lawhms.com;emineau@lawhms.com
         Adrianne Huffman,    on behalf of Defendant    Jemsek Clinic, P.A. ahuffman@lawhms.com,
           smyers@lawhms.com;emineau@lawhms.com
         Alan D. McInnes    on behalf of Plaintiff    Blue Cross and Blue Shield of North Carolina
           amcinnes@kilpatricktownsend.com,  ktriebel@kilpatricktownsend.com
         Alan D. McInnes    on behalf of Counter-Defendant    Blue Cross and Blue Shield of North Carolina
           amcinnes@kilpatricktownsend.com,  ktriebel@kilpatricktownsend.com
         Alan D. McInnes    on behalf of Creditor    Blue Cross and Blue Shield of North Carolina
           amcinnes@kilpatricktownsend.com,  ktriebel@kilpatricktownsend.com
         Anna Cotten Wright    on behalf of Defendant Joseph G. Jemsek cwright@grierlaw.com,
           agorman@grierlaw.com;mmartinez@grierlaw.com;blewis@grierlaw.com
         Anna Cotten Wright    on behalf of Creditor    Grier Furr & Crisp, PA cwright@grierlaw.com,
           agorman@grierlaw.com;mmartinez@grierlaw.com;blewis@grierlaw.com
         Anna Cotten Wright    on behalf of Unknown Joseph G. Jemsek, M.D. cwright@grierlaw.com,
           agorman@grierlaw.com;mmartinez@grierlaw.com;blewis@grierlaw.com
         Anna Cotten Wright    on behalf of Counter-Claimant Joseph G. Jemsek, M.D. cwright@grierlaw.com,
           agorman@grierlaw.com;mmartinez@grierlaw.com;blewis@grierlaw.com
         Anna Cotten Wright    on behalf of Defendant Joseph G. Jemsek, M.D. cwright@grierlaw.com,
           agorman@grierlaw.com;mmartinez@grierlaw.com;blewis@grierlaw.com
         Chad Dwight Hansen    on behalf of Creditor    Blue Cross and Blue Shield of North Carolina
           ChadHansen@KilpatrickTownsend.com,
           cwheeler@kilpatricktownsend.com;landerson@kilpatricktownsend.com;kdawson@kilpatricktownsend.com
         Cindy G. Oliver    on behalf of Creditor    Bank Of America, N.A. olivercgo@aol.com
         Daniel R. Taylor, Jr.    on behalf of Creditor    Blue Cross and Blue Shield of North Carolina ,
           twebb@kilpatricktownsend.com
         Daniel R. Taylor, Jr.    on behalf of Plaintiff    Blue Cross and Blue Shield of North Carolina ,
           twebb@kilpatricktownsend.com
         Daniel R. Taylor, Jr.    on behalf of Counter-Defendant    Blue Cross and Blue Shield of North
           Carolina ,  twebb@kilpatricktownsend.com
         Daniel Russell Taylor, Jr.    on behalf of Creditor    Blue Cross and Blue Shield of North Carolina
           DanTaylor@KilpatrickTownsend.com,  twebb@kilpatricktownsend.com
```

District/off: 0419-3          User: howeyc          Page 11 of 12          Date Rcvd: Mar 08, 2018
                             Form ID: pdf            Total Noticed: 383

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system (continued)
              Daniel S Dooley    on behalf of Creditor    Polsinelli PC ddooley@polsinelli.com,
               docket@polsinelli.com;tbackus@polsinelli.com/anazar@polsinelli.com
              David R. Badger    on behalf of Plaintiff Rick A. Bowman davebadger@badgerlawnc.com,
               cmecfnoticesonly@gmail.com;r49231@notify.bestcase.com
              David R. Badger    on behalf of Creditor Heather  Jenkins davebadger@badgerlawnc.com,
               cmecfnoticesonly@gmail.com;r49231@notify.bestcase.com
              David R. Badger    on behalf of Plaintiff Hope Buff Bowman davebadger@badgerlawnc.com,
               cmecfnoticesonly@gmail.com;r49231@notify.bestcase.com
              David R. Badger    on behalf of Creditor Hope Buff Bowman davebadger@badgerlawnc.com,
               cmecfnoticesonly@gmail.com;r49231@notify.bestcase.com
              David R. Badger    on behalf of Creditor Rick A. Bowman davebadger@badgerlawnc.com,
               cmecfnoticesonly@gmail.com;r49231@notify.bestcase.com
              Deborah L. Fletcher    on behalf of Counter-Defendant    Blue Cross and Blue Shield of North
               Carolina deborah.fletcher@fisherbroyles.com
              Deborah L. Fletcher    on behalf of Plaintiff    Blue Cross and Blue Shield of North Carolina
               deborah.fletcher@fisherbroyles.com
              Deborah L. Fletcher    on behalf of Creditor    Blue Cross and Blue Shield of North Carolina
               deborah.fletcher@fisherbroyles.com
              Deborah L. Fletcher    on behalf of Counter-Claimant    Blue Cross and Blue Shield of North
               Carolina deborah.fletcher@fisherbroyles.com
              Eric C. Cotton    on behalf of Creditor    DDRTC Birkdale Village, LLC hsmith@ddrc.com
              Gary Walker Jackson    on behalf of Plaintiff Phillip E. Moore
               klawton@ncadvocates.com;smcgee@ncadvocates.com;mabraham@gouldratner.com;jenniferdgilbert32@gmail.
               com
              Gilbert Barnett Weisman    on behalf of Creditor    American Express Bank FSB notices@becket-lee.com
              Glenn C. Thompson    on behalf of Interested Party Meredith and Clay  Phillips
               gthompson@lawhssm.com,  rkelley@lawhssm.com;vhughes@lawhssm.com;kdantinne@lawhssm.com
              Glenn C. Thompson    on behalf of Interested Party    Hamilton Stephens Steele + Martin, PLLC
               gthompson@lawhssm.com,  rkelley@lawhssm.com;vhughes@lawhssm.com;kdantinne@lawhssm.com
              Harold C. Spears    on behalf of Plaintiff Joseph Stanly Jabkiewicz hspears@caudlespears.com,
               jerickson@caudlespears.com;acorrell@caudlespears.com;djordan@caudlespears.com
              James H. Henderson    on behalf of Plaintiff William J. Gaither henderson@title11.com,
               ginny@title11.com;r45613@notify.bestcase.com
              James H. Henderson    on behalf of Plaintiff Deborah D. Gaither henderson@title11.com,
               ginny@title11.com;r45613@notify.bestcase.com
              James H. Henderson    on behalf of Debtor Joseph Gregory Jemsek henderson@title11.com,
               ginny@title11.com;r45613@notify.bestcase.com
              James H. Henderson    on behalf of Plaintiff Joseph Stanly Jabkiewicz henderson@title11.com,
               ginny@title11.com;r45613@notify.bestcase.com
              James P. Cooney, III    on behalf of Defendant Joseph G. Jemsek jcooney@wcsr.com
              James P. Cooney, III    on behalf of Defendant    The Jemsek Clinic, P.A. jcooney@wcsr.com
              James P. Cooney, III    on behalf of Defendant Joseph G. Jemsek, M.D. jcooney@wcsr.com
              James P. Cooney, III    on behalf of Defendant    The Jemsek Clinic jcooney@wcsr.com
              James P. Cooney, III    on behalf of Defendant    Jemsek Clinic, P. A. jcooney@wcsr.com
              James P. Cooney, III    on behalf of Defendant Christie  Roeske, R.N.P jcooney@wcsr.com
              James P. Cooney, III    on behalf of Defendant    Jemsek Clinic, P.A. jcooney@wcsr.com
              John D. Schlotter    on behalf of Creditor    PennyMac Loan Services, LLC
               bkecfinbox@aldridgepite.com,  jschlotter@ecf.inforuptcy.com
              Joseph J. Vonnegut    on behalf of Creditor    PennyMac Loan Services, LLC bkymail@hskplaw.com,
               troy.staley@ecf.inforuptcy.com
              Joseph W. Grier, III    on behalf of Defendant Joseph G. Jemsek, M.D. jgrier@grierlaw.com,
               agorman@grierlaw.com;cwright@grierlaw.com
              Joseph W. Grier, III    on behalf of Counter-Claimant    Jemsek Clinic, P.A. jgrier@grierlaw.com,
               agorman@grierlaw.com;cwright@grierlaw.com
              Joseph W. Grier, III    on behalf of Defendant Joseph G. Jemsek jgrier@grierlaw.com,
               agorman@grierlaw.com;cwright@grierlaw.com
              Langdon M. Cooper    on behalf of Debtor    Jemsek Clinic, P.A. attorney.lcooper@mhc-law.com
              Louis W. Doherty    on behalf of Plaintiff    Blue Cross and Blue Shield of North Carolina
               ldoherty@kilpatricktownsend.com,  pritchie@kilpatricktownsend.com
              Louis W. Doherty    on behalf of Counter-Defendant    Blue Cross and Blue Shield of North Carolina
               ldoherty@kilpatricktownsend.com,  pritchie@kilpatricktownsend.com
              Michael F. Ruggio    on behalf of Counter-Claimant    Jemsek Clinic, P.A. cdancy@polsinelli.com,
               mruggio@polsinelli.com;dkramer@polsinelli.com;ldesantis@polsinelli.com;csteele@polsinelli.com;spa
               teidl@polsinelli.com;docket@polsinelli.com
              Michael F. Ruggio    on behalf of Counter-Claimant Joseph G. Jemsek, M.D. cdancy@polsinelli.com,
               mruggio@polsinelli.com;dkramer@polsinelli.com;ldesantis@polsinelli.com;csteele@polsinelli.com;spa
               teidl@polsinelli.com;docket@polsinelli.com
              Michael F. Ruggio    on behalf of Defendant Joseph G. Jemsek, M.D. cdancy@polsinelli.com,
               mruggio@polsinelli.com;dkramer@polsinelli.com;ldesantis@polsinelli.com;csteele@polsinelli.com;spa
               teidl@polsinelli.com;docket@polsinelli.com
              Michael F. Ruggio    on behalf of Defendant    Jemsek Clinic, P.A. cdancy@polsinelli.com,
               mruggio@polsinelli.com;dkramer@polsinelli.com;ldesantis@polsinelli.com;csteele@polsinelli.com;spa
               teidl@polsinelli.com;docket@polsinelli.com
              Michael J. McCormick    on behalf of Creditor    CitiMortgage, Inc.
               BankruptcyECFMail@mccallaraymer.com
              Michael P. Flanagan    on behalf of Creditor    First-Citizens Bank & Trust Company
               mpf@wardandsmith.com,  blh@wardandsmith.com;DocketCR@wardandsmith.com;nsf@wardandsmith.com

District/off: 0419-3          User: howeyc          Page 12 of 12          Date Rcvd: Mar 08, 2018
                             Form ID: pdf           Total Noticed: 383

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email)
system (continued)
          Paul A. Fanning    on behalf of Creditor    First-Citizens Bank & Trust Company
           paf@wardandsmith.com,
           blh@wardandsmith.com;DocketCR@wardandsmith.com;nsf@wardandsmith.com;jscotten@wardandsmith.com
          Richard S. Wright    on behalf of Interested Party Kay T. Jemsek rwright@mwhattorneys.com,
           smyers@mwhattorneys.com
          Robert A. Karney    on behalf of Plaintiff Hope Buff Bowman bob@karneylaw.com
          Robert A. Karney    on behalf of Creditor Hope Buff Bowman bob@karneylaw.com
          Robert A. Karney    on behalf of Plaintiff Rick A. Bowman bob@karneylaw.com
          Robert A. Karney    on behalf of Plaintiff Heather  Jenkins bob@karneylaw.com
          Scott D. Fink    on behalf of Creditor   VT Inc., as trustee of World Omni Financial Corp.
           bronationalecf@weltman.com
          Stacy C. Cordes    on behalf of Plaintiff Joseph Stanly Jabkiewicz scordes@burtcordeslaw.com,
           jshort@burtcordeslaw.com;r42770@notify.bestcase.com
          Terri L. Gardner    on behalf of Creditor   City National Bank of West Virginia
           terri.gardner@nelsonmullins.com,  karie.rankine@nelsonmullins.com
          Travis W. Moon    on behalf of Defendant   The Jemsek Clinic tmoon@mwhattorneys.com,
           smyers@mwhattorneys.com
          Travis W. Moon    on behalf of Defendant    Jemsek Clinic, P.A. tmoon@mwhattorneys.com,
           smyers@mwhattorneys.com
          Travis W. Moon    on behalf of Defendant    The Jemsek Clinic, P.A. tmoon@mwhattorneys.com,
           smyers@mwhattorneys.com
          Travis W. Moon    on behalf of Debtor    Jemsek Clinic, P.A. tmoon@mwhattorneys.com,
           smyers@mwhattorneys.com
          Tricia M. Derr    on behalf of Defendant   The Jemsek Clinic, P.A. tderr@wcsr.com
          Tricia M. Derr    on behalf of Defendant Joseph G. Jemsek, M.D. tderr@wcsr.com
          U.S. Bankruptcy Administrator Office    alexandria_p_kenny@ncwba.uscourts.gov,
           ba_desk@ncwba.uscourts.gov
          William Walt Pettit    on behalf of Creditor   The Scottish Bank walt.pettit@hutchenslawfirm.com,
           tracy.vines@hutchenslawfirm.com

                                                                                        TOTAL: 75

```
FILED & JUDGMENT ENTERED
     Steven T. Salata


     March  8  2018


   Clerk, U.S. Bankruptcy Court
 Western District of North Carolina
```

J. Craig Whitley
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| JOSEPH GREGORY JEMSEK | ) | Bankruptcy Case No. 06-31986 (JCW) |
| | ) | |
| JEMSEK CLINIC, P. A. | ) | Bankruptcy Case No. 06-31766 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING SECOND AMENDED JOINT PLAN OF REORGANIZATION

On October 25, 2006, Jemsek Clinic, P.A. (the "Clinic") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code"), with the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court"), bearing Case No. 06-31766.   On November 20, 2006, Joseph Gregory Jemsek ("Jemsek") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C.   101 et seq. (the "Bankruptcy Code"), with the United States Bankruptcy Court for the Western District of North Carolina (the "Court"), bearing Case No. 06-31986.   On May 19, 2015, an Order was entered by this Court directing joint administration of these Chapter 11 cases.   The Honorable J. Craig Whitley, United States Bankruptcy Judge, presides over the Debtors' bankruptcy cases (referred to as the "Chapter 11 Case" when applicable). Jemsek continues in possession of his properties and the management of his affairs as a "debtor in possession" pursuant to sections 1107 and 1108 of the Bankruptcy Code.

These Chapter 11 Cases came before the Court for hearing on January 29, February 2 and February 8, 2018 (the "Confirmation Hearing"). The Debtors were present and represented by The Henderson Law Firm. The creditors present and represented by counsel included Blue Cross and Blue Shield of North Carolina ("BCBS"), Polsinelli, PC ("Polsinelli"), First-Citizens Bank & Trust Co. ("First-Citizens"), Kay T. Jemsek ("Kay Jemsek"), City National Bank of West Virginia ("CNB") and Grier Furr & Crisp, P.A. ("Grier Furr"). The following matters were before the Court:

      i.     Final Hearing on Approval of Second Amended Disclosure Statement, including all exhibits thereto (the "Disclosure Statement") [Doc. 1055];

      ii.     Hearing on Confirmation of Second Amended Joint Plan of Reorganization, including all exhibits thereto and as amended, modified or supplemented from time to time, including by the amendments set forth in this Order (the "Plan") [1] [Doc. 1054];

      iii.     Motion for Relief from Stay by("CNB") [Doc. 900];

      iv.     Motion to Approve Settlement with Kay T. Jemsek (the "Domestic Settlement Motion") [Doc. 955];

      v.     Objection to Domestic Settlement Motion by First-Citizens [Doc. 1018];

      vi.     Objection to Domestic Settlement Motion by BCBS [Doc. 1019];

      vii.     Objection to Domestic Settlement Motion by Polsinelli [Doc. 1020];

      viii.     Amended Objection to Domestic Settlement Motion by BCBS [Doc. 1023]

      ix.     Motion for Relief from Stay to Prosecute Domestic Claims by Kay T. Jemsek [Doc. 1026];

      x.     Motion to Dismiss Bankruptcy Case by Kay T. Jemsek [Doc. 1027];

      xi.     Joinder in Motion to Dismiss by BCBS [Doc. 1040];

      xii.     Debtors' Objections to Motion for Relief and Motion to Dismiss by Kay Jemsek [Doc. 1042];

      xiii.     Motion of CNB Under Section 506(b) for Approval of Fees and Expenses [Doc. 1059];

      xiv.     Motion to Approve Consent Order Resolving Motion for Relief of CNB [Doc. 1060];

      xv.     Response of Grier Furr to Second Amended Plan [Doc. 1062];

      xvi.     Objection to Confirmation of Second Amended Plan by First-Citizens [Doc. 1065]; and

      xvii.     Objection of Kay Jemsek to Second Amended Plan and Second Amended Disclosure Statement [Doc. 1066].

      On January 3, 2018 the Court entered the Order Conditionally Approving Second Amended Disclosure Statement, Fixing Time For Filing Acceptances Or Rejections Of The Plan, And Fixing The Time For Filing Objections To The Disclosure Statement And To The Confirmation Of The Plan, Combined With Notice Thereof And Of The Hearing On Final Approval Of The Disclosure Statement And The Hearing On Confirmation Of The Plan (the "Confirmation Hearing Order")[Doc. 1057]. On January 28, 2018 the Debtors filed the Summary of Ballots [Doc. 1068] regarding ballots cast accepting or rejecting the Plan.

      NOW, THEREFORE, based upon the Court's review of the Plan, the Disclosure Statement, all matters of record in both cases, including the proofs of claim filed, the adversary proceedings pending between the Debtors and BCBS, and upon all of the evidence proffered or adduced and the arguments of counsel made at the Confirmation Hearing, and after due

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan. If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

deliberation thereon and good and sufficient cause appearing therefor, the Court hereby makes and issues the following Findings of Fact, Conclusions of Law and Orders.

## AMENDMENTS TO PLAN

For the reasons set forth on the record at the Confirmation Hearing, the Plan is deemed to have been amended as follows:

1.     The provisions of Section 3.4.2 (treatment of Class 4 Claims of Kay Jemsek) will be modified to delete the provision contained in the Plan and to substitute the following:

Notwithstanding any other provision of this Plan, all of the Claims of Kay Jemsek shall be Allowed Domestic Support Obligations pursuant to sections 101(14A) and 507(a)(1) of the Bankruptcy Code, and shall be treated in accordance with the February 7, 2017 Separation, Property Settlement, Alimony and Child Custody & Support Agreement attached to the Plan as Exhibit A (the "Original Agreement"), with the following modifications:

(A) Paragraph 13 (entitled "Investment Accounts") shall be deleted;

(B) Paragraph 19 shall be deleted and replaced with the following –

19.     Alimony. Joseph shall pay alimony to Kay as follows:

(a) Ongoing Monthly Alimony Payments. Joseph shall pay alimony to Kay in the sum of $10,500 per month beginning February 5, 2016 and continuing on the 5th day of each month thereafter through and including January of 2018. Beginning February 5, 2018, Joseph shall pay alimony to Kay in the sum of $7,500 per month and continuing on the 5th day of each month thereafter until the earlier of the following termination events:

(i) Death of Joseph;
(ii) Death of Kay;
(iii) Remarriage of Kay;
(iv) Cohabitation by Kay as defined in N.C.G.S. § 50-16.9;
(v) Joseph attaining age 70 on April 16, 2019.

On Joseph attaining the age of 70 on April 16, 2019, and provided no other termination event as described above has occurred, Joseph shall pay alimony to Kay in the sum of $4,000 per month beginning May 5, 2019 and continuing on the 5th day of each month thereafter through and including April of 2021. In the event that Husband loses his medical license or if he has a mental or physical impediment, which renders him unable to work in his profession, the parties agree to discuss and attempt to agree on an appropriate modification of the remaining monthly alimony payments. If the parties are unable to agree between themselves to an appropriate modification of the monthly alimony payment, then they shall

3

both attend a mediated settlement conference conducted by a North Carolina Certified Family Financial Mediator in a further effort to resolve this issue. If the issue is still unresolved, then either party shall be entitled to a determination of this issue by arbitration under the North Carolina Family Law Arbitration Act. The parties have designated Fred A. Hicks to serve as Arbitrator but may utilize any mutually agreed upon experienced Family Conflict Arbitrator. In no case may the term of alimony be extended by the Arbitrator or shall the monthly payment exceed the sums contained herein. Any downward modification of Joseph's alimony obligation under the terms of this contract shall automatically revert to the contract obligation at such time as any impediments resulting in the reduction are removed. Any Order entered by the arbitrator shall be subject to modification based upon substantial change of circumstances in the same manner as an Order entered by a Judge presiding over Family Court, but shall be subject to the provisions of this paragraph.

(b) Payment of Alimony in Arrears. Joseph is in arrears in one prior alimony payment due to Kay in the amount of $10,500. In addition to his other obligations under this Agreement, Joseph shall pay said arrearage of $10,500 to Kay on or before attaining the age of 70 on April 16, 2019.

(c) Waiver of Other or Further Alimony. Except as set forth hereinabove and in paragraph 49 below, Kay expressly relinquishes and waives any and all rights to alimony or claims for maintenance and support from Joseph. Joseph hereby expressly relinquishes and waives and all rights to alimony or claims for maintenance and support from Kay.

(d) No Integration with Property Settlement. The provisions for payment and waiver of alimony as set forth above are independent of the property settlement provisions of the Agreement.

(e) Tax Considerations. Any alimony payments from Joseph to Kay from and after February 7, 2017 shall be includable as income to Kay for the purpose of filing Federal and State income tax returns and shall be deductible from Joseph's income to the extent allowed by the Internal Revenue Service and North Carolina Department of Revenue.

(C) Paragraph 23 shall be deleted and replaced with the following –

23.     College Education. In the event that either and/or both of the parties' minor children desire to pursue a college education after having completed high school, the actual costs (tuition, books, room or comparable housing expense), board (or comparable grocery expense), and other fees normally charged by the institution, for such higher education, not exceeding the cost of said education then in effect at the University of North Carolina at Chapel Hill for North Carolina, shall be borne by Joseph. In addition, Joseph shall afford each such child reasonable sums to be determined by Joseph in his reasonable discretion for transportation, clothing, and spending allowances giving due consideration to the earnings of the child, if any. The obligation of Joseph to afford the minor children with a higher education as aforesaid shall be limited to undergraduate school. If the child fails to graduate

from undergraduate school within four (4) years of matriculation due to academic or disciplinary reasons, then Joseph, at his option, may cease further payment pursuant to this paragraph to or for the benefit of such child. The commitment to pay for the college expenses of the children as set forth in this paragraph is integrated with the property settlement of the parties, is not modifiable by either party for any reason, and shall be a binding obligation on Joseph's decedent estate in the event of his death notwithstanding any other provision of this Agreement.

(D) Paragraph 49 shall be added to the Agreement and shall state as follows-

49.    Default; Opportunity to Cure; Remedy. Notwithstanding any other provision of this Agreement, Joseph shall be deemed in default of his obligations hereunder in the event any payment due to Kay or for the benefit of the parties' minor children is more than fifteen (15) days late. In such event, Kay shall notify Joseph of such default in writing (by regular U.S. mail, facsimile transmission, or electronic mail), and Joseph shall have ten (10) days from the sending of such notice to cure his default. If Joseph fails to timely cure such default, his obligation to pay alimony to Kay shall increase to $10,500 per month retroactively from February 2016 forward. Jemsek and Kay Jemsek shall execute a revised Separation, Property Settlement, Alimony and Child Custody & Support Agreement (the "Final Agreement") reflecting the modifications set forth herein (with no other changes) and shall file a full and complete copy of the same in the Bankruptcy Court's docket on or before the Effective Date of the Plan. The Final Agreement shall be incorporated by reference in the Plan and any order confirming the Plan. Further, Kay Jemsek shall be entitled to enforce her rights under applicable law upon breach of the Original Agreement, the Final Agreement, and/or this Plan, including, but not limited to, the initiation of contempt proceedings, in the United States Bankruptcy Court for the Western District of North Carolina or in the General Court of Justice of the State of North Carolina.

2.    The provisions of Section 3.7.2 (treatment of Class 7 General Unsecured Claims Exceeding $5,000.00) will be modified to delete the provision contained in the Plan and to substitute the following:

3.7.2 ("Treatment") These Claims shall be treated as an unsecured obligation of the Reorganized Debtors. Except as noted herein with respect to the Allowed BCBS Claim, in full satisfaction of their claims, the holders of Allowed Class 7 Claims will receive a pro-rata distribution of One Hundred and Fifty Thousand Dollars ($150,000.00) from the Distribution Account after the payment to the holders of allowed Super-Priority, Allowed Administrative, Allowed Priority and Allowed Class 1 through 6 claims. Except with respect to the Allowed BCBS Claim (the holder of which is waiving distribution rights), holders of Allowed Class 7 Claims will receive 12 consecutive quarterly pro-rata distributions in the amount of $12,500.00, commencing after the payment of the BCBS Administrative Claim, Allowed Super-Priority Administrative Claims, and Administrative Claims.

5

Within thirty (30) days after the entry of orders finally determining the Allowed Claims of Class 7 creditors, the Debtors shall execute a Class 7 Plan Note (the "Note"), the form of which is attached hereto as Exhibit B, in favor of each holder of an Allowed Class 7 Claim. The debt payable to each creditor shall be determined by dividing the Allowed Claim of that creditor by the total amount of Class 7 Allowed Claims, and multiplying the resulting fraction by $150,000.00. Commencing on July 1, 2021, and for 11 consecutive calendar quarters thereafter, each creditor will receive its pro rata share of a total quarterly payment in the amount of $12,500.00. The Maturity Date of the debt is July 1, 2024. The Debtors are not obligated to pay the holders of Allowed Class 7 Claims more than $150,000.00 and payments will cease when $150,000.00 has been distributed to the Class. The holder of the Allowed BCBS Claim shall not receive distributions under Section 3.7.2 of the Plan. The Debtors may pre-pay all or any portion of the Notes without penalty.

Within thirty days after the Effective Date, the Debtors will tender the Order Imposing Lien on Real Property (the "Order Imposing Lien", in the form attached hereto as Exhibit C) to the Court and file a certified copy with the Register of Deeds of Macon County, North Carolina. The Order Imposing Lien shall act as a lien on real property located at Lot 7, Walkingstick Falls Rd in Highlands, Macon County, North Carolina (the "Real Property"), to secure the Notes. The Order Imposing Lien shall not act as a lien on Lot 6, Walkingstick Falls Rd. in Highlands, Macon County, North Carolina, or on any other real or personal property now owned or hereafter acquired by the Debtors. Upon completion of payments due under the Notes, the lien on the Real Property shall be void and of no effect.  On the request of the Debtors and after a notice and hearing the Court will take such action as is necessary to cause the release and satisfaction of the Order Imposing Lien.

The sale of the Greenbrier Property scheduled for completion within two years of the Effective Date stated in Section 3.1.2 of the Plan shall be amended to a fixed August 2019 sale date.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court makes the following findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rules 7052 and 9014. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

A.     Venue; Core Proceeding; Exclusive Jurisdiction. On the respective Petition Dates, the Debtors commenced their Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors were qualified, and remain qualified, to be debtors under section 109 of the Bankruptcy Code and debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code. Venue of the Chapter 11 Cases in this District and before the Court was proper as of the Petition Date and continues to be proper as of the date

hereof pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2). The Court has jurisdiction over the Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334, and has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.      Burden of Proof. The Debtors, as proponents of the Plan, have the burden of proving the elements of subsections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, and the Debtors have met that burden as further found and determined in this Confirmation Order.

C.      Solicitation and Notice. To obtain the requisite acceptance of the Plan, on January 3, 2018, the Debtors completed solicitation of acceptances and rejections of the Plan by distributing the Disclosure Statement and related materials as required by the Confirmation Hearing Order. As evidenced by the Declaration of Mailing and Certificate of Service filed with this Court on January 4, 2018 [Doc. No. 1058], the Disclosure Statement, the Plan, the Confirmation Hearing Order and a Ballot was served on all parties shown on the Court's master mailing matrix for the Debtors' Cases.

D.      Adequacy of Notice. The Disclosure Statement, the Plan, the Confirmation Hearing Order and the Ballots were served in compliance with the Confirmation Hearing Order and the Bankruptcy Rules and such service constituted adequate and sufficient notice of the Confirmation Hearing. All parties in interest had the opportunity to appear and be heard at the Confirmation Hearing and no other or further notice shall be required.

E.      Good Faith Solicitation. Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Confirmation Hearing Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations. Based on the record in the Chapter 11 Cases, the Debtors and each of their attorneys,  accountants, agents, and advisors, in each case solely in their capacity as such, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and the Bankruptcy Rules in compliance with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and accordingly, such parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

F.      No Need for Resolicitation. Based upon the Court's review of any amendments and modifications embodied in the Plan, including the modifications set forth in this Order, no further solicitation or resolicitation of any Holders of Claims or Interests is necessary.

G.      Summary of Ballots. As evidenced by the Summary of Ballots [Doc. No. 1068], pursuant to sections 1124 and 1126 of the Bankruptcy Code, the Impaired Classes entitled to vote on the Plan have voted to accept the Plan.

H.      Section 1129(a)(1). The Plan complies with the applicable requirements of the Bankruptcy Code.

(1)      Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article 3 of the Plan designates seven (7) Classes of Claims. As required by section 1122(a) of the Bankruptcy Code, with the exception of the Allowed Polsinelli Unsecured Claim, each Class of Claims contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. Accordingly, the Court will disallow the affirmative ballot cast in favor of the Plan by Polsinelli on account of its Unsecured Claim. Otherwise, valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and the Plan's treatment thereof does not unfairly discriminate between Holders of Claims. Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not required to be classified under the Plan and as such have not been classified. This disallowance of Polsinelli's unsecured vote ballot shall not affect in any way the Allowed Polsinelli Administrative Claim, the Allowed Polsinelli Secured Claim, or the Allowed Polsinelli Unsecured Claim or their treatment in the Plan, or any other votes cast by Polsinelli. This disallowance of the ballot of Polsinelli is not the result of any improper or inappropriate actions by Polsinelli and is only procedural in nature.

(2)      Every class is impaired under the Plan, so it is not necessary for the Plan to comply with section 1123(a)(2) of the Bankruptcy Code.

(3)      In compliance with section 1123(a)(3) of the Bankruptcy Code, Article 3 of the Plan also specifies the treatment of each Impaired Class of Claims under the Plan.

(4)      Article 3 of the Plan provides for the same treatment by the Debtors of each Claim or Interest in a particular Class as required by section 1123(a)(4) of the Bankruptcy Code.

(5)      In compliance with section 1123(a)(5) of the Bankruptcy Code, Article 7 of the Plan sets forth the means for implementation of the Plan, which means are adequate and proper. There is a reasonable probability that the Debtors will be able to make all of the payments under, and comply with all other provisions of, the Plan. Additionally, Articles 6 and 7 and various other provisions of the Plan provide adequate and proper means for the Plan's implementation.

(6)      Sections 1123(a)(6) and (a)(7) of the Bankruptcy Code do not apply.

(7)      The Plan complies with Section 1123(a)(8) of the Bankruptcy Code in that it provides for the payment to creditors of future earnings of Joseph Jemsek as is necessary for the execution of the Plan. Specifically, the Plan requires future payments of $150,000.00 in satisfaction of the BCBS Administrative Claim and payments totaling $150,000.00 to holders of Allowed Class 7 General Unsecured Claims.

(8)      In compliance with Section 1123(b) of the Bankruptcy Code, Article 5 of the Plan provides for the assumption of certain unexpired leases that exist between the Debtor and any person (as defined in 11 U.S.C. § 41, "Person") or Entity. Such provision, and all other

8

miscellaneous provisions of the Plan, are consistent with section 1123(b)(6) of the Bankruptcy Code.

(9)     The Plan is dated and identifies the individual and entity submitting it, thereby satisfying Bankruptcy Rule 3016(a).

I.     Section 1129(a)(2) – Compliance by the Debtors with Applicable Provisions of the Bankruptcy Code. The Debtors, as the proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018 regarding the Disclosure Statement and solicitation of the Plan. The Disclosure Statement and the procedures by which the Ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted and in accordance with Bankruptcy Rules 3017 and 3018 and section 1126 of the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(2) of the Bankruptcy Code have been satisfied.

J.     Section 1129(a)(3) – Proposal of the Plan in Good Faith. The Debtors have proposed the Plan in good faith and not by any means forbidden by law. The Plan is designed for any and all non-exempt assets to be liquidated and for the proceeds to be distributed to Holders of Allowed Claims in accordance with the terms of the Plan and the priority of claims provisions of the Bankruptcy Code. Moreover, the Plan itself, the process leading to its formation, and the support for the Plan received from the accepting voting Classes provides independent evidence of the Debtor's good faith. The Debtors have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code. Accordingly, the Plan satisfies the "good faith" requirement of Section 1129(a)(3).

K.     Section 1129(a)(4) – Bankruptcy Court Approval of Certain Payments as Reasonable. Pursuant to section 1129(a)(4) of the Bankruptcy Code, any payment made or promised by the Debtors or by any Person or Entity acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Case, has either been approved by this Court as reasonable or is subject to this Court's approval as reasonable.

L.     Section 1129(a)(5) – Disclosure of Information Regarding Directors, Officers and Insiders. This section is not applicable to the Plan.

M.     Section 1129(a)(6) – Governmental Regulatory Control Over Rate Changes. This section is not applicable to the Plan.

N.     Section 1129(a)(7) – Best Interests of Holders of Claims and Interests. The estimated liquidation analysis (included as an exhibit to the Disclosure Statement), including the methodology used and estimations and assumptions made therein, (i) is persuasive and credible as of the dates such evidence was prepared, presented or proffered, (ii) has not been controverted by other persuasive evidence and has not been challenged, (iii) and is based upon reasonable and sound assumptions. Therefore, the Plan satisfies the requirements of section

9

1129(a)(7) of the Bankruptcy Code.

O.      Section 1129(a)(8) – Acceptance of the Plan. Pursuant to sections 1126 and 1129(a)(8) of the Bankruptcy Code, and the Ballot Report, the Debtor has satisfied this requirement.

P.      Section 1129(a)(9) – Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code. The Plan provides for the treatment of Allowed Claims entitled to priority pursuant to section 507(a)(2)-(8) of the Bankruptcy Code in a manner consistent with section 1129(a)(9) of the Bankruptcy Code.

Q.      Section 1129(a)(10) – Acceptance by at Least One Impaired Class. As required by section 1129(a)(10) of the Bankruptcy Code, and as evidenced by the Ballot Report, at least one impaired class accepted the Plan. Accordingly, section 1129(a) (10) of the Bankruptcy Code has been satisfied.

R.      Section 1129(a)(11) – Feasibility of the Plan. As set forth in the Disclosure Statement, as well as the testimony presented at the Confirmation Hearing, the Debtors estimate that the Debtors will have sufficient available cash to ensure that the Holders of Allowed Administrative Claims and Priority Tax Claims receive the distributions required under the Plan. Additionally, the Plan provides for the liquidation of the Debtors' non-exempt assets and payments from Joseph Jemsek's future income. Accordingly, the Plan complies with section 1129(a)(11) of the Bankruptcy Code.

S.      Section 1129(a)(12) – Payment of Statutory Bankruptcy Fees. In accordance with section 1129(a)(12) of the Bankruptcy Code, Article 11 Section 11.1 of the Plan provides that all fees due and payable pursuant to section 1930 of Title 28 of the United States Code prior to the Effective Date shall be paid by the Debtors.

T.      Section 1129(a)(13) and (16) are not Applicable.

U.      Section 1129(a)(14)–Domestic Support Obligations. To the extent this section is applicable, the Plan's incorporation of a settlement of the claims of Kay Jemsek satisfy its provisions.

V.      Section 1129(a)(15)-value of property to be distributed under the plan is not less than the projected disposable income of the debtor to be received during the 5 year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.   The value of property to be distributed under the plan is approximately $1,500,000.00, including: $550,000.00 from the Debtor to Polsinelli; "new value" contribution of $10,000.00 from an exempt IRA account; payment by BCBS to Polsinelli of $350,000.00; payment of BCBS Administrative Claim from Joseph Jemsek's future income of $150,000.00; and the $150,000.00 payment to Class 7 General Unsecured Claims from Joseph Jemsek's future income. The Debtors' contend that the "projected disposable income" of Joseph Jemsek, for the five years after the Effective Date, was no more than

10

$250,000.00. This concept was supported by BCBS and Polsinelli, the largest creditors. The Debtors presented expert testimony concerning Joseph Jemsek's future projected disposable income, which was consistent with the Debtors' contention. The Court was also presented with a summary of Joseph Jemsek's monthly reports for the last five years, and a review of these reports supports the Debtors' contention. Lastly, the Court received expert testimony, as well as testimony by the Debtor, that demonstrates Joseph Jemsek's income is declining. It was for this reason that Joseph Jemsek sought to modify his domestic settlement prior to the Confirmation Hearing. First-Citizens did not present any evidence to rebut the Debtors' estimate of future projected disposable income. Because the $1,500,000.00 of property to be distributed is not less than the Debtor's projected disposable income, the Plan complies with Section 1129(a) (15).

W.      Section 1129(b) – Cram-down. Section 1129(b) cram-down is inapplicable.

X.      Section 1129(c) –The Only Plan Filed in the Chapter 11 Cases. Section 1129(c) of the Bankruptcy Code provides that, with a limited exception, a bankruptcy court may only confirm one plan. The Plan is the only plan that has been filed in this Chapter 11 Case and is the only plan that satisfies the requirements of subsections (a) and (b) of section 1129 of the Bankruptcy Code. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code are satisfied.

Y.      Section 1129(d) – Principal Purpose of Plan. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of
1933, and no governmental entity has filed any objection asserting any such avoidance.

Z.      Section 1129(e)-small business case. This provision is not applicable.

## OBJECTIONS TO PLAN

X.      Objection by Grier Furr. This objection has been resolved with the understanding that Grier Furr will voluntarily reduce their Allowed Administrative Claim to $200,000.00, and that such claim will be paid on or before the Effective Date.

Y.      Objections by First-Citizens. First-Citizens is the holder of Class 7 General Unsecured Claims. First-Citizens Objection made several arguments that the Plan was not confirmable, including:

(1)      **"The Plan does not state the terms of payment to the general unsecured class. If there is a default, there is no way to enforce the obligation."** The Court originally agreed with this Objection, and the Debtors in response proposed the modification to Section 3.7.2 of the Plan (treatment of Class 7 General Unsecured Claims Exceeding $5,000.00) as set forth above. The modification provides for a specific payment to the holders of Allowed Class 7 Claims, it provides for the issuance of Notes to such holders, and it provides that such Notes will be secured by the Real Property by the filing of this Confirmation Order. Thus, if the Notes are not paid, the Note holders may take action against the Real Property. Therefore, this objection is overruled.

11

(2)   **"Substantive consolidation is not appropriate because it would prejudice the general unsecured creditor class."** Attached to the Disclosure Statement as Exhibit M is an analysis of claims which are common to the two Debtors' cases. It appears that Claims filed in the Jemsek Clinic case total $35,079,787.76. Claims totaling $269,787.03 are "unique" to the Jemsek Clinic case. Otherwise, all of the claims filed in the Jemsek Clinic case were also filed in the Joseph Jemsek individual case. Of the unique claims, the Debtors believe with some certainty that claims totaling $123,412.67 (those filed by Bank of America and the Charlotte Mecklenburg Tax Collector were paid post-petition. The Debtors further demonstrated that the maximum amount of "unique pre-petition claims" in the Jemsek Clinic case total $146,374.36, or 0.417% of total claims, and that therefore the Jemsek Clinic and Joseph Jemsek cases have 99.58% of pre-petition claims in common. When the estimated post-petition administrative expense claims of Polsinelli ($6,000,000.00) and Grier Furr ($250,000.00) are taken into account, the Jemsek Clinic and Joseph Jemsek cases have 99.64% of total claims in common. In addition, there is a significant benefit in consolidating the two cases because it will facilitate the resolution of the BCBS claims against both Debtors, and as such consolidation of the cases is the foundation of the Debtors' settlement with BCBS. Class 7 voted for the Plan. There was no contrary evidence presented by First-Citizens. This objection is overruled.

(3)   **"The Plan 'creates' unsecured claims for BCBS and Polsinelli for the sole purpose of diluting First-Citizen's voting leverage and power which is not allowed. It gerrymanders the class of Unsecured creditors for its benefit."** With respect to the Polsinelli Unsecured Claim, the Court agrees, as such claim would otherwise be nonvoting Administrative Claim. For this reason, the Court will disallow the Polsinelli Class 7 ballot. This disallowance of Polsinelli's unsecured vote ballot shall not affect in any way the Allowed Polsinelli Administrative Claim, the Allowed Polsinelli Secured Claim, or the Allowed Polsinelli Unsecured Claim or their treatment in the Plan, or any other votes cast by Polsinelli. This disallowance of the ballot of Polsinelli is not the result of any improper or inappropriate actions by Polsinelli and is only procedural in nature. However, even without counting the Polsinelli ballot, the Plan is still accepted by Class 7 under the voting standards set forth in Section 1126(c). The Court does not agree with the objection as it related to the BCBS claim. BCBS has filed general unsecured claims of approximately $17,000,000.00 in each case. The claims have been litigated for years, and there are issues that remain pending including, whether or not such claims are dischargeable. The Plan represents the Debtors' settlements with BCBS, Polsinelli and Kay Jemsek. The allowance of an $8,000,000.00 general unsecured Class 7 claim to BCBS, even if for voting purposes only, is part of a settlement and is not improper gerrymandering.

For numerous reasons, the settlements between the Debtors, BCBS and Polsinelli should be approved. As the Supreme Court has stated, "[(c)ompromises are 'a normal part of the process of reorganization.'" *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (*quoting Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 130 (1939)). This makes sense because, as the Supreme Court noted in *TMT Trailer*, when "administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts." *Id*. And, as the Sixth Circuit has noted, "[t]he very purpose of ... a

12

compromise agreement 'is to allow the trustee [or, as in this case, the debtor in possession] and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Hindelang v. Mid-State Aftermarket Body Parts Inc. (In re MQVP, Inc.)*, 477 F. App'x 310, 312 (6th Cir. 2012) *(quoting Bard v. Sicherman (In re Bard)*, 49 F. App'x 528,530 (6th Cir. 2002)). Outside of bankruptcy, parties generally are free to settle on terms of their own choosing. But "[t]he fact that courts do not ordinarily scrutinize the merits of compromises involved in suits between individual litigants cannot affect the duty of a bankruptcy court to determine that a proposed compromise forming part of a reorganization plan is fair and equitable." *TMT Trailer*, 390 U.S. at 424. Rather, the Court must exercise its "informed, independent judgment" to determine that the settlement is "fair and equitable." *TMT Trailer*, 390 U.S. at 424. Under this standard, courts consider four factors: (1) the probability of success in litigation; (2) the difficulties, if any, to be encountered in collecting from the defendant; (3) the complexity, expense and delay the debtor would face in the litigation and (4) the paramount interest of the creditors, giving proper deference to their reasonable views. *See MQVP, Inc.*, 477 F. App'x at 313 (*quoting Fishell v. Soltow (In re Fishell*), 1995 WL 66622, at 3 (6th Cir. Feb. 16, 1995)). When considering these factors, "[a] bankruptcy judge need not hold a mini-trial or write an extensive opinion ...." *Id*. After considering the four factors, the Court finds that the terms of the proposed settlements are fair and equitable and that the compromises should be approved. Both of the Debtors' cases are administratively insolvent. First-Citizens would get no distributions in a Chapter 7. The settlements set forth in the Plan avoids the chaos that would ensue if these cases are dismissed or converted to Chapter 7. Therefore, this objection should be overruled with respect to the BCBS claim and ballot.

(4)     **"Polsinelli is a non-statutory insider of the debtor by virtue of its position and, therefore, should not be able to vote on the Plan. 1129(a)(10)".** Having already determined that the Polsinelli should not be counted in the Class 7 voting, the Court does not need to consider whether or not Polsinelli is an insider and as such the issue is moot.

(5)     **"It is unclear if the debtors are really committing their full projected disposable income to the Plan", and "lack of information makes it impossible to determine whether the proposed plan satisfies the requirements of 1129(a)(15)".** For the reasons set forth above with respect to Section 1129(a) (15), this objection is overruled.

(6)     **"Jemsek must contribute more exempt assets in order to comply with the Absolute Priority Rule".** The Absolute Priority Rule, contained in Section 1129(b)(2), is not applicable as Class 7 General Unsecured Claims voted in favor of the Plan.

(7)     **"The Plan is not fair and equitable to First-Citizens."** The "fair and equitable" standard, set forth in Section 1129(b)(1), applies to the treatment of the class, when such class has not voted for the plan. This standard is not applicable because Class 7 General Unsecured Claims voted in favor of the Plan. The objection is overruled.

(8)     **"The Plan awards Kay an unfair proportion of estate assets and future income."** The approval of the settlement with Kay Jemsek presents the most legally complex issues. The Bankruptcy Code goes to great lengths to protect holders of domestic support

obligation ("DSO") claims, including provisions for a Section 507 priority claim, requirements that DSO payments must be maintained during a Chapter 11, and dismissal of a proceeding if such claims are not paid. This Court will typically defer to the state courts in determining what DSO claims are. The Debtor presented expert testimony that the settlement between Joseph Jemsek and Kay Jemsek likely requires Joseph Jemsek to pay Kay Jemsek less than a judge would in a state court proceeding. The testimony was also that litigating the issues would cost each of the parties $100,000.00, which is an expense that would be detrimental to the parties as well as the creditors. The assets being distributed to Kay Jemsek are exempt, assets which would not be available to First-Citizens if the cases were converted to Chapter 7. In light of the forgoing settlement standards enunciated by the Supreme Court, this Court finds that the settlement is appropriate and should be approved as part of the Plan.   The objection is overruled.

(9)   **"The Plan has not been proposed in Good Faith".** For the reasons set forth above with respect to Section 1129(a)(3), the Court finds that the Plan was proposed in good faith. The objection is overruled.

Having found that the Plan meets all of the provisions necessary for confirmation, and having considered the objections made to the Plan

### IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.   Confirmation of the Plan. The Plan, a copy of which is annexed hereto as Exhibit "A", as modified pursuant to this Order, is approved and confirmed under section 1129 of the Bankruptcy Code. The terms of each of the documents in the Plan (subject to any further alterations or amendments by the Debtor in accordance with the Plan or as otherwise approved by this Court) are approved and constitute an integral part of the Plan.

2.   Objections Withdrawn or Overruled. The Objection filed by Grier Furr has been fully resolved. The Objections filed by First-Citizens have either been resolved by the modifications to the Plan that are set forth in this Order, or they have been overruled.

3.   Plan Classification Controlling. The classification of Claims for purposes of distributions under the Plan shall be governed solely by the terms of the Plan, and the classification of Claims therein.

4.   Bar Date for Administrative Claims. All requests for payment of Administrative Claims shall be filed and served as provided for in the Plan. Polsinelli and BCBS shall have Allowed Administrative Claims as stated in the Plan without the need for further application to or approval of or notice to the Court.

5.   No Post-petition Interest on Claims. Unless otherwise specifically provided for in the Plan, this Confirmation Order or other Final Order of the Bankruptcy Court, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

14

6.      Disputed Claims. After the Effective Date, the Debtors shall have the exclusive authority to object to any Proof of Claim filed in the Chapter 11 Cases.

7.      Binding Effect of Plan. The provisions of the Plan, and any contract, instrument, release, or other agreement or document created or entered into in connection therewith, and this Confirmation Order shall be binding upon the Debtors and any and all Persons or Entities which have held, hold, or may hold Claims, whether or not the Claims of such Persons or Entities are Impaired under the Plan and whether or not such Persons or Entities have accepted the Plan, and their respective successors and assigns.

8.      Injunction. EXCEPT AS OTHERWISE EXPRESSLY PROVIDED HEREIN AND EXCEPT IN CONNECTION WITH THE ENFORCEMENT OF THE TERMS OF THIS PLAN OR ANY DOCUMENTS PROVIDED FOR UNDER THIS PLAN, THE ASSETS OF THE DEBTORS AND THE ESTATE SHALL BE USED ONLY FOR THE PURPOSES AND IN THE MANNER SPECIFIED IN THE PLAN, AND ALL ENTITIES THAT HAVE, HOLD, OR MAY HOLD CLAIMS AGAINST THE DEBTOR OR THE ESTATE ARE PERMANENTLY ENJOINED FROM TAKING ANY ACTION THAT WOULD DIVERT SUCH ASSETS TO ANY OTHER PURPOSES OR THAT WOULD INTERFERE WITH THE APPLICATION OF SUCH ASSETS IN THE MANNER SPECIFIED IN THE PLAN AND THIS CONFIRMATION ORDER.

9.      Preservation of All Rights of Action Not Expressly Settled or Waived and Released. Unless a right of action is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order, all such rights of action are expressly preserved, including but not limited to the breach of duty claims, (including any counterclaims) for later adjudication by the Debtors. Therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such rights of action (including counterclaims) on or after the Confirmation of this Plan.

10.     Retention of Jurisdiction. Following the Effective Date, the Court shall retain jurisdiction over the Chapter 11 Case to the full extent legally permissible, including, without limitation, such jurisdiction as is necessary to ensure that the purposes and intent of the Plan are carried out. Without in any way limiting the scope of the Court's retention of jurisdiction over the Chapter 11 Case as otherwise provided for in the Plan, the Court shall retain jurisdiction for the specific purposes provided for in the Plan.

11.     Defects, Omissions and Amendments. The Debtors may insofar as it does not materially and adversely affect Holders of Claims, correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to implement the Plan. The Plan may be altered or amended (i) with respect to non-material alterations or amendments, upon notice to the U.S. Bankruptcy Administrator and the filing thereof on the docket, and (ii) with respect to non-material alterations or amendments, before or after Confirmation as provided in section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of

15

Holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Debtor has complied with section 1125 of the Bankruptcy Code.

12.     Further Actions; Implementation. The Debtors shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and take such other or further actions as may be necessary to effectuate or further evidence the terms and conditions of the Plan. Upon Confirmation, the Debtors shall be authorized to take any and all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

13.     Automatic Stay. The automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect until the Effective Date.

14.     Dissolution of Debtor Jemsek Clinic, P.A. On the Effective Date and without the need for further action on the part of the Debtor Jemsek Clinic, P.A. or the board of the Debtor or the approval of the Court, the Debtor Jemsek Clinic, P.A. may be dissolved pursuant to applicable state law.

15.     Payment of Quarterly Fees. Pre-confirmation quarterly fees owed will be paid as soon as practicable after the Effective Date of this Plan or such other date as agreed upon by the Debtors and the U.S. Bankruptcy Administrator. After confirmation, the Debtors will file with the Bankruptcy Court and serve on the U.S. Bankruptcy Administrator quarterly financial reports in a format prescribed by the U.S. Bankruptcy Administrator, and the Debtors will pay post-confirmation quarterly fees to the U.S. Bankruptcy Administrator until a Final Decree is entered or the case is converted or dismissed as provided in 28 U.S.C. § 1930(a)(6).

16.     Rules Governing Conflicts Between Documents. In the event of a conflict between the terms of the Plan and any contract, instrument, release, or other agreement or document created
or entered into in connection with the Plan, the terms of the Plan shall control over any such documents. In the event of a conflict between the terms of the Plan or any contract, instrument, release, or other agreement or document entered into in connection with the Plan, on the one hand,
and the terms of this Confirmation Order, on the other hand, the terms of this Confirmation Order shall control.

17.     Substantive consolidation of cases. As provided in Article 13 of the Plan, the Debtors cases will be substantively consolidated upon entry of this Order.

18.     The settlements between the Debtors, BCBS, Polsinelli and Mullen Holland Cooper, PA, as set forth in Article 14, are approved.

19.     The settlement between the Debtor and Kay Jemsek, as set forth in the Original Agreement as modified herein, and as will be set forth in a revised Separation, Property Settlement, Alimony and Child Custody & Support Agreement (to be filed in the Bankruptcy

Court's docket on or before the Effective Date of the Plan) is approved.

20     Notice of Effective Date and Other Matters. Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), the Debtors shall file and serve notice of entry of this Confirmation Order, the occurrence of the Effective Date, and notice of the Administrative Claims Bar Date (the "Notice of Confirmation") on all holders of Claims against the Debtors, the United States Bankruptcy Administrator and other parties in interest by causing the Notice of Confirmation to be delivered to such parties by first-class mail, postage prepaid, within ten business days after the Effective Date. Such notice is adequate under the particular circumstances and no other or further notice is necessary.

21.     Substantial Consummation. On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

22.     Waiver of Fourteen (14) Day Stay. Pursuant to Bankruptcy Rule 3020(e) and, to extent applicable, Bankruptcy Rule 6004(h), the fourteen-day stay of this Confirmation Order imposed thereby is waived and this Confirmation Order shall be effective and enforceable immediately upon its entry.

23.     Reference to and Validity and Enforceability of Plan Provisions. The failure to reference any particular provision of the Plan in this Confirmation Order shall not impair, prejudice, waive or otherwise affect the binding effect, enforceability or legality of such provisions, and such provisions shall have the same binding effect, enforceability or legality as every other provision of the Plan and this Confirmation Order.

24.     The Disclosure Statement contains adequate information and as such the same is finally approved.

25.     The Motion for Relief from Stay by CNB [Doc. 900] is moot by virtue of a settlement reached with the Debtors. The Motion of CNB Under Section 506(b) for Approval of Fees and Expenses [Doc. 1059], and the Motion to Approve Consent Order Resolving Motion for Relief of CNB [Doc. 1060] will be addressed in a separate Order.

26.     The Motion to Approve Settlement with Kay T. Jemsek (the "Domestic Settlement Motion") [Doc. 955], Objection to Domestic Settlement Motion by First-Citizens [Doc. 1018], Objection to Domestic Settlement Motion by BCBS [Doc. 1019], Objection to Domestic Settlement Motion by Polsinelli [Doc. 1020], Amended Objection to Domestic Settlement Motion by BCBS [Doc. 1023], Motion for Relief from Stay to Prosecute Domestic Claims by Kay T. Jemsek [Doc. 1026], Motion to Dismiss Bankruptcy Case by Kay T. Jemsek [Doc. 1027], Joinder in Motion to Dismiss by BCBS [Doc. 1040], Debtors' Objections to Motion for Relief and Motion to Dismiss by Kay  Jemsek [Doc. 1042],  Response of Grier Furr to Second Amended Plan [Doc. 1062], and Objection of Kay Jemsek to Second Amended Plan and Second Amended Disclosure Statement [Doc. 1066] are moot by virtue of the entry of this Order of Confirmation.

27.    The Objection to Confirmation of Second Amended Plan by First-Citizens [Doc. 1065] is overruled, for the reasons set forth herein.

**CONSENT**:

/s/ Richard S. Wright
Richard S. Wright (Bar No. 24622)
Moon, Wright and Houston PLLC
121 West Trade Street, Suite 1950
Charlotte, N.C. 28202
(704) 944-6560
*Counsel for Kay Jemsek*

/s/ Chad D. Hansen
Kilpatrick Townsend & Stockton LLP
1001 West Fourth Street
Winston-Salem, NC   27101-2400
(336) 607-7308
chadhansen@kilpatricktownsend.com
Counsel for Blue Cross Blue Shield of
North Carolina

/s/ Andrew J. Nazar
Polsinelli PC
900 West 48th Place, Suite 900
Kansas City, Missouri 64112
(816) 753-1000
anazar@polsinelli.com

/s/ James H. Henderson
The Henderson Law Firm PLLC
1201 Harding Place
Charlotte, N.C. 28204
(704) 333-3444
henderson@title11.com
Counsel for Debtors

/s/ Paul A. Fanning
Ward and Smith, P.A.
Post Office Box 8088
Greenville, NC 27835-8088
(252) 215.4027
PAF@wardandsmith.com
*Counsel for First-Citizens Bank & Trust*

This Order has been signed
electronically.   The judge's
signature and court's seal
appear at the top of the Order.

United States Bankruptcy Court

18

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Bankruptcy Case No. 06-31986 (JCW) |
| JOSEPH GREGORY JEMSEK | ) | |
| | ) | Bankruptcy Case No. 06-31766 |
| JEMSEK CLINIC, P. A. | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**SECOND  AMENDED JOINT PLAN OF REORGANIZATION**

Joseph Gregory Jemsek ("Jemsek") and the Jemsek Clinic, P.A. ("Jemsek Clinic"), debtors and debtors-in-possession in the above captioned cases (also called the "Debtors"), submit this Second Amended Joint Plan of Reorganization pursuant to section 1121(a) under Title 11 of the United States Code, 11 U.S.C. § 101 et seq.

**ARTICLE I**
**DEFINITIONS**

As used in this chapter 11 plan, the following terms shall have the respective meanings specified below:

**Administrative Claim**.  Any cost or expense of administration of the Chapter 11 Case (a) required to be asserted by filing an application with the Bankruptcy Court on or before the Administrative Bar Date, or (b) Allowed under section 503(b) of the Bankruptcy Code, except to the extent the holder of such Claim agrees to be treated differently. Administrative Claims include, but are not limited to, (i) any actual and necessary expenses of preserving either Estate incurred during the Chapter 11 Case, (ii) any actual and necessary expenses of operating the Debtors' business incurred during the Chapter 11 Case, (iii) any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their business as debtors in possession, or for the acquisition or lease of property by, or for the rendition of services to, the Debtors as debtors in possession, (iv) obligations pursuant to executory contracts assumed by the Debtors pursuant to an order of the Bankruptcy Court, (v) all Claims as provided by § 507(b) of the Bankruptcy Code, (vi) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court, (vii) any Allowed Contingent Claims which are granted administrative priority status by Final Order of the Bankruptcy Court, (viii) all fees payable and unpaid under section 1930 of Title 28, United States Code, (ix) any fees or charges assessed against the Estate under chapter 123 of Title 28, United States Code, (x) the BCBS Administrative Claim; and (xi) the Polsinelli Allowed Administrative Claim.

61189538.9
61434885.2

**Administrative Claims Bar Date**.  The date thirty (30) days after the Effective Date or such other date(s), if any, as determined by order of the Bankruptcy Court, by which all requests for allowance of Administrative Claims must be filed with the Bankruptcy Court. The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals incurred after the Confirmation Date or to the BCBS Administrative Claim or the Allowed Polsinelli Administrative Claim.

**Allowed Administrative Claim**.  All or that portion of any Administrative Claim that is or has become an Allowed Claim.

**Allowed BCBS Claim**.  Shall mean an Allowed General Unsecured Claim in favor of BCBS in the amount of $8 million which will be treated as a Class 7 Claim solely for purposes of voting on and confirmation of the Plan (and for no other purposes) and which shall not be subject to any Debtors' or any party in interests claim, dispute, offset, setoff, recoupment or reconsideration, with all Debtors and any party in interest's rights under 11 USC § 502(j) waived as of the Effective Date. The Allowed BCBS Claim is a subset of the BCBS Claims.

**Allowed Claim**.  Any Claim against the Debtors (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claims against the Debtors or, if no proof of claim is filed, which has been or hereafter is listed by the Debtors in their Schedules, as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim). A Disputed Claim shall be an Allowed Claim if, and only to the extent that, a Final Order has been entered allowing such Disputed Claim. The term "Allowed," when used to modify a reference in this Plan to any Claim or class of Claims, shall mean a Claim (or any Claim in any such class) that is allowed (e.g., an Allowed Secured Claim is a Claim that has been Allowed to the extent of the value of any interest in property of the Estate securing such Claim), as determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code. Unless otherwise specified in this Plan or in the Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

**Allowed Polsinelli Administrative Claim**. Shall mean the Allowed Administrative Claim of Polsinelli in the amount of $900,000.00, which shall not be subject to any Debtors' or any party in interests, claim, dispute, offset, setoff, recoupment or reconsideration, with all Debtors and any party in interest's rights under 11 USC § 502(j) waived as of the Effective Date.

**Allowed Polsinelli Secured Claim.** Shall mean the Allowed Secured Claim of Polsinelli secured by a lien on the Greenbrier Property in the total amount of 50% of the net sale proceeds of the Greenbrier Property which shall not subject to any Debtors' or any party in interests, claim, dispute, offset, setoff, recoupment or reconsideration, with all Debtors and any party in interest's

2

rights under 11 USC § 502(j) waived as of the Effective Date.

**Allowed Polsinelli Unsecured Claim**.  Shall mean the Allowed General Unsecured Claim of Polsinelli in the amount of $2,250,000.00 which will be treated as a Class 7 Claim solely for purposes of voting on and confirmation of the Plan (and for no other purposes), and which shall not be subject to any Debtors' or any party in interests, claim, dispute, offset, setoff, recoupment or reconsideration, with all Debtors and any party in interest's rights under 11 USC § 502(j) waived as of the Effective Date.

**Allowed Super-Priority Administrative Claim**. Any claim having been allowed by the Bankruptcy Court as an Allowed Super-Priority Administrative Claim.

**Assumed Agreement**. Unexpired leases and other executory contracts of the Debtors that are being assumed pursuant to the Plan, if any.

**Avoidance Action**. Any and all actions which a trustee, debtor in possession, or other appropriate party in interest may assert on behalf of the Estate under the Bankruptcy Code, including actions pursuant to sections 542, 543, 544, 545, 546, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code.

**Avoidance Action Claims**. Claims asserted by parties pursuant to sections 502(d) and/or 502(h) of the Bankruptcy Code in connection with any Avoidance Action(s) brought by the Debtors against such parties.

**Ballot**. The document used in voting on the Plan that must be executed and delivered by holders of Claims entitled to vote on the Plan.

**Bankruptcy Administrator**.  The United States Bankruptcy Administrator for the Western District of North Carolina.

**Bankruptcy Code**.  The United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

**Bankruptcy Court**. The United States Bankruptcy Court for the Western District of North Carolina, having jurisdiction over the Chapter 11 Case.

**Bankruptcy Rules**.  The Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

**BCBS**.  Blue Cross Blue Shield of North Carolina.

**BCBS Administrative Claim**.  An allowed Administrative Expense Claim in favor of BCBS in the amount of $150,000, which shall not be subject to any Debtors' or any party in interest's, claim,

3

61189538.9
61434885.2

dispute, offset, setoff, recoupment or reconsideration, with all Debtors' and any party in interest's rights under 11 USC § 502(j) waived as of the Effective Date.

**BCBS Claims**.  The Claims of BCBS against the Debtors, including but not limited to the claims asserted by BCBS against the Debtors in the adversary proceedings, but not the BCBS Administrative Claim.

**BCBS Plan Funding**.  A payment by BCBS to Polsinelli's Trust Account in the amount of $350,000 to resolve the underlying adversary proceedings and litigation between BCBS and the Debtors.

**CNB**.  City National Bank of West Virginia.

**Business Day**.  Any day other than a Saturday, Sunday, or other day on which commercial banks in the State of North Carolina are authorized or required by law to close.

**Cash**.  Cash and readily marketable securities or instruments including, without limitation, readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank, and commercial paper.

**Certified Funds.**  Certified Funds shall mean a wire transfer that has finally cleared such account, such that it cannot be recalled, or a cashier's check drawn on a federally insured financial institution.

**Chapter 11 Case**.  The Debtors' bankruptcy cases under Chapter 11 of the Bankruptcy Code, which are pending before the Bankruptcy Court.

**Claim**.  Any right to payment from the Estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date.

**Class**.  Means a classification of Allowed Claims for the purposes of treatment and distributions under this Plan.

**Confirmation Date**.  The date upon which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

4

61189538.9
61434885.2

**Confirmation Hearing**. The hearing before the Bankruptcy Court to consider confirmation of this Plan.

**Confirmation Order**. An order of the Bankruptcy Court, in form and substance satisfactory to the Debtor, confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**Contingent Claim**. A Claim that is either contingent or unliquidated on or immediately before the Confirmation Date.

**Creditor**. Any Person that holds a Claim against the Estates.

**Debtors**. Joseph Gregory Jemsek and Jemsek Clinic, P. A.

**Disclosure Statement**. The disclosure statement filed with the Bankruptcy Court with respect to this Plan, pursuant to section 1125 of the Bankruptcy Code, either in its present form or as it may be altered, amended, or modified from time to time.

**Disputed Claim**. A Claim which is the subject of a timely objection interposed by the Debtors, if at that time such objection remains unresolved; provided, however, that the Bankruptcy Court may determine the amount of a Disputed Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code; provided, further, that the Debtors, in their sole discretion, may elect to treat the portion of a Disputed Claim, if any, that is not in dispute as an Allowed Claim, with the disputed portion remaining a Disputed Claim.

**Distribution Account**. The account established by the Reorganized Debtors pursuant to Article 6 of this Plan from which all cash distribution under the Plan shall be made with respect to all Allowed Claims.

**Effective Date**. The Business Day on which all of the conditions set forth in Article 10 of this Plan shall have been satisfied or waived.

**Estate**. The bankruptcy estate of the Debtors. All property of the Estate shall be vested in the Reorganized Debtors upon the occurrence of the Effective Date of the Plan.

**Final Order**. An order that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

**General Unsecured Claim**. Any Unsecured Claim, other than an Administrative Claim, an Other Priority Claim, or a Priority Tax Claim. Allowed General Unsecured Claims include, without limitation, Allowed Unsecured Deficiency Claims, and any Claim in favor of any Person arising from

5

a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim).

**Greenbrier Property**.  Shall mean that certain real property located in Greenbrier, West Virginia and identified as The Ridges at Greenbrier Mountain, Phase I, Lot 25 and commonly known as 565 Greenbrier Mountain Trail, White Sulpher Springs, West Virginia 24986 as further identified in Docket 291.

**Non-Exempt Assets** means those assets designated as not exempt on the liquidation analysis, attached to the Disclosure Statement as Exhibit L, together with any other or further assets of the Debtors that are determined by the Bankruptcy Court to be property of the Debtor's estate prior to the Effective Date.

**Non-Liquid Non-Exempt Assets**. The assets owned by the Debtor Joseph Jemsek (or non-exempt interests in such assets as is shown on in the liquidation analysis contained in the Amended Disclosure Statement) as of the date of the Plan, which consist of: a) Lot 6 Walkingstick Falls Road, Highland NC; b) Household goods (½ interest); c) crystal, collections, art d) cameras; and e) Permanent Seat Licenses, Carolinas Stadium Corporation.

**Non-Exempt Asset Contribution Deadline** means 180 days after the Effective Date.

**Other Priority Claims**. Any Claim to the extent entitled to priority in payment under sections 507(a)(2) through 507(a)(7) of the Bankruptcy Code.

**Person**.  An individual, a corporation, a company, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government, governmental unit or any subdivision thereof or any other entity.

**Petition Date**.  October 25, 2006 and November 20, 2006 for the Jemsek Clinic and Jemsek, respectively.

**Plan**. This Second Amended Chapter 11 Plan or, as it may be from time to time modified, amended or supplemented, together with any exhibits thereto.

**Polsinelli** shall mean Polsinelli, P.C. as successor in interest to Polsinelli Shughart, P.C. as successor by merger to Polsinelli Shalton Flanigan Suelthaus PC.

**Polsinelli Claims**.  Shall mean collectively the Allowed Polsinelli Administrative Claim, the Allowed Polsinelli Secured Claim, the Allowed Polsinelli Unsecured Claim and any claims of Michael Ruggio.

**Priority Non-Tax Claim**. Any Claim arising prior to the Petition Date entitled to priority in

6

61189538.9
61434885.2

payment under Sections 507(a)(1)(a)(7) of the Bankruptcy Code.

**Priority Tax Claim**. Any Claim arising prior to the Petition Date entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

**Pro Rata Share**. As of any certain date, with respect to any Allowed Claim in any Class, the proportionate share that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

**Professional**. Any attorney, accountant, appraiser, auctioneer, or other professional person retained and employed by the Estate in the Chapter 11 Case in accordance with sections 327 and/or 328 of the Bankruptcy Code.

**Projected Disposable Income**. For purposes of 11 USC § 1129(a)(15), it is presumed that the disposable income to be received by the Debtors during the 5-year period beginning on the date that the first payment is due under the Plan, or during the period for which the Plan provides payments, whichever is longer, is $250,000.00.

**Rejected Agreement**. Each unexpired lease or other executory contract of the Debtors, which (i) is not an Assumed Agreement, (ii) has not been expressly assumed or rejected by order of the Bankruptcy Court prior to the Confirmation Date, or (iii) is not the subject of a pending motion to assume on the Effective Date.

**Reorganized Debtors**. The Debtors, as reorganized and re-vested with all of the assets of the Estate pursuant to this Plan.

**Schedules**. The Schedules of Assets and Liabilities, and any amendments thereto, filed by the Debtors with the Bankruptcy Court in accordance with section 521(l) of the Bankruptcy Code.

**Secured Claim**. A Claim to the extent of the value, of any interest in property of the Estate securing such Claim, as determined pursuant to section 506(a) or 1111(b) of the Bankruptcy Code. To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an Unsecured Deficiency Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

**Taxes**. All income, franchise, excise, sales, use, employment, withholding, property, payroll, and other taxes, assessments, and governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local, or foreign governmental authority.

**Unsecured Claim**. A Claim not secured by a charge against or interest in property in which

7

61189538.9
61434885.2

the Estate has an interest, including any Unsecured Deficiency Claim, and any Claim arising at any time under Bankruptcy Rule 3002(c)(3).

**Unsecured Deficiency Claim**.  A Claim by a Creditor arising out of the same transaction as a Secured Claim to the extent that the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or by stipulation, of such Creditor's interest in property of the Estate securing such Claim is less than the amount of the Claim which has the benefit of such security as provided by section 506(a) of the Bankruptcy Code.

**Value of property to be distributed under the Plan.** As that phrase is used in 11 USC § 1129(a)(15)(B), no less than $1,531,000.00, including i) approximately $844,000.00 in liquid assets; ii) $77,000.00 in non-liquid assets; iii) Projected Disposable Income of $250,000.00; iv) the BCBS Plan Funding of $350,000.00; and v) $10,000.00 in new value from an exempt Individual Retirement Account.

**Voting Deadline**.  The date set in an order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting the Plan.

**Other Definitions**.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning set forth therein. Wherever from the context it appears appropriate, each term stated in either of the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. The words "herein," "hereof," "hereto," "hereunder," and others of similar inference refer to this Plan as a whole and not to any particular article, section, subsection, or clause contained in this Plan. The word "including" shall mean "including without limitation."

## ARTICLE 2

### PROVISIONS FOR PAYMENT OF ALLOWED ADMINISTRATIVE CLAIMS; ADMINISTRATIVE CLAIMS BAR DATE; PROVISIONS FOR PAYMENT OF ALLOWED PRIORITY TAX CLAIMS

**2.1 Super-Priority Administrative Claims, Administrative Claims and Priority Tax Claims are Not Classified in this Plan**.  Super-Priority Administrative Claims, Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote to accept or reject the Plan. The treatment of and consideration to be received by holders of Allowed Super-Priority Administrative and Administrative Claims and Allowed Priority Tax Claims pursuant to this Article 2 of the Plan shall be in full and complete satisfaction, settlement, release, and discharge of such Claims. The Debtors' obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

8

61189538.9
61434885.2

**2.2 Administrative Claims Bar Date**.  Except for the Allowed Polsinelli Administrative Claim and the BCBS Administrative Claim and unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, including applications for final allowance of compensation and reimbursement of expenses of Professionals incurred before the Confirmation Date, must be filed and served on the Debtors and the Bankruptcy Administrator no later than 30 days after the Effective Date. Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. However, the Administrative Claims Bar Date shall not apply to fees and expenses of Professionals incurred after the Effective Date, to the BCBS Administrative Claim, to the Allowed Polsinelli Administrative Claim, or to the funds already paid to Polsinelli.

**2.3 Final Status of Polsinelli Fee Applications.**  All of Polsinelli's interim fee applications are finally and fully approved by the Court as reasonable and necessary, without the need for further application, disclosure, notice or order, but payment is limited as provided in this Plan.  Any interim fee orders are deemed final approvals as of the Effective Date.  Polsinelli needs to make no further application or seek approval of any of its previous fee applications, and any dispute, claim, issue or otherwise as to the fee applications is irrevocably waived.  All of the interim approvals of Polsinelli are deemed final as of the Effective Date and fully approved under the Bankruptcy Code, Bankruptcy Rules of Federal Procedure and Local Rules, provided payment is limited as provided as stated in this Plan.  All amounts previously paid to Polsinelli are hereby finally approved as reasonable and necessary and no further application, approval or disclosure is necessary.

**2.4 Treatment of Allowed Super-Priority Administrative and Administrative Claims**. Except to the extent the holder of an Allowed Super-Priority Administrative or Administrative Claim agrees otherwise, each holder of an Allowed Super-Priority Administrative or Administrative Claim, except the BCBS Administrative Claim and the Allowed Polsinelli Administrative Claim, shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) as soon as practicable after the later of (a) the Effective Date and (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due. Furthermore, all fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid pursuant to Section 11.1 of this Plan.

The BCBS Administrative Claim shall be paid by Joseph Gregory Jemsek to BCBS, by any means necessary, including but not limited to the Debtor's Liquid Non-Exempt Assets, the proceeds from the sale of Non-Liquid Non-Exempt Assets, and the Projected Disposable Income as follows: $12,500 per calendar quarter in cash to be paid beginning the first day of the first calendar quarter that begins at least three months after the Effective Date and for 11 consecutive calendar quarters thereafter (to be paid no later than the first day of each such calendar quarter). The BCBS Administrative Claim shall be paid in full before any distributions of the Projected Disposable Income are made to holders of Allowed Class 7 General Unsecured Claims.

9

61189538.9
61434885.2

The holders of the BCBS Administrative Claim and Allowed Super-Priority Administrative and Administrative Claims are granted liens on the Non-Liquid Non-Exempt Assets shown on Exhibit L to the Disclosure Statement, until such claims are paid in full.

The Allowed Polsinelli Administrative Claim shall be paid by the Debtors and BCBS as follows: (i) BCBS shall pay to Polsinelli's Trust Account $350,000.00 in Certified Funds on the Effective Date in satisfaction of the BCBS Plan Funding Requirement; and (ii) Debtors shall pay Polsinelli $550,000.00 in Certified Funds on the Effective Date.  On the Effective Date, without further order of the Court, approval of the Debtors or notice, Polsinelli may apply the all amounts received from BCBS to the Allowed Polsinelli Administrative Claim and it shall be Polsinelli's sole property once received.

**2.5 Treatment of Priority Tax Claims**.  Each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtors; or (c) in four Cash payments commencing on or before June 30, 2018 and continuing in three additional, annual installments thereafter on or before June 30th of years 2019-2021, respectively, in an aggregate amount equal to such Allowed Priority Tax Claim (less any payments made by the Debtors with respect thereto during the Chapter 11 Case) together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section l129(a)(9)(C) or (D) of the Bankruptcy Code.

## ARTICLE 3
## CLASSIFICATION AND TREATMENT
## OF CLAIMS AND INTERESTS

**3.1 Class 1:     Allowed Secured Claim of Polsinelli**

3.1.1     Classification

Class 1 consists of the Allowed Secured Claim of Polsinelli.

3.1.2 Treatment

Polsinelli has and shall retain its liens in the Greenbrier Property on and after the Effective Date of the Plan, which is deemed duly perfected.  Polsinelli shall retain its existing liens, and shall retain the same validity, priority and extent that existed on the date approved by the Bankruptcy Court. Polsinelli is granted relief from the stay to record any necessary lien documents and the Debtors are authorized and directed to sign any necessary lien documents preserving Polsinelli's lien under applicable law, with such documents to be prepared by Polsinelli, which shall secure all amounts due Polsinelli, provided

10

that Polsinelli receives only 50% of the net sale proceeds after payment of any prior existing liens, taxes and other customary closing costs and commissions.  Polsinelli will have a right to approve or disapprove of the sale and in furtherance thereof Polsinelli will be provided with any sale documents and closing statement and identity of the purchaser (including if it is related to any party in this case).  Any money payable to Polsinelli thereunder shall be paid directly at closing of the Greenbrier Property without further Court approval, to the extent there is a dispute regarding the sale proceeds, procedure or costs, the Court will reserve jurisdiction to hear such dispute, and Jemsek agrees to continue to pay any debt service, taxes, and other expenses for the Property until and through sale.  Any prior existing lienholders on the Greenbrier Property must notify Polsinelli of any foreclosure sale or event of default after the Effective Date.  Polsinelli shall have no duty to pay any taxes, prior liens, costs or expenses on the Greenbrier Property.  Polsinelli shall release its liens on the Greenbrier Property upon payment of Certified Funds from the approved sale of the Greenbrier Property.  Polsinelli's lien on the Greenbrier Property shall not be subject to Section 552 of the Bankruptcy Code and Plan, and Polsinelli shall be provided quarterly information on the Greenbrier property relating to payment of taxes, loans, liens, or any legal actions concerning the Greenbrier Property, Debtors agree not to further encumber the Greenbrier Property without Polsinelli's written consent.  If the Greenbrier Property has not sold by August 2019, it will be offered for auction with a reserve mutually acceptable to Jemsek, Kay Jemsek, and Polsinelli with the costs of such auction borne solely out of the sale proceeds.

### 3.1.3 Impairment and Voting

Class 1 is impaired by the Plan. The holders of Class 1 Claims are entitled to vote to accept or reject the Plan. For purposes of voting, Polsinelli shall be considered to be the sole member of the Allowed Secured Polsinelli Claim Class.

### 3.3 Class 2:     Secured Claim of City National Bank of West Virginia

### 3.2.1 Classification

Class 2 consists of the Allowed Secured Claim of CNB.

### 3.2.2 Treatment

This Claim shall be treated as a secured obligation of the Reorganized Debtors upon the terms and conditions as set forth in a Consent Order to Resolve Motion for Relief from Stay Filed by City National Bank of West Virginia (the "Consent Order") filed with the Bankruptcy Court on February 14, 2018 (Docket # 1080). The Consent Order extends the maturity of the CNB secured obligation by 24 months. CNB shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 2 Claim is satisfied as set forth in the Consent Order, the terms of which will be incorporated into the Plan by reference.

### 3.2.3  Impairment and Voting

11

61189538.9
61434885.2

Class 2 is impaired by the Plan. The holder of Class 2 Claim is entitled to vote to accept or reject the Plan.

### 3.3 Class 3:     Secured Claim of Greenbrier County, West Virginia Tax Collector

#### 3.3.1 Classification

Class 3 consists of the Allowed Secured Claim of the Greenbrier County, West Virginia Tax Collector.

#### 3.3.2 Treatment

This claim shall be treated as a secured obligation. The claim will be paid in full directly by Jemsek on or before January 1, 2019.

#### 3.3.3 Impairment and Voting

Class 3 is impaired by the Plan. The holder of the Class 2A Claim is entitled to vote to accept or reject the Plan.

### 3.4 Class 4:     Claims of Kay Jemsek

#### 3.4.1 Classification

Class 4 consists of the claims of Kay Jemsek

#### 3.4.2 Treatment

Notwithstanding any other provision of this Plan, all of the Claims of Kay Jemsek shall be Allowed Domestic Support Obligations pursuant to sections 101(14A) and 507(a)(1) of the Bankruptcy Code, and shall be treated in accordance with the February 7, 2017 Separation, Property Settlement, Alimony and Child Custody & Support Agreement attached to the Plan as Exhibit A (the "Original Agreement"), with the following modifications:

(A) Paragraph 13 (entitled "Investment Accounts") shall be deleted;

(B) Paragraph 19 shall be deleted and replaced with the following –

19.     Alimony. Joseph shall pay alimony to Kay as follows:

(a) Ongoing Monthly Alimony Payments. Joseph shall pay alimony to Kay in the sum

12

61189538.9
61434885.2

of $10,500 per month beginning February 5, 2016 and continuing on the 5th day of each month thereafter through and including January of 2018. Beginning February 5, 2018, Joseph shall pay alimony to Kay in the sum of $7,500 per month and continuing on the 5th day of each month thereafter until the earlier of the following termination events:

(i) Death of Joseph;
(ii) Death of Kay;
(iii) Remarriage of Kay;
(iv) Cohabitation by Kay as defined in N.C.G.S. § 50-16.9;
(v) Joseph attaining age 70 on April 16, 2019.

On Joseph attaining the age of 70 on April 16, 2019, and provided no other termination event as described above has occurred, Joseph shall pay alimony to Kay in the sum of $4,000 per month beginning May 5, 2019 and continuing on the 5th day of each month thereafter through and including April of 2021. In the event that Husband loses his medical license or if he has a mental or physical impediment, which renders him unable to work in his profession, the parties agree to discuss and attempt to agree on an appropriate modification of the remaining monthly alimony payments. If the parties are unable to agree between themselves to an appropriate modification of the monthly alimony payment, then they shall both attend a mediated settlement conference conducted by a North Carolina Certified Family Financial Mediator in a further effort to resolve this issue. If the issue is still unresolved, then either party shall be entitled to a determination of this issue by arbitration under the North Carolina Family Law Arbitration Act. The parties have designated Fred A. Hicks to serve as Arbitrator but may utilize any mutually agreed upon experienced Family Conflict Arbitrator. In no case may the term of alimony be extended by the Arbitrator or shall the monthly payment exceed the sums contained herein. Any downward modification of Joseph's alimony obligation under the terms of this contract shall automatically revert to the contract obligation at such time as any impediments resulting in the reduction are removed. Any Order entered by the arbitrator shall be subject to modification based upon substantial change of circumstances in the same manner as an Order entered by a Judge presiding over Family Court, but shall be subject to the provisions of this paragraph.

(b) Payment of Alimony in Arrears. Joseph is in arrears in one prior alimony payment due to Kay in the amount of $10,500. In addition to his other obligations under this Agreement, Joseph shall pay said arrearage of $10,500 to Kay on or before attaining the age of 70 on April 16, 2019.

(c) Waiver of Other or Further Alimony. Except as set forth hereinabove and in paragraph 49 below, Kay expressly relinquishes and waives any and all rights to alimony or claims for maintenance and support from Joseph. Joseph hereby expressly relinquishes and waives and all rights to alimony or claims for maintenance and

13

support from Kay.

(d) No Integration with Property Settlement. The provisions for payment and waiver of alimony as set forth above are independent of the property settlement provisions of the Agreement.

(e) Tax Considerations. Any alimony payments from Joseph to Kay from and after February 7, 2017 shall be includable as income to Kay for the purpose of filing Federal and State income tax returns and shall be deductible from Joseph's income to the extent allowed by the Internal Revenue Service and North Carolina Department of Revenue.

(C) Paragraph 23 shall be deleted and replaced with the following –

23.      College Education. In the event that either and/or both of the parties' minor children desire to pursue a college education after having completed high school, the actual costs (tuition, books, room or comparable housing expense), board (or comparable grocery expense), and other fees normally charged by the institution, for such higher education, not exceeding the cost of said education then in effect at the University of North Carolina at Chapel Hill for North Carolina, shall be borne by Joseph. In addition, Joseph shall afford each such child reasonable sums to be determined by Joseph in his reasonable discretion for transportation, clothing, and spending allowances giving due consideration to the earnings of the child, if any. The obligation of Joseph to afford the minor children with a higher education as aforesaid shall be limited to undergraduate school. If the child fails to graduate from undergraduate school within four (4) years of matriculation due to academic or disciplinary reasons, then Joseph, at his option, may cease further payment pursuant to this paragraph to or for the benefit of such child. The commitment to pay for the college expenses of the children as set forth in this paragraph is integrated with the property settlement of the parties, is not modifiable by either party for any reason, and shall be a binding obligation on Joseph's decedent estate in the event of his death notwithstanding any other provision of this Agreement.

(D) Paragraph 49 shall be added to the Agreement and shall state as follows-

49.      Default; Opportunity to Cure; Remedy. Notwithstanding any other provision of this Agreement, Joseph shall be deemed in default of his obligations hereunder in the event any payment due to Kay or for the benefit of the parties' minor children is more than fifteen (15) days late. In such event, Kay shall notify Joseph of such default in writing (by regular U.S. mail, facsimile transmission, or electronic mail), and Joseph shall have ten (10) days from the sending of such notice to cure his default. If Joseph fails to timely cure such default, his obligation to pay alimony to Kay shall increase to $10,500 per month retroactively from February 2016 forward. Jemsek and Kay Jemsek shall execute a revised Separation, Property Settlement, Alimony and Child

14

Custody & Support Agreement (the "Final Agreement") reflecting the modifications set forth herein (with no other changes) and shall file a full and complete copy of the same in the Bankruptcy Court's docket on or before the Effective Date of the Plan. The Final Agreement shall be incorporated by reference in the Plan and any order confirming the Plan. Further, Kay Jemsek shall be entitled to enforce her rights under applicable law upon breach of the Original Agreement, the Final Agreement, and/or this Plan, including, but not limited to, the initiation of contempt proceedings, in the United States Bankruptcy Court for the Western District of North Carolina or in the General Court of Justice of the State of North Carolina.

### 3.4.3 Impairment and Voting

Class 4 is impaired by the Plan. The holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

### 3.5 Class 5:    Priority Non-Tax Claims

#### 3.5.1 Classification

Class 5 consists of Priority Non-Tax Claims.

#### 3.5.2 Treatment

Each holder of an Allowed Priority Non-Tax Claim shall be paid the Allowed Amount of its Allowed Priority Non-Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between the holder of an Allowed Priority Claim and the Reorganized Debtors; or (c) in four Cash payments commencing on or before June 30, 2019 and continuing in three additional, annual installments thereafter on or before June 30th of years 2020-2022, respectively, with interest at the rate of 3.25% per annum and any fees due thereon.

#### 3.5.3 Impairment and Voting

Class 5 is impaired by the Plan. The holders of the Class 5 Claims are entitled to vote to accept or reject the Plan.

### 3.6 Class 6:    Convenience Claims, General Unsecured Claims of $5,000.00 or less

#### 3.6.1 Classification

Class 6 consists of the General Unsecured Claims of $5,000.00 or less.

15

### 3.6.2 Treatment

Each holder of a Class 6 Allowed General Unsecured Claim of $5,000.00 shall be paid 50% of its Allowed Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; or (b) within 15 days after then entry of a Final Order allowing such claim.

### 3.6.3 Impairment and Voting

Class 6 is impaired by the Plan. The holders of the Class 6 Claims are entitled to vote to accept or reject the Plan.

### 3.7 Class 7:   General Unsecured Claims exceeding $5,000 (including the Allowed BCBS Claim and Allowed Polsinelli Unsecured Claim)

### 3.7.1 Classification

Class 7 consists of all General Unsecured Claims exceeding $5,000 (including, but not limited to the Allowed BCBS Claim and the Allowed Polsinelli Unsecured Claim).

### 3.7.2 Treatment

These Claims shall be treated as an unsecured obligation of the Reorganized Debtors. Except as noted herein with respect to the Allowed BCBS Claim, in full satisfaction of their claims, the holders of Allowed Class 7 Claims will receive a pro-rata distribution of One Hundred and Fifty Thousand Dollars ($150,000.00) from the Distribution Account after the payment to the holders of allowed Super-Priority, Allowed Administrative, Allowed Priority and Allowed Class 1 through 6 claims. Except with respect to the Allowed BCBS Claim (the holder of which is waiving distribution rights), holders of Allowed Class 7 Claims will receive 12 consecutive quarterly pro-rata distributions in the amount of $12,500.00, commencing after the payment of the BCBS Administrative Claim, Allowed Super-Priority Administrative Claims, and Administrative Claims.

Within thirty (30) days after the entry of orders finally determining the Allowed Claims of Class 7 creditors, the Debtors shall execute a Class 7 Plan Note (the "Note"), the form of which is attached hereto as Exhibit B, in favor of each holder of an Allowed Class 7 Claim. The debt payable to each creditor shall be determined by dividing the Allowed Claim of that creditor by the total amount of Class 7 Allowed Claims, and multiplying the resulting fraction by $150,000.00. Commencing on July 1, 2021, and for 11 consecutive calendar quarters thereafter, each creditor will receive its

16

61189538.9
61434885.2

pro rata share of a total quarterly payment in the amount of $12,500.00. The Maturity Date of the debt is July 1, 2024. The Debtors are not obligated to pay the holders of Allowed Class 7 Claims more than $150,000.00 and payments will cease when $150,000.00 has been distributed to the Class. The holder of the Allowed BCBS Claim shall not receive distributions under Section 3.7.2 of the Plan. The Debtors may pre-pay all or any portion of the Notes without penalty.

Within thirty days after the Effective Date, the Debtors will tender the Order Imposing Lien on Real Property (the "Order Imposing Lien", in the form attached hereto as Exhibit C) to the Court and file a certified copy with the Register of Deeds of Macon County, North Carolina. The Order Imposing Lien shall act as a lien on real property located at Lot 7, Walkingstick Falls Rd in Highlands, Macon County, North Carolina (the "Real Property"), to secure the Notes. The Order Imposing Lien shall not act as a lien on Lot 6, Walkingstick Falls Rd. in Highlands, Macon County, North Carolina, or on any other real or personal property now owned or hereafter acquired by the Debtors. Upon completion of payments due under the Notes, the lien on the Real Property shall be void and of no effect. On the request of the Debtors and after a notice and hearing the Court will take such action as is necessary to cause the release and satisfaction of the Order Imposing Lien.

### 3.7.3 Impairment and Voting

Class 7 is impaired by the Plan. The holders of Class 7 Claims, including the holders of the Allowed BCBS Claim and the Allowed Polsinelli Unsecured Claim are entitled to vote to accept or reject the Plan.

## ARTICLE 4
## ACCEPTANCE OR REJECTION OF THE PLAN

**4.1 Impaired Classes Vote**. Each holder of a Claim or Interest in an impaired Class receiving or retaining anything under this Plan is entitled to vote to accept or reject this Plan to the extent and in the manner provided in the Plan, the Bankruptcy Code and the Bankruptcy Rules, or in any voting procedures order.

**4.2 Acceptance by Impaired Classes of Claims**. Acceptance of this Plan by any Impaired Class entitled to vote shall be determined in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any voting procedures order entered by the Bankruptcy Court.

**4.3 Designation of Classes Entitled to Vote**. All Classes are impaired, and the holders of Claims and Interests in all Classes are entitled to vote on the Plan.

17

61189538.9
61434885.2

**4.4 Nonconsensual Confirmation**. With respect to any Impaired Class, including any Class of Claims or Interests created pursuant to amendments or modifications to this Plan, that does not accept the Plan, the Debtor will request that the Bankruptcy Court confirm this Plan by "cramdown" under Section 1129(b) of the Bankruptcy Code with respect to any such nonaccepting Class or Classes at the Confirmation Hearing, and the filing of this Plan shall constitute a motion for such relief.

## ARTICLE 5
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.1 Assumption and Rejection; Exceptions Thereto**. Jemsek shall assume the leases of his apartments in Washington, D.C. and Charlotte, N.C. Any executory contract or unexpired lease assumed pursuant to the Plan shall be and hereby is assumed by the Reorganized Debtors as of the Effective Date and shall be fully enforceable by the Reorganized Debtors in accordance with its terms, and shall include all written modifications, amendments, supplements of said executory contract or unexpired lease and, as with respect to executory contracts or unexpired leases that relate to real property, shall include all written agreements and leases appurtenant to the premises, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easements, and any other interests in real property or rights in rem related to such premises.

The Debtors reserve the right at any time before the Effective Date to amend the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to: (a) delete any executory contract or unexpired lease listed on the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," thus providing for its assumption under the Plan, or (b) add any executory contract or unexpired lease to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," thus providing for its rejection under the Plan. The Debtors shall provide notice of any such amendment of the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to the other party or parties to the affected executory contract and/or unexpired lease, and to the Office of the Bankruptcy Administrator.

**5.2 Cure Payments, Compensation for Pecuniary Loss, and Adequate Assurance**. All payments, including any and all cure payments, adequate assurance or compensation for actual pecuniary loss, required to be paid or provided for by §§ 365(b)(1)(A)-(C) of the Bankruptcy Code (the "Cure Payments") for any executory contract or unexpired lease that is being assumed under the Plan, unless disputed by the Debtors, shall be made by the Reorganized Debtors on the Effective Date. The Debtors hereby give notice that there are no Cure Payments due with respect to any executory contracts and unexpired leases to be assumed under the Plan. Any non-debtor party to any executory contract or unexpired lease to be assumed under the Plan that objects to assumption of the executory contract or unexpired lease or believes that a Cure Payment is due in connection with such assumption must file a written objection to the assumption of such executory contract or unexpired lease with no Cure Payment and state in the written objection the grounds for such objection and specifically set forth the amount of any request for a Cure Payment by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan. Unless the non-debtor party to any executory contract or

18

61189538.9
61434885.2

unexpired lease to be assumed files and serves on the Debtors and their counsel an objection to assumption of such executory contract or unexpired lease for any reason, or asserting that a Cure Payment is required or owed in connection with such assumption, by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan, then the executory contracts and unexpired leases shall be assumed, and any default then existing in the executory contract and/or unexpired lease shall be deemed cured as of the Effective Date, and there shall be no other cure obligation or Cure Payment due or owed by anyone, including the Debtors and the Reorganized Debtors, in connection with such assumption. Any Claims for Cure Payments not filed as part of a written objection to the proposed assumption within such time period will be forever barred from assertion against the Debtors, their Estate, the Reorganized Debtors, and their assets, and the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof. In the event of an objection to the assumption of executory contracts or unexpired leases regarding the amount of any Cure Payment, or the ability of the Reorganized Debtors to provide adequate assurance of future performance or any other matter pertaining to assumption, (a) the Bankruptcy Court will hear and determine such dispute at the Confirmation Hearing, and (b) in the discretion of the Debtors, the Debtors (i) may assume such disputed executory contract or unexpired lease by curing any default or providing adequate assurance in the manner determined by the Bankruptcy Court, or (ii) the Debtors may reject such executory contract or unexpired lease as of the Effective Date. The Reorganized Debtors shall make any Cure Payment on the later of the Effective Date or the date such Cure Payment is due pursuant to a Final Order, provided, however, that the Reorganized Debtors shall have ten (10) Business days after any order determining the amount of a disputed Cure Payment becomes a Final Order in which to amend the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to provide for the rejection of such executory contract or unexpired lease and, in such an event, such executory contract or unexpired lease shall be deemed rejected as of the Effective Date.

**5.3 Effect of Confirmation Order on Executory Contracts and Unexpired Leases**. Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of any such assumptions pursuant to Section 365(a) and 1123(b)(2) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, their estate, and all parties in interest. In addition, the Confirmation Order shall constitute a finding of fact and conclusion of law that (i) there are no defaults of the Debtors, no Cure Payments owing (including that there is no compensation due for any actual pecuniary loss), (ii) there is adequate assurance of future performance with respect to each such assumed executory contract or unexpired lease, (iii) such assumption is in the best interest of the Debtors and the Estate, (iv) upon the Effective Date, the assumed executory contracts or unexpired leases constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof, and (v) the non-debtor counter party to each assumed executory contract or unexpired lease is required to and ordered to perform under and honor the terms of the assumed executory contract or unexpired lease. All executory contracts and unexpired leases assumed under the Plan or during the Chapter 11 Case constitute valid contracts and leases, as applicable, enforceable by the Debtors or Reorganized Debtors against the non-debtor counterparties regardless of any cross-default or change of control provisions in any contracts or leases assumed or rejected under the Plan or during the Chapter 11 Case.

19

61189538.9
61434885.2

Likewise, subject to the occurrence of the Effective Date, the Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection as of the Effective Date of all executory contracts and unexpired leases which are not assumed under this Plan, with the rejection effective as of the day before the Petition Date, as being burdensome and not in the best interest of the Estate.

**5.4 Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan**. Any Claims for damages arising from the rejection of an executory contract or unexpired lease under this Plan must be Filed within thirty (30) days after the Confirmation Date or such Claims will be forever barred and unenforceable against the Debtors, the Reorganized Debtors, and the Estate, and the holders of any such Claims are barred from receiving any distributions under the Plan.

# ARTICLE 6
# DISTRIBUTIONS

**6.1 Establishment of Distribution Account**. Upon confirmation of the Plan, The Henderson Law firm on behalf of the Reorganized Debtors shall establish a segregated trust account which will be the Distribution Account. Thereafter, the Reorganized Debtors shall fund the Distribution Account as necessary to fulfill the obligations of the Debtors under this Plan.

**6.2 Distributions Under the Plan**. The Reorganized Debtors or, at the option of the Reorganized Debtors, any distribution agent the Reorganized Debtors may retain, shall make all distributions to the holders of Allowed Claims and Allowed Interests that are required under this Plan. Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without the accrual of any interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

**6.3 Delivery of Distributions, Instruments, or Property**. Distributions or delivery of instruments required under this Plan shall be made at the addresses indicated in the Debtor' records. In the event that any distribution or instrument is returned as undeliverable, the Reorganized Debtors shall use reasonable efforts to determine the current address of the applicable claimant, and no distribution or delivery to such claimant shall be made unless and until the Reorganized Debtors have determined such then current address; provided, however, that if any distribution or instrument remains unclaimed after the first anniversary after distribution or delivery, such distribution or instrument shall be deemed unclaimed property pursuant to section 347(b) of the Bankruptcy Code and shall be vested in the Reorganized Debtors. In such event, the Claim of the holder for such distribution or instrument shall no longer be deemed to be Allowed, and such holder shall be deemed to have waived its rights to such distribution or delivery under this Plan pursuant to section 1143 of the Bankruptcy Code, shall have no further claim or right thereto, and shall not participate in any further distributions under this Plan with respect to such Claim. Checks issued by the Reorganized

20

61189538.9
61434885.2

Debtors in respect of Allowed Claims shall be null and void if not negotiated within 120 days after the date of issuance thereof. Surrender of any property under this Plan to a holder of an Allowed Claim shall be made by mailing written notice of such surrender to the holder of the applicable Allowed Claim at its address as shown in a filed Proof of Claim or in the Schedules. In the event that the recipient of such notice does not contact the Reorganized Debtors or their counsel to arrange for retrieval or storage of the surrendered property at such recipient's expense within thirty (30) days' of the date thereof, such property shall be deemed unclaimed pursuant to § 347(b) and shall become vested in the Reorganized Debtors. The Claim of the holder otherwise entitled to such surrender shall no longer be deemed to be Allowed, and such holder shall be deemed to have waived its rights to any distribution or surrender under this Plan pursuant to § 1143 of the Bankruptcy Code, shall have no further claim or right thereto, and shall not participate in any further distributions under this Plan with respect to such Claim. In such event, the Reorganized Debtors may seek entry of an order by the Bankruptcy Court cancelling any lien, encumbrance, or interest on or in the affected property.

**6.4 Third-Party Agreements**. Distributions to the Classes of Claims or Interests hereunder will not affect the right of any entity to levy, garnish, attach, or employ any other legal process with respect to such distributions by reason of any claimed subordination of lien priority rights or otherwise. All subordination agreements entered into by any parties in interest shall be enforceable to the extent permitted by applicable law, and all distributions and payments made pursuant to the Plan shall be subject to applicable law.

**6.5 Manner of Payment Under the Plan**. At the option of the Reorganized Debtors, any payment in Cash to be made under the Plan may be made by check or wire transfer from a domestic bank or as otherwise required by applicable agreement.

**6.6 No Fractional Distributions**. No fractional dollars shall be distributed under the Plan. For purposes of distributions, Cash distributions shall be rounded up or down, as applicable, to the nearest whole dollar.

**6.7 Withholding and Reporting**. The Reorganized Debtors shall comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions shall be subject to such withholding and reporting requirements.

### ARTICLE 7
### MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**7.1 Sources of Funding**. The Plan contemplates that distributions will be funded by any means necessary, including but not limited to the Debtor's Liquid Non-Exempt Assets, the proceeds from the sale of Non-Liquid Non-Exempt Assets, the Projected Disposable Income, and by BCBS, solely in the amount of the BCBS Plan Funding.

**7.2 New Value Contribution**. Jemsek will contribute a lump sum of $10,000 to the

21

61189538.9
61434885.2

Distribution Account on the Effective Date. Said funds will be from an exempt IRA and will be used to pay partial distributions to the holders of the BCBS Administrative Claim, Super-Priority Administrative Expense Claims and Administrative Expense Claims.

**7.3 Authority to Act Following Confirmation Date**. Upon confirmation of this Plan, the Debtors shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including, without limitation, the execution and filing of all documents required or contemplated by this Plan. In connection with the occurrence of the Effective Date, the Reorganized Debtors are authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**7.4 Authority to Act Following Effective Date**. The Reorganized Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

**7.5 Status of Existing Liens**. Unless otherwise provided in this Plan or by Order of the Bankruptcy Court, on the Effective Date, all existing liens established by properly perfected security agreements and held by any Class or Classes on the Debtors' assets as described in this Plan shall retain the same priority that existed on the Petition Date, provided that such liens and any related rights shall not extend to property acquired by the Debtor after commencement of the Chapter 11 Case as set forth in section 552 of the Bankruptcy Code.

Section 552 of the Bankruptcy Code shall continue to apply to all such liens following confirmation of the Plan. All other liens, encumbrances, and related rights (including, but not limited to, rights of setoff) not specifically provided for in the Plan shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule.

**7.6 Effectuating Documents and Further Transactions**. The Debtors and the Reorganized Debtors shall be authorized, but not required, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

**7.7 Liquidation of Non-Liquid Non-Exempt Assets.** On or before the Non-Exempt Asset Contribution Deadline, the Debtors shall deposit the proceeds from the sale of all Non-Liquid Non-Exempt Assets (that are not already reduced to cash as of the Effective Date) to the Distribution Account using any or all of the following mechanisms in Debtors' sole and absolute discretion:

22

(a) liquidate and reduce to cash proceeds the Non-Liquid Non-Exempt Assets that are not already cash proceeds as of the Effective Date and contribute the net proceeds of such Non-Exempt Assets to the Distribution Account; or

(b) contribute to the Distribution Account Exempt Assets consisting of cash or cash equivalents in lieu of liquidating a particular Non-Liquid Non-Exempt Asset; provided, however, that the amount of such contribution shall be not be less than the net value ascribed to each Non-Liquid Non-Exempt Asset as shown on the Liquidation Analysis (**Exhibit L** to the Disclosure Statement).

## ARTICLE 8
## RESOLUTION OF DISPUTED CLAIMS AND INTERESTS

**8.1 Objections to Claims and Interests**. The Debtors, and after the Effective Date, the Reorganized Debtors, shall have the exclusive right to object to the allowance, amount or classification of Claims and Interests asserted in the Chapter 11 Case, and such objections may be litigated to Final Order by the Debtors or Reorganized Debtors, or compromised and settled in accordance with the business judgment of the Debtors or Reorganized Debtors, as applicable, without further order of the Bankruptcy Court. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims and Interests shall be Filed no later than sixty (60) days after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy Court, which extensions may be obtained by the Reorganized Debtors without notice upon ex parte motion. Provided, that Debtors shall have no right to object, seek reconsideration or appeal the BCBS Administrative Claim, Allowed BCBS Claim, Allowed Polsinelli Administrative Claim, Allowed Polsinelli Secured Claim, and the Allowed Polsinelli Unsecured Claim.

**8.2 Estimation of Disputed Claims and Interests**. The Debtors and, after the Effective Date, the Reorganized Debtors, may at any time request that the Bankruptcy Court estimate for all purposes, including distributions under this Plan, any Disputed, contingent or unliquidated Claim or Interest pursuant to Section 502(c) of the Bankruptcy Code whether or not the Debtors or the Reorganized Debtors have previously objected to such Claim or Interest. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest at any time, including, without limitation, during the pendency of an appeal relating to such objection. Provided, that Debtors shall have no right to estimate the BCBS Administrative Claim, Allowed BCBS Claim, Allowed Polsinelli Administrative Claim, Allowed Polsinelli Secured Claim, and the Allowed Polsinelli Unsecured Claim.

**8.3 No Distribution on Account of Disputed Claims and Interests.** Notwithstanding anything else contained in this Plan, except with respect to any undisputed, non-contingent and liquidated portion of General Unsecured Claims, no distribution shall be due or made with respect to all or any portion of any disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order.

61189538.9
61434885.2

# ARTICLE 9
## EFFECT OF CONFIRMATION OF PLAN

**9.1 Vesting of Assets and Retained Causes of Action**. On the Effective Date, pursuant to Section 1141(b) of the Bankruptcy Code, all assets and property of the Debtors shall vest in the Reorganized Debtors free and clear of any and all Claims, Liens, Interests, and other interests, charges and encumbrances, except as otherwise expressly provided in this Plan or in the Confirmation Order. Consistent with the terms of this Plan, from and after the Effective Date the Reorganized Debtors may operate their businesses, and may own, use, acquire and dispose of their respective property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if the Chapter 11 Case had never been filed. Except as otherwise provided in this Plan, the Reorganized Debtors shall retain all rights and are authorized to commence and pursue, as the Reorganized Debtors deem appropriate, any and all claims and causes of action, including, but not limited to Avoidance Actions, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, and including but not limited to, the claims and causes of action specified in the Plan, any Plan exhibit, the Disclosure Statement, or any exhibit to the Disclosure Statement.

**9.2 Binding Effect**. Subject to the occurrence of the Effective Date on or before the deadline set forth in Article 10 of the Plan, on and after the occurrence of the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or an Interest in, the Debtors and/or their Estate and such holder's successors and assigns, whether or not such holder's Claim or Interest is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

**9.3 Discharge of the Debtors**.  Except as noted in Article 14, the consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, discharge, release, and termination of all Claims of any nature whatsoever against the Debtors and their Estate.  The Debtors shall be entitled to move for entry of a discharge pursuant to section 1141 of the Bankruptcy Code.  If such discharge is approved by Order of the Bankruptcy Court (the "Discharge Order"), the Debtors shall be deemed discharged and released pursuant to section 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the date of the Discharge Order, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted this Plan.

**9.4 Effect of Discharge**. Except as noted in Article 14, the Discharge Order shall be a judicial determination of discharge and termination of all liabilities of and all Claims against the Debtors and the Estate, except as otherwise specifically provided in this Plan. Upon the entry of the Discharge Order, as to every discharged Claim and other debt of the Debtors, the holder of such Claim or other

24

debt of the Debtors shall be permanently enjoined and precluded from asserting against the Reorganized Debtors, or against their assets or properties or any transferee thereof, any other or further Claim or other debt of the Debtors based upon any document, instrument, or act, omission, transaction, or other activity of any kind or nature that occurred prior to the entry of the Discharge Order except as expressly set forth in this Plan. In the event that, after entry of the Discharge Order, any Person asserts, against the Reorganized Debtors or any of their subsidiaries or affiliates, any right to payment or equitable remedy for breach of performance which gives rise to a right of payment, which right was not asserted prior to the entry of the Discharge Order but is based on any act, fact, event, occurrence, or omission, by or relating to the Debtors as they existed before the entry of the Discharge Order, and in the further event that such right is determined by the Bankruptcy Court (a) not to have been discharged pursuant to the provisions of section 1141 of the Bankruptcy Code and this Plan, and (b) that such right may be asserted against the Reorganized Debtors, then, in such circumstances the holder of such right shall be entitled to receive from the Reorganized Debtors value equivalent to that such holder would have received if such right had been asserted against the Debtors before the Confirmation Date and only to the extent such right would have been an Allowed Claim. Nothing in this section 9.4 shall have the effect of excepting from discharge any Claim that is or would be discharged pursuant to section 1141 of the Bankruptcy Code or this Plan.

**9.5 Terms of Certain Injunctions**. Except as noted in Article 14, as of and on the Confirmation Date, all Persons who have held, hold, or may hold Claims against the Debtors and/or the Estate shall be deemed to have waived, released, and discharged all rights or claims, whether based upon tort, contract or otherwise, which they possessed or may possess prior to the Confirmation Date against the Debtors and/or the Estate, except as otherwise provided for in this Plan (including the documents filed as Schedules or Exhibits to the Plan) or the Confirmation Order; provided, however, that the foregoing release shall not apply to nonperformance under the Plan. The Confirmation Order shall constitute a permanent injunction effectuating these releases, such that all Persons who have held, hold, or may hold Claims against the Debtors and/or the Estate shall be expressly prohibited from taking any action to enforce such Claims against the Reorganized Debtors or their property, or any transferee of such property. Further, any holder of an Allowed Secured Claim whose collateral is surrendered to it pursuant to the terms of this Plan shall be enjoined from exercising its in rem rights as to such collateral unless and until it provides written notice to the Debtors of its intent to do so at least thirty (30) days prior to initiating any action, proceeding, notice, or sale otherwise authorized under applicable law in connection with such in rem rights.

Unless otherwise provided herein or in the Confirmation Order, all injunctions and/or stays provided for in, or in connection with, this Chapter 11 Case shall remain in full force and effect through the Effective Date and thereafter. In addition, the Debtors or the Reorganized Debtors may seek such further orders as they deem necessary or appropriate to preserve the status quo following occurrence of the Confirmation Date.

**9.6 No Successor Liability**. Except as otherwise specifically provided in the Plan or the Confirmation Order, neither the Debtors nor the Reorganized Debtors will have any responsibilities,

25

61189538.9
61434885.2

pursuant to the Plan or otherwise, for any liabilities or obligations of the Debtors or any of the Debtors' past or present companies, affiliates, subsidiaries or predecessors-in interest relating to or arising out of the operations of or assets of the Debtors or any of the Debtors' past or present companies, affiliates, subsidiaries, or predecessors-in-interest whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date. The Reorganized Debtors shall have no successor or transferee liability of any kind for any Claims; provided, however, that the Reorganized Debtors shall have the obligations specifically and expressly provided, and solely in the manner stated, in the Plan.

**9.7 Preservation of All Causes of Action Not Expressly Settled or Released**. Except as noted in Article 14, without limiting or restricting any other provisions of this Plan, including but not limited to Section 9.1, unless a Claim, cause of action, or objection against a Creditor or other entity is expressly and specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, the Reorganized Debtors expressly reserve such claim, cause of action, or objection for adjudication or pursuit by the Reorganized Debtors after the Effective Date.

Therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims, causes of action, or objections by the Reorganized Debtors upon or after the Confirmation Date or Effective Date of the Plan based on the Disclosure Statement, the Plan, the Confirmation Order or otherwise. The Reorganized Debtors expressly reserve the right to pursue or adopt any claims (and any defenses), causes of action, or objections of the Debtors or the Debtors in Possession, as trustees for or on behalf of the Creditors, not specifically and expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order against any entity, including, without limitation, the plaintiffs or codefendants in any lawsuits. The Reorganized Debtors shall be the representatives of the Estate appointed for the purposes of pursuing any and all such claims, causes of action, and objections under section 1123(b)(3)(B) of the Bankruptcy Code.

Any Person to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors, should assume that such obligation, transfer, or transaction may be reviewed by the Reorganized Debtors subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, be the subject of an action, claim, demand, or objection after the Confirmation Date or the Effective Date, whether or not (a) such Person has filed a proof of claim in the Chapter 11 Case, (b) such Person's proof of claim has been objected to, (c) such Person's Claim was included in the Debtors' Schedules, or (d) such Person's scheduled Claim has been objected to or has been identified by the Debtors as disputed, contingent, or unliquidated.

## ARTICLE 10
## THE EFFECTIVE DATE OF THE PLAN

61189538.9
61434885.2

**10.1 Conditions to Occurrence of Effective Date of Plan**. The "effective date of the plan," as used in Section 1129 of the Bankruptcy Code, shall not occur until the Effective Date as defined herein. The Effective Date shall occur upon the earlier of: (a) the Business Day that is thirty (30) days after entry of the Confirmation Order; or (b) upon satisfaction of the following conditions precedent (or conditions subsequent with respect to actions that are to be taken contemporaneously with, or immediately upon, the occurrence of the Effective Date), any of which may be waived in writing by the Debtors.

10.1.1 The Confirmation Order shall have been entered by the Bankruptcy Court.

10.1.2 The Confirmation Order shall have become a Final Order.

10.1.3 All actions, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan, if any, shall have been executed and delivered by any applicable non-debtor parties in form and substance satisfactory to the Debtors.

10.1.4 All actions, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan, shall have been executed by the Debtors.

10.1.5 The new value contribution contemplated in section 7.2 of the Plan shall have been deposited into the Distribution Account

10.1.6 Any federal, state, local and foreign governmental authorizations, consents and regulatory approvals required for the consummation of each of the transactions contemplated in the Plan shall have been obtained and shall have become final and non-appealable and, with respect to any court proceeding relating thereto, been approved by Final Order.

10.1.7 All fees and expenses due to or incurred by Professionals for the Debtors through the Effective Date not previously paid pursuant to interim or Final Orders shall have been paid into and shall be held in trust, free and clear of Liens, Claims and encumbrances (other than the rights of such Professionals) until due and payable in accordance with applicable court order, unless otherwise agreed by such Professionals.

10.1.8 All payments required to be made on the Effective Date shall have been made or waived in a separate writing by such party with the right to receive the payment

10.1.9 BCBS shall have paid the BCBS Plan Funding.

10.2 Filing of Notice of Effective Date. Within fourteen (14) Business Days of the occurrence of the Effective Date, the Reorganized Debtors shall file a notice of occurrence of the Effective Date signed by their counsel in the record of the Bankruptcy Court reflecting (a) that the foregoing

27

61189538.9
61434885.2

conditions to the occurrence of the Effective Date have been satisfied or waived by the Debtors and any other person whose consent or waiver is required, (b) the date of the Effective Date, and (c) acknowledging that the Effective Date has occurred on and as of such date.

10.3 Revocation of Confirmation Order or Withdrawal of Plan. The Debtors may revoke or withdraw the Plan prior to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Chapter 11 Case. If the Plan is withdrawn prior to the Confirmation Date or if the Effective Date does not occur prior to the date set forth in Article 10, then the Plan shall be deemed withdrawn and the Confirmation Order (if any has been entered) shall be automatically revoked without the need for any action by any party in interest or the Bankruptcy Court. In such event, the Plan and the Confirmation Order shall be of no further force or effect and, the Debtors and all holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the filing of the Plan, and (ii) all the Debtors' respective obligations with respect to Claims and Interests shall remain unchanged, all of the Debtors' rights and claims against all Entities shall be fully preserved and nothing contained herein or in the Disclosure Statement shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtors or any other Persons or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors or any other Persons.

In the event BCBS pays the BCBS Plan Funding and the Plan does not become effective within 90 days of such payment, BCBS shall be entitled to a complete refund of the BCBS Plan Funding without interest, and such entitlement shall not be subject to recoupment, setoff, or reduction and all parties rights and claims shall be preserved and not waived or released.  BCBS, Polsinelli and the Debtors may agree to extend the 90 days by email or other writing.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1 Payment of Statutory Fees. All fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid by the Reorganized Debtors, as, when and in the amount as required by applicable law, without the filing of any motion or request therefor.

11.2 Notice. Any notice required or permitted to be provided to the Debtors or Reorganized Debtors under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight courier service, freight prepaid, to be addressed as follows: The Henderson Law Firm, 1201 Harding Place, Charlotte, NC 28204.

11.3 Headings. The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

11.4 Governing Law. Unless a rule of law or procedure is supplied by federal law (including the

28

61189538.9
61434885.2

Bankruptcy Code and Bankruptcy Rules), the laws of the State of North Carolina, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

11.5 Additional Documents. The Debtors and Reorganized Debtors have the authority to take any and all actions and execute (and perform) any agreements and documents as the Debtors and/or Reorganized Debtors deem necessary or appropriate in their reasonable discretion to effectuate and further evidence the terms and conditions of this Plan.

11.6 Compliance with Tax Requirements. In connection with this Plan, the Debtors and the Reorganized Debtors will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

11.7 Legal Representation Regarding the Plan. The Debtors and the Bankruptcy Estates of both are represented by Mr. James H. Henderson regarding all parts and process of this Plan. The Debtors and the Bankruptcy Estates of both are not represented by Polsinelli or any employee or agent thereof with regard to any parts or process of this Plan.  Polsinelli's previous representation of the Debtors regarding that certain adversary action, is concluded as of the confirmation of this Plan, regardless of the occurrence of the Effective Date.

11.8 Exemption from Transfer Taxes. To the extent applicable, the issuance, transfer, or exchange of any securities under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall be exempt from all taxes as provided in Section 1146(a) of the Bankruptcy Code.

11.9 Further Authorizations. The Debtors, and after the Effective Date, the Reorganized Debtors, may seek such orders, judgments, injunctions, and rulings they deem necessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan.

11.10 Successors and Assigns. The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Person.

11.11 Modification and Amendment of the Plan. Subject to section 1127 of the Bankruptcy Code and Bankruptcy Rules 2002 and 3019, this Plan may be amended or modified exclusively by the Debtors. Confirmation of the Plan will serve to conclusively establish the Debtors' Projected Disposable Income, and neither the United States Bankruptcy Administrator nor any holder of an allowed unsecured claim may request or be allowed an increase in the amount of payments provided for in the Plan.

61189538.9
61434885.2

11.12 Upon the occurrence of a default under the terms of this Plan, the Creditor shall send written notice of such default to the Debtors and shall provide the Debtor with a period of thirty (30) days from the date said notice is delivered to the Debtors to cure such default, prior to exercising any rights and remedies under this Plan or under applicable law. A copy of any notice of default required to be given by this Plan shall be served on Debtors at 1255 25th St. NW, Apt. 621, Washington, D.C., 20037 and 2440 M St. NW, Washington, D.C. 20037, with a copy served on James H. Henderson, The Henderson Law Firm, 1201 Harding Place, Charlotte, N.C., 28204.

## ARTICLE 12
## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain jurisdiction over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Case or this Plan, including, without limitation, the following:

12.1 Executory Contracts and Unexpired Leases. To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtors are a party or with respect to which the Debtors may be liable, (ii) to review and determine all Cure Payments under any such assumed executory contract or unexpired lease, and (iii) to review and determine any Claims resulting from the rejection of any executory contract or unexpired lease.

12.2 Causes of Action. To determine any and all causes of action, including all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Reorganized Debtors after the Effective Date.

12.3 Disputed Claims, Contingent Claims and Unliquidated Claims Allowance/Disallowance. To hear and determine any objections to the allowance of Claims or Interests (other than Claims that are Allowed pursuant to the Plan), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, contingent Interest, disputed Interest in whole or in part, and to determine any and all disputes among Creditors and holders of Interests with respect to their Claims and Interests.

12.4 Enforcement/Modification of Plan (other than a request to increase payments under 11 USC § 1127(e)(1)).

12.4.1 To hear and determine any requests to modify this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

12.4.2 To hear and determine all controversies, suits, and disputes that may relate to, impact

30

upon, or arise in connection with this Plan or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

12.4.3 To hear and determine such other matters that may be set forth in the Plan and the Confirmation Order or that relate to any transaction required or contemplated by the Plan.

12.4.4 To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Confirmation Order, and all orders entered by the Bankruptcy Court in this Chapter 11 Case.

12.4.5 To hear and determine any issue relating to distributions under the Plan.

12.4.6 To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under section 105 of the Bankruptcy Code.

12.4.7 To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by section 1142 of the Bankruptcy Code.

12.5 Compensation of Professionals. To hear and determine all applications for allowance of compensation and reimbursement of expenses of Professionals, any other fees and expenses authorized to be paid or reimbursed under this Plan, and to approve the reasonableness of any payments made or to be made as provided in section 1129(a)(4) of the Bankruptcy Code.

12.6 Settlements. To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or cause of action by the Debtors or the Reorganized Debtors.

12.7 Taxes. To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtors or Debtors in Possession may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

12.8 506(b), (c) Claims. To determine the amounts, if any, of the reasonable fees, costs and other charges payable under sections 506(b) and/or (c) of the Bankruptcy Code.

12.9 Specific Purposes. To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

12.10 Final Decrees. To enter an order or final decree closing the Chapter 11 Case.

**ARTICLE 13**
**SUBSTANTIVE CONSOLIDATION**

31

US2000 13940300 9

61189538.9
61434885.2

Upon entry of the Confirmation Order, the Debtors' cases will be substantively consolidated. With respect to Jemsek and the Jemsek Clinic, assets will be considered part of a common pool of assets, and allowed claims of creditors will be treated as claims against the common assets.

## ARTICLE 14
## SETTLEMENT WITH BCBS, POLSINELLI AND MULLEN HOLLAND COOPER, PA

14.1    Debtors' Release of BCBS.  The Debtors for themselves, their heirs and associates, attorneys, and personal representatives, agree to irrevocably and unconditionally release, acquit, and discharge BCBS, and all of its respective affiliates, parents, subsidiaries, related entities, officers, directors, employees, agents, managers, representatives, attorneys, successors and assigns (together, the "Blue Cross Released Parties"), from any and all claims, actions or causes of action, demands, damages (both actual, treble and punitive), costs, judgments, expenses, liabilities, attorneys' fees and legal costs, whether legal, equitable, known or unknown, that was brought or could have been brought in the Chapter 11 Case and any related adversary proceedings, or is in any way related to the factual basis of any aspect of the Chapter 11 Case or any related adversary proceedings, including but not limited to all counterclaims asserted against BCBS and any sanctions regarding litigation conduct of BCBS or its attorneys, provided, however, that the Debtors do not waive or release any claim against BCBS arising under the Plan due to the failure of BCBS to pay the BCBS Plan Funding.

14.2  BCBS's Release of the Debtors and Polsinelli.  BCBS, for itself, its heirs and associates, and personal representatives, agrees to irrevocably and unconditionally release, acquit and discharge the Debtors, and all of their respective affiliates, parents, subsidiaries, related entities, officers, directors, employees, agents, managers, representatives, attorneys, successors and assigns (the "Debtor Released Parties") and Polsinelli and its attorneys, from any and all claims, actions or causes of action, demands, damages (both actual, treble and punitive), costs, judgments, expenses, liabilities, attorneys' fees and legal costs, whether legal, equitable, known or unknown, that was brought or could have been brought in the Chapter 11 Case and any related adversary proceedings, or is in any way related to the factual basis of any aspect of the Chapter 11 Case or any related adversary proceedings, provided, however, that BCBS does not waive or release any claim against the Debtor Released Parties if Joseph Gregory Jemsek fails to make timely payments to BCBS under Section 2.4 of this Plan or any claim against the Debtor Released Parties arising under the Plan due to the failure of any of the Debtor Released Parties to perform their obligations under the Plan.  In the event Joseph Gregory Jemsek fails to make the payments to BCBS under Section 2.4 of the Plan, any release or discharge of BCBS Claims whether in this Section 14.2 or elsewhere in the Plan, shall be null and void and such reinstated claims shall not be limited to the amount of the Allowed BCBS Claim.  For the avoidance of doubt, regardless if Debtors do or do not make a payment or payments under the Plan to BCBS, BCBS's release of the Polsinelli and its attorneys shall remain valid, enforceable and binding notwithstanding such failure.  Nothing in this release in Section 14.2 shall: (i) release BCBS's obligation to pay the BCBS Plan Funding; (ii) release the Debtors' obligations to pay the BCBS Claims in accordance with the terms of this Plan; and (iii)

32

release any claims any BCBS clients, other than the Debtors, may have against the Debtor Released Parties or Polsinelli and its attorneys.

14.3 Debtors' Release of Polsinelli.  The Debtors for themselves, their heirs and associates, and personal representatives, agree to irrevocably and unconditionally release, acquit, and discharge Polsinelli and all of its respective affiliates, parents, subsidiaries, related entities, officers, directors, employees, agents, managers, representatives, attorneys, successors and assigns (together, the "Polsinelli Released Parties"), from any and all claims, actions or causes of action, demands, damages (both actual, treble and punitive), costs, judgments, expenses, liabilities, attorneys' fees and legal costs, whether legal, equitable, known or unknown, that was brought or could have been brought in the Chapter 11 Case and any related adversary proceedings, or is in any way related to the factual basis of any aspect of the Chapter 11 Case or any related adversary proceedings, including but not limited to all actions or inactions of any of its agents or former agents, and any litigation conduct with BCBS or its attorneys in this Bankruptcy, any adversary or any related or other proceedings with BCBS.

14.4 Polsinelli's Release of the Debtors and BCBS.  Polsinelli, for itself, its heirs and associates, and personal representatives, agrees to irrevocably and unconditionally release, acquit and discharge the Debtor Released Parties and BCBS and its attorneys, from any and all claims, actions or causes of action, demands, damages (both actual, treble and punitive), costs, judgments, expenses, liabilities, attorneys' fees and legal costs, whether legal, equitable, known or unknown, that was brought or could have been brought in the Chapter 11 Case and any related adversary proceedings, or is in any way related to the factual basis of any aspect of the Chapter 11 Case or any related adversary proceedings, provided, however, that Polsinelli does not waive or release any claim against: (i) the Debtor Released Parties if Debtors fail to timely pay the Allowed Polsinelli Administrative Claim; (ii) any claim against the Debtor Released Parties arising under the Plan due to the failure of any of the Debtor Released Parties to perform their obligations under the Plan; or (iii) BCBS to pay the BCBS Plan Funding.  In the event Debtors fail to make the payments to Polsinelli under the Plan, any release or discharge of Polsinelli Claims whether in this Section 14.4 or elsewhere in the Plan, shall be null and void and such reinstated claims shall not be limited to the amount of the Allowed Polsinelli Claims.  For the avoidance of doubt, regardless if Debtors do or do not make a payment or payments under the Plan to Polsinelli, provided that: (i) Polsinelli receives the BCBS Plan Funding in Certified Funds; and (ii) the Effective Date occurs, Polsinelli's release of BCBS and its attorneys shall remain valid, enforceable and binding notwithstanding such failure.  Nothing in this release in Section 14.4 shall: (i) release BCBS's obligation to make the BCBS Plan Funding; (ii) release the Debtors' obligations to pay the Polsinelli Claims in accordance with the terms of this Plan; and (iii) release any claims any Polsinelli clients, other than the Debtors, may have against the Debtor Released Parties or BCBS and its attorneys.

14.5 Mutual Releases between the Debtors and Mullen Holland & Cooper P.A..("MHC"). The Debtors and MHC, their associates, and personal representatives, agree to irrevocably and unconditionally mutually release, acquit and discharge each other from any and all claims, actions or causes of action, demands, damages (both actual, treble and punitive), costs,

33

US2000 13940300 9

61189538.9
61434885.2

judgments, expenses, liabilities, attorneys' fees and legal costs, whether legal, equitable, known or unknown, that was brought or could have been brought in the Chapter 11 Case and any related adversary proceedings, or is in any way related to the factual basis of any aspect of the Chapter 11 Case or any related adversary proceedings.

14.6  Dismissal of Adversary Proceedings.  Within 15 days of the Effective Date, the Debtors and BCBS shall take all steps necessary to effectuate the dismissal with prejudice of all adversary proceedings or litigation between the parties, with parties to bear their own costs and expenses, except as otherwise stated in this Plan.

14.7  Rule 9019.  The settlement of claims and litigation by and against BCBS, including, without limitation, the proposed treatment of BCBS Claims, the Polsinelli Claims and the mutual releases provided by BCBS, Polsinelli and the Debtors, is a part of a settlement which the Debtors, Polsinelli and BCBS propose pursuant to Rule 9019 of the Bankruptcy Rules and the entry of an order confirming this Plan shall constitute approval of such settlement pursuant to Rule 9019 of the Bankruptcy Rules.

14.8. The settlement of claims and litigation and the allowance of claims does not constitute an admission of fault or liability by the Debtors, or any wrongful action or violation of any federal, state or local statute, regulation, policy, contract, standard of care or otherwise. This Plan constitutes a compromise and settlement of disputed claims, solely for the purpose of avoiding continued litigation, uncertainty, controversy and legal expense. Nothing herein shall constitute or be taken or construed to be an admission by any party or as evidencing or indicating the truth or correctness of any allegations, claims or defenses asserted by any party.

## ARTICLE 15
## ALTERNATIVES TO THE PLAN

The Debtors believe that the Plan provides holders of claims with the greatest possible value that could be realized on their respective claims.  The alternatives to Confirmation of the Plan are: (1) confirmation of an alternative plan of reorganization submitted by another party-in-interest; (2) liquidation of the Debtors under Chapter 7 of the Bankruptcy Code; (3) confirmation of a plan of liquidation; or (4) dismissal of this bankruptcy proceeding.  The Debtors believe that neither liquidation of the Debtors' property under Chapter 7, confirmation of a plan of liquidation, nor the dismissal of this bankruptcy case are viable alternatives and would not be in the best interests of holders of claims and interests.

## CONCLUSION

34

US2000 13940300 9

61189538.9
61434885.2

The Debtors believe they have explored all reasonably available alternatives for their Plan of Reorganization and that the Plan affords the Debtors' creditors with the most beneficial results.

This 7th day of March, 2018.

/s/Joseph Gregory Jemsek
Joseph Gregory Jemsek

**JEMSEK CLINIC, P. A.**

By: /s/ Joseph Gregory Jemsek
     Joseph Gregory Jemsek

**THE HENDERSON LAW FIRM, PLLC**
/s/ James H. Henderson
James H. Henderson
NC State Bar No. 13536
1201 Harding Place
Charlotte, North Carolina 28204
Telephone: (704) 333.3444
Counsel for the Debtors

35

US2000 13940300 9

61189538.9
61434885.2

# EXHIBIT B

**THIS NOTE IS EXECUTED AND DELIVERED AS PART OF THE CONFIRMED SECOND AMENDED JOINT PLAN OF REORGANIZATION OF JOSEPH GREGORY JEMSEK AND JEMSEK CLINIC, P. A. AS MODIFIED, IN THE JOINTLY ADMINISTERED CHAPTER 11 CASE STYLED IN RE: JOSEPH GREGORY JEMSEK AND JEMSEK CLINIC, P. A., CASE NOS .06-31986 AND 06-31766 IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

## CLASS 7 PLAN PROMISSORY NOTE

$

Charlotte, North Carolina

Dated:

      FOR VALUE RECEIVED, the undersigned,  JOSEPH GREGORY JEMSEK AND JEMSEK CLINIC, P. A. ("Maker"), with a mailing address of 2440 N St. NW, Washington, D.C. 20037, promises to pay to the order of          [creditor name]                                 at                    [creditor address]                              , or at such other place or places as               [creditor]                     may from time to time designate, the sum of                                                   ($                                    ) (the "Debt") in the manner and at the time hereinafter provided.

      1.      Payments.  Maker shall repay to          [creditor name]                          the Debt in twelve (12) even quarterly payments of $              , beginning on July  1, 2021 and for 11 consecutive calendar quarters thereafter (to be paid no later than the fifth day of each such calendar quarter). The Maturity Date of the Debt is July 1, 2024.

      2.      Prepayment. Maker may prepay the obligations owing hereunder at any time without premium or penalty.

      3.      Events of Default. The occurrence of any of the following events shall constitute an event of default ("Event of Default") under this Note:

      A.      A payment default that is not cured within thirty (30) days of written notice thereof (or such other date as permitted by order of the Bankruptcy Court), it being agreed that each and all payment obligations under the Note and the timeliness thereof are material;

B.      Maker shall hereafter institute the conversion of the bankruptcy case to one under Chapter 7, title 11 of the United States Code, or shall make a general assignment for the benefit of creditors, or shall transfer substantially all of its assets without the prior written consent of the holder of this Note, or shall dissolve, or shall suffer a change in control to occur including by virtue of the appointment of a trustee or custodian;

C.      In any action brought under or arising out of this Note, Maker, including its successors and assigns, hereby consent to the jurisdiction of any competent court within the State of North Carolina, County of Mecklenburg, and Maker further consents to service of process by any means authorized by North Carolina law. This Note shall be construed in accordance with and governed by the laws of the State of North Carolina.

4.      Pursuant to N.C.G.S. 1C-1701, *et seq.*, this Note will be secured solely by real property located Lot 7, Walkingstick Falls Rd in Highlands, Macon County, North Carolina (the "Real Property") with the filing of the Confirmation Order as a Foreign Judgment in Macon County. Negative Pledge Agreement.

IN WITNESS WHEREOF, Maker has executed this Note as of the date and year first above mentioned.

JOSEPH GREGORY JEMSEK

**JEMSEK CLINIC, P. A.**

By:      Joseph G. Jemsek, President

EXHIBIT C

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

|  |  |  |
|---|---|---|
| In Re: | ) | |
|     JOSEPH GREGORY JEMSEK | ) | Bankruptcy Case No. 06-31986 (JCW) |
| | ) | |
|     JEMSEK CLINIC, P. A. | ) | Bankruptcy Case No. 06-31766 |
| | ) | |
|         Debtors. | ) | |

---

## ORDER IMPOSING LIEN ON REAL PROPERTY

Pursuant to 11 U.S.C. Section 105, this Court's Order Confirming Second Amended Plan of Reorganization, as well as the consent of the parties,

IT IS ORDERED:

1.         This Order shall constitute a lien on real property (the "Real Property") described as

All of Lot 7, WALKINGSTICK FALLS, containing 1.84 acres as shown on a plat thereof prepared by L. Stephen Foster, RLS, dated December 21, 1998, and recorded in Plat Card 2793, Macon County Registry, the same land conveyed to Joseph G. Jemsek ("Jemsek") and Kay Jemsek by deed recorded in Book A-23, Pages 377-379, Macon County Registry.

2.        The lien granted hereby is to secure the One Hundred Fifty Thousand and 00/100 ($150,000.00) obligation of Jemsek to the holders of the Class 7 Plan Notes (the "Notes"), which are to be executed by Jemsek in accordance with the terms of the Second Amended Plan of Reorganization (the "Plan") . The terms of the Plan and the Notes are incorporated herein by reference. The final date for payment of the Notes, if not sooner paid, is July 1, 2024.

3.        This Order shall not act as a lien on Lot 6, Walkingstick Falls Rd. in Highlands, Macon County, North Carolina, or on any other real or personal property now owned or hereafter acquired by Jemsek.

4.        If there shall be any default in the payment of any sums due under the Notes, the holders of Notes may seek the authority to exercise the lien rights granted herein to satisfy any remaining obligations under the Notes.

5.        Upon payment of the Notes in accordance with their terms, then the lien imposed by this Order shall be null and void and may canceled of record by Order of this Court.